# UNITED STATES DISTRICT COURT

## for the

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY HARMON and MATTHEW HARMON, Individually, and DCJ BELMAR, INC.; DOCKSIDE DINING, LLC; and TWO DAWGS, INC., Corporations of the State of New Jersey, | ) ) ) ) ) |
| Plaintiffs, | ) CASE NO: ) |
| v. | ) ) |
| BOROUGH OF BELMAR, a municipal corporation of the State of New Jersey; MATTHEW DOHERTY, individually and as Mayor; COLLEEN CONNOLLY, individually and as Borough Administrator; ANDREW HUISMAN, individually and as Chief of Police; JENNIFER NICOLAY, individually and as Council Member; JANIS KEOWN-BLACKBURN, individually and as Former Council Member; THOMAS BRENNAN, individually and as Council Member; BRIAN MAGOVERN, as Council Member; THOMAS PALMISANO, individually and as Former Chief of Police; THOMAS COX, individually and as Captain, Belmar Police Department; TINA SCOTT, individually and as Captain, Belmar Police Department; TED BIANCHI, individually and as Borough Construction Officer, ROBERT POFF, individually and as Borough Code Enforcement Officer; LOKO, LLC; and JOHN and JANE DOES, BELMAR BOROUGH AGENTS, EMPLOYEES, APPOINTEES, REPRESENTATIVES, CONSULTANTS and/or OFFICIALS, | ) ) ) ) ) ) ) ) ) ) **COMPLAINT** ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

1.      The Plaintiffs, Timothy Harmon and Matthew Harmon, hereinafter referred to as "individual Plaintiffs" or as "Plaintiffs", and DCJ Belmar, Inc; Dockside Dining, LLC and Two Dawgs, Inc., hereafter referred to as "corporate Plaintiffs" or as "Plaintiffs", by and through their undersigned attorneys, and as and for their Complaint against the

Defendants, allege on knowledge as to themselves and their own acts as set forth in the attached Verification and upon information and belief as to all other matters set forth herein as follows:

<u>**NATURE OF THE CLAIMS FOR RELIEF**</u>

2.      For nearly twenty years, the individual Plaintiffs have owned and operated restaurants and taverns located in the Borough of Belmar (which municipality shall also be referred to in this Complaint as "Belmar" or as the "Borough"), County of Monmouth, State of New Jersey.

3.      The Plaintiffs continue to maintain an establishment known as The Boathouse Bar and Grill and formerly owned and operated an establishment known as 507 Main.  During that entire time period, the Plaintiffs, through corporate entities in which they have been the only shareholders, the corporate Plaintiffs herein, have been the owners of alcoholic beverage licenses issued by Belmar.

4.      This is an action to recover damages for the violation of Plaintiffs' rights to control and operate their businesses and to own, operate and control and transfer them free from the tortious, fraudulent, and extortionate conduct of Belmar politicians, officials, employees and appointees.  All of the Defendants named in this Complaint, except Loko, LLC, acted on behalf of Defendant Belmar and related and/or surrogate entities.  This action is brought pursuant to the Equal Protection and the Due Process Clauses of the Fourteenth Amendment to the United States Constitution; the First Amendment to the United States Constitution; 42 U.S.C. § 1983 of the Civil Rights Act; 42 U.S.C. § 1985 of the Civil Rights Act; 18 U.S.C. § 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and N.J.S.A. 2C:41-1 et seq.  ("NJ-RICO"), the New Jersey Statute that prohibits racketeering activity and provides for civil remedies therefor.

5.     The Defendant Borough of Belmar is a resort community located along the Atlantic Ocean in which the population and commercial activity dramatically increases during the summer months and sharply decreases in the fall of each year.

6.     The northern boundary of the Borough is marked by the Shark River Inlet and the Shark River, on which is located a municipal marina facility owned by the Borough.

7.     The Borough has created a redevelopment area along and near its boundary with the Shark River.  The redevelopment area includes the property referred to herein as the "Salt property"; or the "Loko property".

8.     During the period of time from January 2013 through January 2014, the Defendant Loko, LLC entered into a Redevelopment Agreement with the Borough pertaining to the Loko property.

9.     That Redevelopment Agreement was approved by vote of the Mayor and Borough Council of the Borough of Belmar in an action in which the Defendants Doherty, Nicolay and Magovern all participated and voted in the affirmative.

10.    The aforesaid Redevelopment Agreement provided for a two-phase redevelopment of the Loko property.  The first phase was to extend for a period of three (3) years, and provided for the construction and operation of an outdoor café and bar. After the conclusion of the initial three (3) year period, the Redevelopment Agreement provided for the construction of residential condominium units in a building in which the first floor would contain commercial space, including a restaurant and bar.

11.    Throughout the course of Loko's negotiations and approval process with the Borough, Loko was engaged in discussions, consultations and negotiations with the Plaintiffs in an effort to induce them to own and operate the outdoor café and bar on the Loko property.  The Defendant Borough and the Mayor, Council and Administrator were

aware that the outdoor café and bar would be operated by the Plaintiffs.

12.     The Defendant Loko obtained site-plan approval from the Planning Board of the Borough of Belmar for the outdoor facility based upon plans which were developed, designed and approved by the Plaintiffs.

13.     As a result of discussions between the Plaintiffs and the Defendant Loko, as well as the approval of the Redevelopment Agreement by the Belmar Council and the approval of a site-plan therefor by the Belmar Planning Board, the Plaintiffs entered into a Lease and an Agreement with the Defendant Loko, LLC to construct the outdoor café and bar on the Loko property and to operate the facility for a three-year period.

14.     The aforesaid Agreement required the Plaintiffs to utilize the alcoholic beverage license owned by them and which was then utilized at their establishment 507 Main, which was located across the street from the Loko property.

15.     In reliance upon its agreements with the Defendant Loko and the actions of the Borough, the Borough Council and the Planning Board set forth herein, the Plaintiffs ceased operation of 507 Main and made application to the Borough for the transfer of the alcoholic beverage license from 507 Main to the Loko premises in order to operate an outdoor bar and restaurant under the name "Salt".

16.     The Plaintiffs filed an application for place to place transfer of their alcoholic beverage license on or about April 24, 2015.

17.     Prior thereto, the Defendant Loko, in reliance upon the aforesaid Redevelopment Agreement, demolished the existing structure on the Loko property; installed utilities and constructed parking and other improvements in order to make the property ready for the Salt facility.   Thereafter, the Plaintiffs engaged contractors, expended substantial funds, obtained construction and other permits from the Borough and began the process of constructing the Salt facility.

18.     As alcoholic beverage licensees for nearly twenty (20) years, the Plaintiffs have been investigated by the Belmar Police Department and approved to be the owners of multiple alcoholic beverage licenses issued by the Borough of Belmar.  Moreover, on an annual basis, for nearly twenty years, their licenses were renewed by the Borough Council for each successive annual license term.

19.     The Plaintiffs had a reasonable expectation that their application for transfer would be handled under the normal policies and procedures of the Belmar Police Department; to wit, that the application would be assigned to the detective bureau; investigated by a detective of the Police Department and a report provided to the Mayor and Borough Council as soon as practicable, but within the sixty (60) days provided for such an investigation by the applicable regulations of the New Jersey Division of Alcoholic Beverage Control at N.J.A.C. 13:2-7.7(d).

20.     In fact, during the period of time which is the subject of this Complaint, the Belmar Police Department handled other applications for transfers of alcoholic beverage licenses in that manner; under those procedures and within the required time frame.  Those applications included, by way of example and not by way of limitation, applications filed by Chef's International, Inc., 10th Avenue Burrito Company and others.

21.     Contrary to the policy and procedures which had been previously followed by the Police Department with regard to the Plaintiffs and all other licensees, the Defendant Palmisano assigned the investigation of the Plaintiffs' application to the Defendant Huisman, then a Captain of the Police Department.  Defendant Huisman's duties as a Captain did not include the investigation of alcoholic beverage license transfers and, moreover, Huisman had never in his career handled such an investigation.

22.     In or about April 2014, the Defendants Doherty and Connolly began a concerted effort to prevent the Plaintiffs from constructing and opening the Salt facility

on the Loko property.  The Defendant Doherty advised representatives of the Plaintiffs, the Defendant Loko and others that the Plaintiffs "would never open a business" in that location and instructed Borough employees, including members of the Police Department and the Construction Department, to delay processing the Plaintiffs alcoholic beverage license application and to interfere with the construction process for the Salt facility.

23.    During the aforesaid period of time, the Defendants Doherty and Connolly directed Defendant Bianchi and the Construction Department to delay and to refuse to issue permits for the Salt facility despite its having been approved by the Borough Planning Board and the fact that the project involved no permanent structures.  The Defendant Bianchi cooperated in that effort.

24.    During the aforesaid period of time, the Defendants Doherty and Connolly engaged in contact, discussions and negotiations with property owners; prospective developers; and their agents, representatives and attorneys, in an effort to replace the development contemplated by the approved Loko Redevelopment Agreement with another, larger project.  During that process, the Defendant Doherty advised the Defendant Magovern and other members of the Borough Council that this alternative proposal was "better for the Borough" and "would be lost" if the Salt facility were allowed to open.  The Defendant Doherty also attempted to force the Defendant Loko to agree to a new partnership and Redevelopment Agreement with Doherty's preferred developers and urged the Defendant Loko to terminate its relationship with the Plaintiffs, causing Plaintiffs extreme difficulties and loss of funding.

25.    During the period of time from April 2014 through June of 2015, the Defendant Doherty arranged and participated in meetings between Defendant Loko and other prospective developers as well as an adjoining property owner, Ollie Klein.

26.     During a meeting which took place in April 2015, the Defendant Doherty made statements such as:   "The Borough will approve D'Jais or Ollie Klein at that location, but not the Harmon brothers"; "The Harmons' application is going to get lost at police headquarters and it's going to take forever to come to the Council"; "When the Harmons' application comes before the Council, we will deny the liquor license and force them to go to the ABC"; and, "We know people there (at the ABC) and if by chance they approve the transfer, we will appeal. They will never open."   Such statements were confirmed and echoed by Defendant Connolly, who referred to the Salt facility as a "sandbox bar".

27.     During the summer months of 2015, the Defendant Borough, through its Police Department and Construction Department, interfered with and harassed the Plaintiffs in the construction of the Salt facility; issued illegal and improper stop work orders; sent police officers to the property who threatened to arrest the Plaintiffs' contractors, and otherwise acted to disrupt and disturb the Plaintiffs' project.

28.     During the aforesaid period of time, Defendants Doherty and Connolly directed representatives of the Belmar Construction Department to deny permits for facilities at the Salt location which had previously been approved by the Planning Board and the Defendants Doherty and Connolly directed employees of the Borough Construction Department to obstruct and interfere with the Plaintiffs, while at the same time directing them to show preferential treatment to other property owners, such as Chef's International, Inc.

29.     During the aforesaid period of time, the Defendants Connolly and Huisman attempted to stop the project on the basis of a false claim of a New Jersey Department of Environmental Protection CAFRA violation, which never existed.

30.     During the aforesaid period of time, Defendant Huisman engaged in a concerted effort to interfere with the Plaintiffs' businesses and the construction of the Salt facility.  During that period of time, Huisman advised members of the Police Department as well as other officials of the Borough, including construction and code enforcement officials, to deny permits to the Plaintiffs; harass the Plaintiffs and the operation of their business at the Boathouse; arbitrarily denied Plaintiffs' applications for permits for the St. Patrick's Day Parade; and advised such officials that they needed to be "team players" in the Borough's efforts against the Plaintiffs.

31.     During 2015, in a further effort to harass the Plaintiffs, the Defendants Huisman, Doherty, Connolly, Nicolay, Keown-Blackburn, Brennan and Magovern conspired to impose a permit parking zone in the area of the Boathouse Bar and Grill, the only licensed premises in the Borough so targeted.

32.     When Plaintiffs' construction at the Salt property had reached an advanced stage, the Defendants Doherty and Connolly directed the issuance of a Stop Work Order on the project, and such an order was issued by Defendant Bianchi.

33.     During the summer and fall of 2015, and at the direction of Defendants Doherty and Connolly, Defendants Palmisano, Huisman, Cox and Scott failed to properly pursue the investigation of Plaintiffs' application for alcoholic beverage license transfer.

34.     On or about January 2016, the Borough Police Department finally began to conduct an investigation of the Plaintiffs' transfer application.  In doing so, the Defendants Cox, Scott and Huisman intentionally misrepresented statements made by individuals who had loaned funds to the Plaintiffs and falsely characterized their statements as having created an undisclosed interest in the alcoholic beverage license. Those actions of the Defendants were solely for the purpose of further delaying the review of the Plaintiff's application.

35.     In late May or June 2016, over one year after the filing of the application for transfer of the alcoholic beverage license, the Belmar Police Department finally issued a report to the Mayor and Council.  Despite both written and oral requests made to the Police Department Defendants, a copy of the investigation report was never provided to the Plaintiffs.

36.     The application for a person-to-person and place-to-place transfer was scheduled to be considered by the Mayor and Borough Council at its meeting of June 8, 2016.  A copy of the proposed Resolution authorizing the transfer was both provided to the licensee and posted on the Borough's website.  The aforesaid Resolution approved the license transfer and imposed no conditions on the license.

37.     Prior to the June 8, 2016 meeting, the Defendants Connolly and Doherty contacted, both orally and in writing, residents and business owners of the Borough of Belmar and urged them to appear at the meeting to express opposition to the Plaintiffs' license transfer.

38.     At no time prior to the meeting of June 8, 2016 were the Plaintiffs advised that any action other than an approval of their application would be taken by the Mayor and Council.  Applicable State regulations found at N.J.A.C. 13:2-7.7(c) provide, in pertinent part, that "no application shall be disapproved without first affording the applicant an opportunity to be heard, and providing the applicant with at least five days notice thereof."  No such notice was ever provided to the Plaintiffs.

39.     The Defendant Doherty did not appear at the June 8th meeting, leaving four Council Members to act on Plaintiff's application.

40.     The Defendant, Thomas Brennan, had been a member of the Borough Council for several years and, for at least two years prior to the June 8, 2016 Council meeting, participated in and voted upon every alcoholic beverage license application

which came before the Mayor and Council, including those applications filed by establishments which employed the Defendant Brennan as a musician.

41.    On June 8, 2016, however, Defendant Brennan recused himself from participating in the consideration of Plaintiffs' alcoholic beverage transfer application, stating that he was a musician and that his band played at licensed establishments in the Borough and, therefore, it was not appropriate for him to consider alcoholic beverage matters, despite his having done so for the prior two years.  The Defendants Nicolay and Keown-Blackburn voted in the negative on Plaintiffs' application on the stated basis that the proposed "location was not appropriate" for an outdoor tiki type bar.  The Defendants did so despite knowing that the Borough Council had previously approved and signed a Redevelopment Agreement that provided for such an outdoor establishment to be located on the premises and despite the fact that the Defendant Nicolay had participated in and voted in favor of the aforesaid Redevelopment Agreement.

42.    The actions of the Defendants Nicolay, Brennan and Keown-Blackburn were in direct conflict with other decisions they had made to approve outdoor bar facilities in the Borough, including premises known as The 10th Avenue Burrito Company; D'Jais; The Anchor Tavern; and others. The action of the Defendant Brennan was in direct conflict with his prior action as a member of the Borough Council with respect to all other alcoholic beverage licenses in the Borough.

43.    Prior to the aforesaid meeting, the Defendants Doherty and Connolly urged the Defendants Nicolay, Keown-Blackburn and Magovern to vote "no" on the Plaintiff's application.

44.    At the meeting of June 8, 2016, two individuals spoke in opposition to Plaintiffs' application.  The first was a resident in a senior citizen complex with close political ties to the Defendant Doherty.  The second was the owner of a restaurant and

holder of an alcoholic beverage license issued by the Borough who appeared at the meeting only after the written urging of Defendant Nicolay and oral urging of the Defendant Connolly.

45.     In addition to the facilities located in Defendant Belmar which contain outdoor bars and restaurants. there is also located in the Borough a facility known as the 9th Avenue Pier, which is, in fact, the largest outdoor bar and restaurant located in the Borough.

46.     The aforesaid 9th Avenue Pier is owned by Chef's International, Inc., a company which has business relationships with the Defendant Borough and whose officers have close, personal relationships with the Defendants Doherty and Connolly.

47.     The aforesaid company, in fact, leases the premises of the 9th Avenue Pier, located at the Belmar Municipal Marina, from the Defendant Borough and is constructing a restaurant/catering facility at the aforesaid marina; both arrangements under extremely favorable lease agreements granted to it by the Defendants Doherty, Nicolay, Keown-Blackburn, Magovern and Brennan.

48.     Among the other competitors of Plaintiffs in the Borough is D'Jais, a bar and restaurant located on Ocean Avenue, the owners and supporters of which have contributed tens of thousands of dollars to the political campaigns of the Defendant Doherty.  Those individuals, as well as the Defendant Doherty, have been proponents of State legislative efforts to extend the period of operation of seasonal alcoholic beverage licenses, efforts which the Plaintiffs have opposed.  Upon information and belief, the efforts of Defendants Doherty and others to interfere with, injure and disrupt the legitimate business operations of the Plaintiffs have been, at least in part, in retaliation for the Plaintiffs' opposition to those efforts.

49.     Since the denial of the Plaintiffs' application for an alcoholic beverage license transfer, the Defendants have continued their campaign to harm the Plaintiffs and their business interests.

50.     The Defendant Doherty has made statements to representatives of the Defendant Loko, LLC and to others that no temporary facility will ever be approved at the Loko property; that the Plaintiffs "will never open a business" in that location and that the Defendant Loko should tell the Plaintiffs to "save a lot of time, money and aggravation and just walk away".  Defendant Connolly has stated with respect to the Plaintiffs that "they will never open".

51.     Since the denial of the Plaintiffs' application for license transfer, the Defendant Huisman has harassed and threatened the Plaintiffs in their operation of the Boathouse Bar and Grill and has falsely accused the Plaintiffs of alcoholic beverage law violations.

## THE DEFENDANTS

52.     The Defendant, Borough of Belmar, is a municipal corporation of the State of New Jersey, located in Monmouth County.  The Borough is authorized, pursuant to statute, to create and maintain a governing body comprised of an elected Mayor and a four (4) member Council.  The Borough, acting through its Mayor and Council, is vested with the power to create and maintain a police department, a municipal planning board, a construction/building department and a zoning enforcement department.  The Borough has the power to appoint a chief of police, a construction code official, a zoning/code enforcement officer, a borough administrator and other officers and employees.

53.     At all times referred to herein, the Defendant, Matthew Doherty, was the Mayor of the Borough of Belmar.  Mayor Doherty is joined both individually and in his

capacity as an agent, servant, employee, representative and policy maker of Belmar. While serving as Mayor of Belmar, the Defendant Doherty set policies and conducted affairs of office under color of State law.

54.     The Defendant, Colleen Connolly, is and was at all times mentioned herein the Borough Administrator of Belmar.  The Defendant Connolly was appointed by and performed her duties at the direction of the Mayor and Council and did so acting under color of State law.  The Defendant Connolly is joined both individually and in her capacity as an agent, servant, employee, representative and policy maker of Belmar.

55.     The Defendant, Andrew Huisman, is and was at all times mentioned herein an employee of the police department of the Borough of Belmar in the positions of Captain and Chief of Police.  The Defendant Huisman was appointed to the positions of Captain and Chief of Police by the Belmar Mayor and Council and acted at the direction of the Mayor and Council.  The Defendant Huisman was the final policy making authority in the police department and, while Chief of Police, the Commanding Officer of the other members of the police department referred to herein.  The Defendant Huisman is joined both individually and in his capacity as agent, servant, employee and official policy maker of Belmar through its police department.  The Defendant Huisman acted under color of State law in his capacities as Captain and Chief of Police.

56.     The Defendant, Thomas Palmisano, at certain times mentioned herein, was an employee of the police department of the Borough of Belmar in the position of Chief of Police.  The Defendant Palmisano was appointed to the position of Chief of Police by the Belmar Mayor and Council and acted at the direction of the Mayor and Council.  At those times, the Defendant Palmisano was the final policy making authority in the police department and the Commanding Officer of the other members of the police department referred to herein.  The Defendant Palmisano is joined both individually and in his

capacity as agent, servant, employee and official policy maker of Belmar through its police department.  The Defendant Palmisano acted under color of State law in his capacity as Chief of Police.

57.    The Defendant, Jennifer Nicolay, was at all times mentioned herein a member of the Borough Council of the Borough of Belmar acting under the color of State law.  The Defendant Nicolay is joined both individually and in her capacity as an agent, servant, employee, representative and policy maker of Belmar.

58.    The Defendant, Janis Keown-Blackburn was, at certain times referred to herein, a member of the Borough Council of the Borough of Belmar acting under the color of State law.  The Defendant Keown-Blackburn is joined both individually and in her capacity as an agent, servant, employee, representative and policy maker of Belmar.

59.    The Defendant, Thomas Brennan, was at all times mentioned herein a member of the Borough Council of the Borough of Belmar acting under the color of State law.  The Defendant Brennan is joined both individually and in his capacity as an agent, servant, employee, representative and policy maker of Belmar.

60.    The Defendant, Brian Magovern, was at all times mentioned herein a member of and Council President of the Borough Council of the Borough of Belmar acting under the color of State law.   The Defendant Magovern is joined only in his capacity as an agent, servant, employee, representative and policy maker of Belmar.

61.    The Defendant, Thomas Cox, was at all times mentioned herein a Belmar police officer.  Defendant Cox held the rank of Lieutenant until his promotion to the rank of Captain; such appointments having been made by the Mayor and Council of the Borough.  The Defendant Cox is joined both individually and in his capacity as agent, servant, employee and official policy maker of the Borough, acting within the scope of his authority and under color of State law.

62.     The Defendant, Tina Scott, was at all times mentioned herein a Belmar officer.   Defendant Scott held the rank of Lieutenant until her promotion to the rank of Captain; such appointments having been made by the Mayor and Council of the Borough. The Defendant Scott is joined both individually and in her capacity as agent, servant, employee and official policy maker of the Borough, acting within the scope of her authority and under color of State law.

63.     The Defendant, Ted Bianchi, was at all times referred to herein the Construction Code Official of the Belmar Construction Department.   The Defendant Bianchi was appointed by the Mayor and Council and served as the official responsible for the administration and enforcement of the Uniform Construction Code in Belmar.  As such, the Defendant Bianchi was the final policy making authority in the Construction Department; acted under color of State law and at the direction of the Mayor and Council of Belmar.  Defendant Bianchi is joined both individually and in his capacity as an agent, servant, employee and official policy maker of Belmar.

64.     The Defendant, Robert Poff, was at all times referred to herein the Code Enforcement Officer of the Belmar Code Enforcement Department.   The Defendant Poff was appointed by the Mayor and Council and served as the official responsible for the administration and enforcement of all ordinances within the Borough.   As such, the Defendant Poff was the final policy making authority in the Code Enforcement Department; acted under color of State law and at the direction of the Mayor and Council of Belmar.   Defendant Poff is joined both individually and in his capacity as an agent, servant, employee and official policy maker of Belmar.

65.     The Defendant Loko, LLC is a limited liability company in the State of New Jersey.   The Defendant, Loko at all times mentioned herein was the designated redeveloper of the Loko property / Salt property and, as such, entered into agreements

and leases with the Plaintiffs and entities owned and controlled by the Plaintiffs for the development of an outdoor restaurant/bar on the Loko property.

66.     The Defendants, John/Jane Doe 15 through John/Jane Doe 25, were at all times mentioned herein agents, representatives, employees, attorneys or consultants for the Borough and/or the Borough Council and/or the Borough Police Department, and/or the Borough Construction Department acting within the scope of their authority under color of State law.  The Defendants are joined individually and in their capacity as agents, servants, employees, representatives and/or policy makers of Belmar.

## CAUSES OF ACTION

The causes of action below incorporate each and every foregoing allegation as if set forth fully herein.  For the purpose of emphasis, the causes of action contain specific factual allegations intended to be indicative of the overall claims supported by all of the foregoing factual allegations.

## COUNT I

### Multiple Violations of Due Process under the Fourteenth Amendment to the United State Constitution Pursuant to 42 U.S.C. § 1983

67.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs and incorporate same as if set forth fully herein.

### Police Department

68.     The Defendants Doherty, Connolly, Huisman, Palmisano, Cox, Scott and the defendant members of the Borough Council between 2015 and 2017, intentionally and unlawfully caused the Belmar police department to disrupt the operation of the Boathouse Bar and Grill through a pattern of threats, intimation, arbitrary enactments and fraud, in violation of Plaintiffs' constitutional rights to due process of law under the Fourteenth Amendment to the United States Constitution.

69.    The aforesaid Defendants in 2015 and 2016 intentionally and unlawfully caused the alcoholic beverage license transfer of the license formerly operated at 507 Main to the Salt facility to be intentionally delayed and arbitrarily denied in violation of Plaintiffs' constitutional rights to due process of law under the Fourteenth Amendment to the United States Constitution.

70.    At all relevant times, Defendant Doherty was, as the highest elected official in Belmar, a final official policy maker for the Borough.  At all relevant times, Defendants Huisman and Palmisano were official policy makers for Belmar and its Police Department.  At relevant times, the Defendant Borough Council members, who held office between 2015 and 2017, were, as members of the highest legislative body in Belmar, official policy makers for the Borough.  As such, the actions of the defendants listed in this paragraph constituted the official policy of Belmar, at all times relevant to this Complaint.

71.    Plaintiffs had vested property interests in both the 507 Main license and the Boathouse Bar and Grill which were damaged and destroyed by the illegal acts of Belmar personnel, and at the direction of the Defendants' official policy makers of Belmar.

72.    Plaintiffs are persons and citizens within the meaning of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Thus, Plaintiffs are entitled to those rights guaranteed to all persons within the jurisdiction of the United States.

## Mayor and Borough Council: Liquor Licenses

73.    The Defendants Doherty, Connolly, Huisman, Palmisano, Cox, Scott and certain members of the Borough Council between 2015 and 2017, intentionally and unlawfully took actions to delay the investigation of Plaintiffs' application for transfer of their alcoholic beverage license from 507 Main to the Salt facility; generated false and

fraudulent opposition thereto and arbitrarily denied said application.  As described above, these practices violated Plaintiffs' rights to due process of law under the Fourteenth Amendment to the United States Constitution.

74.     The Defendants Doherty, Connolly, Huisman, Palmisano, Cox, Scott and certain members of the Borough Council between 2015 and 2017, intentionally and unlawfully took actions to place arbitrary and unreasonable special conditions on Plaintiffs' liquor license for the Boathouse Bar and Grill between 2015 and 2017.  As described above, these practices violated Plaintiffs' rights to due process of law under the Fourteenth Amendment to the United States Constitution.

75.     At all relevant times, Defendant Doherty was, as the highest elected official in Belmar, a final official policy maker for the Borough.  At all relevant times, Defendants Huisman and Palmisano were official policy makers for Belmar and its Police Department.  At all relevant times, the Borough Council members, who held office between 2015 and 2017, were, as members of the highest legislative body in Belmar, official policy makers for the Borough.  As such, the actions of the defendants listed herein constituted the official policy of Belmar, at times relevant to this Complaint.

76.     Plaintiffs had vested property interests in the 507 Main license and in the Boathouse Bar and Grill which were damaged and destroyed by the illegal acts of Belmar personnel, and at the direction of the official policy makers of Belmar.

77.     Plaintiffs are persons and citizens within the meaning of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Thus, Plaintiffs are entitled to those rights guaranteed to all persons within the jurisdiction of the United States.

**Mayor, Administrator, Borough Council and Construction Department:**
**Construction Official Bianchi; Code Enforcement Officer Poff**

78.     The Defendants Doherty, Connolly, certain members of the Borough Council as constituted between 2015 and 2017, Code Enforcement Officer Poff and Construction Official Bianchi intentionally and unlawfully implemented a scheme and policy to delay, damage and destroy the Salt project through fabricated and fraudulently alleged U.C.C.; CAFRA and Belmar Code violations.  As described above, these acts violated Plaintiffs' rights to due process of law under the Fourteenth Amendment to the United States Constitution.

79.     At all relevant times, the Defendants listed in the preceding paragraph were official policy makers for Belmar.  As such, the actions of the Defendants complained of herein constituted the official policy of Belmar.

80.     Plaintiffs had vested property interests in the Salt property, which were damaged and destroyed by the illegal acts of said Defendants.

81.      Plaintiffs are persons and citizens within the meaning of the Fourteenth Amendment to the Unites States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Thus, Plaintiffs are entitled to those rights guaranteed to all persons within the jurisdiction of the United States.

## COUNT II

**Multiple Violations of the Equal Protection Clause of the Fourteenth Amendment**
**to the United State Constitution Pursuant to 42 U.S.C. § 1983**

82.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs and incorporate same as if set forth fully herein.

83.     Defendants Borough of Belmar; Doherty; Connolly; Borough Council members named as defendants above; Borough employees and representatives named as defendants above; Code Enforcement Officer Poff; Construction Official Bianchi; named

as defendants above; the Police Department; Chiefs Huisman and Palmisano and the other police officers named as defendants above; and as yet to be identified defendants John/Jane Doe 15-25; acted in violation of the Fourteenth Amendment to the United States Constitution.  Said defendants intentionally implemented a policy of selectively enforcing state and local laws against Plaintiffs.  The intent and effect of this policy was to (a) interfere with Plaintiffs' business; (b) to deny Plaintiffs the lawful and permissible use of their liquor license and property; (c) to cause Plaintiffs to expend significant financial resources to defend the use of their property; (d) to retaliate against Plaintiffs for refusing to accede to the demands of Defendants Doherty and Connolly; and the political goals of Defendant Doherty and (e) to terminate the Salt project.

84.    All of the Defendants set forth in the preceding paragraph were and/or are official policy makers for Belmar.

85.    Plaintiffs had vested property interests in both the 507 Main license and the Boathouse Bar and Grill.  Those property interests are protected by the United States Constitution.  Under the Fourteenth Amendment to the United States Constitution Plaintiffs are entitled to equal protection of the law.

## COUNT III

## Violation of RICO

86.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.    Each of the individual Plaintiffs are and at all relevant times was a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

88.    Defendants Doherty, Connolly, Huisman, Palmisano, Nicolay, Keown-Blackburn, Brennan and all of the other defendants that are not government entities, are "persons" as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c) (collectively referred

to in Count III of this Complaint as "RICO defendants").

89.     Belmar and its affiliated, subordinate entities (Police Department, Borough Council, Construction Department, Code Enforcement Department) constitute "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which were engaged in activities affecting interstate commerce at all times relevant to this Complaint. Where necessary, these enterprises are referred to as "RICO enterprises" for the purposes of Count III of this Complaint.

90.     Each of the RICO Defendants is and/or was associated with one or more of the RICO enterprises.  Upon information and belief, Rico defendants conspired to, and did, operate Belmar, the Borough Council, the Police Department, the Construction Department, and the Code Enforcement Department, through a pattern of "racketeering activity" in violation of 18 U.S.C. §§ 1962(c) and 18 U.S.C. § 1962(d).  Upon multiple, repeated and continuous violations of N.J.S.A. 2C:20-5 et seq. (extortion and attempted extortion); multiple violations of N.J.S.A. 2C:21-1 et seq. (forgery and related offenses), and Common Law Fraud; and violations of N.J.S.A. 2C:27-3 et seq. (threats and other improper influence in official political matters); and various other illegal acts, as yet unknown, but which Plaintiff will identify through the course of discovery.

91.     Plaintiffs suffered substantial injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c), due to RICO defendants' violation of 18 U.S.C. § 1962(c).  Plaintiffs' injuries include, but are not limited to, lost or reduced sales and revenue from the operation of the Boathouse Bar and Grill; the loss of prospective sales and revenue from the Salt facility; the loss of substantial funds used to design and construct the Salt facility; the destruction of many years of good will that Plaintiffs built for their 507 Main and Boathouse Bar and Grill businesses; and the tens of thousands of dollars that Plaintiffs spent on legal fees and other fees to defend against the illegal

actions of the Defendants.

## Predicate Acts Under RICO and NJ-RICO

92.     For the purpose of clarity, the predicate acts listed below (which constitute "racketeering activity" as defined in RICO and/or NJ-RICO) expressly incorporate some of the allegations contained in the foregoing paragraphs.  However, Plaintiffs incorporate, repeat, and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

i.     *Multiple Acts of Extortion in Violation of N.J.S.A. 2C:20-5 et seq. and Common Law Extortion*

93.     The acts of extortion alleged herein, in violation of N.J.S.A. 2C:20-5(a-f) and the common law of extortion, are "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(A) and N.J.S.A. 2C:41-1(a)(1)(h).

94.     The pattern of racketeering activity described throughout this Complaint includes multiple acts of extortion directed at Plaintiffs.  Each of the actions and events described below constitutes a threat communicated with the intention wrongfully to obtain objects of value from Plaintiffs and is chargeable as extortion under New Jersey law and punishable by imprisonment for more than one year (N.J.S.A. 2C:20-5 et seq.).

95.     Each of the events described below constitutes a threat to injure Plaintiffs' character and property and/or accuse Plaintiffs of an offense, undertaken with the specific intent to extort money, property and pecuniary benefit from Plaintiffs and is chargeable as extortion and attempted extortion under New Jersey law and is punishable by imprisonment for more than one year (N.J.S.A. 2C:20-5 et seq.).

96.     Upon information and belief, Defendants Construction Official Bianchi and Code Enforcement Officer Poff obtained employment in the Borough of Belmar and maintained their employment in exchange for agreement that they would utilize their

positions to harass, fine and interfere with the completion of the Plaintiffs' Salt facility. Acting under color of state law, those Defendants, at the behest of the Defendants Doherty and Connolly, falsely alleged and cited Plaintiffs for non-existent Uniform Construction Code violations and, acting under color of law, demanded that Plaintiffs pay fines; cease work; and abandon the Salt project.

97.     The RICO Defendants wanted Plaintiffs to abandon the Salt project, which would inure great political and personal benefit to Defendants Doherty, Connolly and other Defendants who did not want another outdoor café/bar facility to open on the waterfront in Belmar.

98.     The property right demanded from Plaintiffs was the right to open and operate their business and Defendants sought political benefit from taking away Plaintiffs' property rights.  The RICO Defendants threatened to take and/or withhold official action.  The Plaintiffs continued in their efforts to open the Salt facility.  When Plaintiffs resisted, the RICO Defendants took official action against them.

> ii.     *Forgery and Related Offenses in Violation of N.J.S.A. 2C:21-1 and Common Law Fraud.*

99.     Forgery, in violation of N.J.S.A. 2C:21-1 et seq., is "racketeering activity" within the meaning of NJ-RICO, Forgery and Common Law Fraud are "racketeering activity" within the meaning of RICO.

100.    Upon information and belief, Defendants Huisman, Cox and Scott, with the purpose to defraud or injure Plaintiffs, and/or with knowledge that they were facilitating a fraud or injury to be perpetuated by another, without authorization, altered or changed multiple writings, interviews and statements during the investigation and contained in the Belmar Police Department 507 Main transfer investigation file.

101.    Upon information and belief, the Defendants, with the purpose of defrauding or injuring Plaintiffs, and/or with knowledge that they were facilitating a fraud or injury to be perpetuated by another, without authorization, altered or changed multiple statements of witnesses contained in the Belmar Police Department 507 Main transfer investigation file.

iii.    *Threats and Other Improper Influence in Official and Political Matters in Violation of N.J.S.A. 2C:27-3*

102.    Threats and improper influence in official political matters, in violation of N.J.S.A. 2C:27-3, are "racketeering activity" within the meaning of RICO and NJ-RICO.

Under N.J.S.A. 2C:27-3, a person commits an offense if he directly or indirectly:

(1) Threatens unlawful harm to any person with purpose to influence a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election; or

(2) Threatens harm to any public servant with purpose to influence a decision, opinion, recommendation, vote or exercise of discretion in a judicial or administrative proceeding; or

(3) Threatens harm to any public servant or party official with purpose to influence him to violate his official duty.
It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way, whether because he had not yet assumed office or lacked jurisdiction, or for any other reason.

103.    The pattern of racketeering activity described throughout this Complaint includes multiple acts of threats and improper influence in official and political matters directed at various government officials.  Each and every one of the foregoing factual allegations is repeated and re-alleged as if set forth fully herein.  For the purposes of emphasis and clarity, certain particularly egregious instances of conduct violative of N.J.S.A. 2C:27-3 are restated below.  Those officials who were threatened or improperly influenced include, but are not limited to:   Construction Official Bianchi; Code

Enforcement Officer Poff; Electrical Sub-Code Official Callahan and Fire Marshall John Rizzitello.

104.    Upon information and belief, the Defendant Connolly contacted neighbors of the Boathouse Bar and Grill and urged them to falsely lodge complaints with the Borough about that business and the Plaintiffs.

105.    Upon information and belief, Defendants Doherty and Connolly threatened to unlawfully harm the Construction Official, the Code Enforcement Officer and other sub-code officers in order to force them to harass the Plaintiffs during the construction of the Salt facility and issue improper and illegal violation notices and Stop Work Orders.

106.    The Defendants Doherty, Connolly, Huisman and the Defendants Council Members caused a permit parking ordinance to be enacted solely for the purpose of damaging the business of the Boathouse Bar and Grill and arbitrarily denied permit applications pertaining to that enterprise.

107.    Upon information and believe, the Defendant Huisman also threatened the Construction and Sub-code officials of the Borough and urged that they should harass and harm the Plaintiffs both with respect to the Salt facility and their Boathouse Bar and Grill business.

**COUNT IV**

**Violation of NJ-RICO**

108.    Plaintiffs re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

109.    Plaintiffs are, and at all relevant times were, persons within the meaning of N.J.S.A. 2C:41-1(b).

110.    Belmar, the Borough Council, the Police Department, the Construction Department, and the Code Enforcement Department and all Defendants listed in this

Complaint are "persons" as defined in <u>N.J.S.A.</u> 2C:41-1(b) (and are collectively referred to in Count III of this Complaint as "NJ-RICO Defendants," and where necessary named individually as set forth in this Complaint).

111.    Belmar and its affiliated, subordinated entities (Police Department, Borough Council, Construction Department, Code Enforcement Department) constitute "enterprises" as that term is defined in <u>N.J.S.A.</u> 2C:41-1(c).  Where necessary, these enterprises are referred to as "NJ-RICO enterprises" for the purposes of Count III of this Complaint.

112.    Upon information and belief, NJ-RICO Defendants conspired to, and did, conduct or participate, directly or indirectly, in the management and operation of the affairs of the NJ-RICO enterprises, in relationship to Plaintiffs through a "pattern of racketeering activity," as defined in <u>N.J.S.A.</u> 2C:41-1(d).

113.    The Borough of Belmar participated as a "person" in the conduct of its own affairs, as an "enterprise," through a pattern of "racketeering activity," as defined by <u>N.J.S.A.</u> 2C:41-1(b), (c), and <u>N.J.S.A.</u> 2C:41-2(d), respectively.  This conduct violated <u>N.J.S.A.</u> 2C:41-2(c).

114.    As a result, Plaintiffs were proximately harmed by NJ-RICO Defendants' illegal conduct.  Plaintiffs suffered substantial injury to their business and/or property, including but not limited to, lost or reduced sales and revenue from the operation of the Boathouse; lost sales and revenues from 507 Main; the loss of prospective sales and revenue from the Salt facility, the destruction of years of good will that Plaintiffs built for their Boathouse Bar and Grill and 507 Main businesses, and the tens of thousands of dollars Plaintiffs spent to defend themselves from the illegal actions of the Defendants.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

115. The conduct of Defendants Borough, Doherty, Connolly, Huisman, Nicolay, Keown-Blackburn, Brennan, Magovern, Palmisano, Scott, Bianchi and Poff, as well as the conduct of the John and Jane Does referred to herein, has been extreme, outrageous and directed toward the Plaintiffs, Timothy Harmon and Matthew Harmon.

116. The aforesaid conduct has been entered into in a fashion intended to produce emotional distress or recklessly in deliberate disregard of the high degree of probability that emotional distress would be caused to the Plaintiffs Harmon.

117. The aforesaid misconduct has proximately caused the Plaintiffs Harmon emotional distress so severe that no reasonable person could be expected to endure it;

118. The aforesaid extreme and outrageous conduct has resulted in physical injury, bodily harm and emotional distress to the Plaintiffs Harmon.

119. The aforesaid Defendants are liable in damages therefor to the Plaintiffs Harmon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against all Defendants, as follows: Compensatory and consequential damages to Plaintiffs' business and property, including but not limited to, lost or reduced sales, revenue and profits; the expenses and legal fees that Plaintiffs incurred as a result of litigation arising from the racketeering activity, the cost of legal fees, engineering fees, architectural fees and other fees concerning the approval and construction of the Salt facility, in an amount to be specifically proven, but a minimum of $10,000,00.00 owing to the acts and omissions of the Defendants;

An additional amount to be proven at trial for the substantial loss of good will and business opportunity suffered by Plaintiffs as a result of the acts and omissions of the Defendants;

Threefold the damages sustained by Plaintiffs as a result of the acts and omissions of the Defendants, including but not limited to the cost of investigations, the costs of this suit (including reasonable attorney's fees) and post judgment interest;

Exemplary and/or punitive damages against the Defendants Doherty, Connolly, Huisman, Nicolay, Brennan, Keown-Blackburn, Palmisano, Cox, Scott, Bianchi and Poff for their intentional willful, wanton, outrageous or malicious misconduct, characterized by their evil or rancorous motive, ill will and intent to injure Plaintiffs' or Defendants' gross reckless or gross negligence evincing a conscious disregard for Plaintiffs' rights;

Reasonable attorneys' fees and costs; and

Equitable relief as might be appropriate pursuant to applicable law, including but not limited to:

- Enjoining Defendants from continuing their scheme to extort Plaintiffs into meeting their demands.

- Directing Defendants to transfer the 507 Main alcoholic beverage license to the Salt/Loko property and permitting the same to be operated for a three (3) year period.

- Enjoining Defendants from publishing in any format statements, reports, or press releases designed to mislead the public and unlawfully interfere with Plaintiffs' business relations;

- Enjoining Defendants from interfering with the operation of the Boathouse Bar and Grill in retaliation for the filing of this lawsuit;

- Enjoining Defendants from preventing the Boathouse Bar and Grill from operating as it has for the previous 20 years;

- Enjoining Defendants from revoking or challenging Plaintiffs' liquor licenses as a result of this lawsuit;

- Enjoining Defendants from making false allegations against Plaintiffs intended to induce New Jersey regulatory agencies to investigate Plaintiffs;

- Enjoining Defendant, Loko, LLC, from entering into any agreement which would deprive Plaintiffs of the right to operate the Salt facility for a three year period;

- For the return to Plaintiffs of all funds paid to the Defendant, Loko LLC, under all leases and agreements between Loko LLC and Plaintiffs; and

- Compensatory damages against the Defendants Doherty, Connolly, Huisman, Nicolay, Brennan, Keown-Blackburn, Magovern, Palmisano, Cox, Scott, Bianchi and Poff for the emotional distress suffered by the Plaintiffs, Harmon; and Any such further relief as the Court deems just and proper.

## CERTIFICATION

Pursuant to R. 4:5-1, the undersigned hereby certifies that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding and no other action or arbitration proceeding is contemplated.

I further certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and they will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

## REQUEST FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 36(b), Plaintiffs demand a trial by jury on all issues herein.

## DESIGNATION OF TRIAL COUNSEL

PLEASE BE NOTIFIED, Roger J. McLaughlin, Esq. and Richard J. Shaklee, Esq., are hereby designated as trial counsel in the above-captioned litigation on behalf of Plaintiffs, Timothy Harmon and Matthew Harmon.

Respectfully submitted,

*/s/ Roger J. McLaughlin*

_____
ROGER J. McLAUGHLIN
McLAUGHLIN STAUFFER & SHAKLEE, P.C.
*Attorneys for Plaintiffs*

Dated:  April 10, 2017