## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TIMOTHY HARMON, et al.,

               Plaintiffs,

    v.

BOROUGH OF BELMAR, et al.,

               Defendants.

Civil Action No.  17-cv-02437

*Document electronically filed*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Christopher Walsh, Esq.
Calvin K. May, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4883
Facsimile:  (973) 639-6326

*Attorneys for Defendants*

Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF FACTS ...................................................................................... 1

    I.     BACKGROUND ...................................................................................... 1

    II.    The Borough Council Considers the Application and a Divided Council Ultimately Denies the Application .......................................................... 2

    III.   Dockside Dining and DCJ Belmar Appeal the Denial ........................... 3

    IV.   The Plaintiffs, Except for DCJ Belmar and Two Dawgs, File Serial Notices of Tort Claim Relating Only to the Processing, Investigation, and Denial of the Application ..................................................................... 3

STANDARD OF REVIEW ...................................................................................... 4

ARGUMENT ........................................................................................................... 6

    I.     ALL CLAIMS BY DCJ BELMER AND TWO DAWGS MUST BE DISMISSED BECAUSE THEY DID NOT FILE A TORT CLAIM NOTICE, AND ALL ALLEGATIONS RELATING TO THE BOATHOUSE AND THE CONSTRUCTION OF THE LOKO FACILIY SHOULD BE STRICKEN BECAUSE NONE OF THE TORT CLAIM NOTICES GAVE NOTICE THAT PLAINTIFFS INTENDED TO ASSERT CLAIMS BASED ON THOSE EVENTS. ............................................................ 6

    II.    ALL CLAIMS AGAINST DEFENDANTS NICOLAY, KEOWN-BLACKBURN, BRENNAN, AND MAGOVERN SHOULD BE DISMISSED BECAUSE THEY ENJOY ABSOLUTE LEGISLATIVE IMMUNITY .................................................................................................. 7

    III.   COUNT I SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO STATE DEPRIVATIONS OF PROCEDURAL OR SUBSTANTIVE DUE PROCESS. .................................................................................................. 8

    IV.   COUNT II SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS HAVE FAILED TO ALLEGE AN EQUAL PROTECTION CLAIM. ................. 16

    V.    COUNTS III AND IV SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE CLAIMS UNDER FEDERAL RICO OR NEW JERSEY STATE RICO ............................................................................................. 18

    VI.   COUNTS V AND VI SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO ALLEGE INTENTIONAL INTERFERENCE WITH A CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE ........................ 26

    VII.  COUNT VII SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO ALLEGE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ........... 28

    VIII. SERVICE OF PROCESS SHOULD BE QUASHED AS TO DEFENDANTS CONNOLLY, PALMISANO, COX, AND POFF. ...................... 30

CONCLUSION ......................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc.*,
  Civ. No. 10-5303, 2011 U.S. Dist. LEXIS 28625 (D.N.J. Mar. 21, 2011)............................27

*In re Aetna UCR Litig.*,
  No. 07-3541, 2015 U.S. Dist. LEXIS 84600 (D.N.J. June 30, 2015)....................................24

*Alberts v. Gaeckler*,
  446 N.J. Super. 551 (Law Div. 2014) ....................................................................................6

*Alston v. Administrative Offices of the Del. Courts*,
  178 F. Supp. 3d 222 (D. Del. 2016)......................................................................................12

*Alvin v. Suzuki*,
  227 F.3d 107 (3d Cir. 2000)..................................................................................................14

*Aly v. Garcia*,
  333 N.J. Super. 195 (App. Div. 2000) ..................................................................................29

*Amgro, Inc. v. Lincoln Gen. Ins. Co.*,
  361 F. App'x 338 (3d Cir. 2010) ..........................................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................4, 5

*Banks v. Wolk*,
  918 F.2d 418 (3d Cir. 1990)..................................................................................................25

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
  157 F. Supp. 3d 407, 421 (D.N.J. 2016) ..............................................................................26

*Beauchamp v. Amedio*,
  164 N.J. 111 (2000) ...............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................4, 5

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998)..............................................................................................................7, 8

*Brick City Grill, Inc. v. City of Newark*,
  Civ. No. 14-4491, 2016 U.S. Dist. LEXIS 43945 (D.N.J. Mar. 30, 2016).............................18

*Brown v. City of Bordentown,*
   348 N.J. Super. 143 (App. Div. 2002) ...................................................................8

*Buck v. Hampton Twp. Sch. Dist.,*
   452 F.3d 256 (3d Cir. 2006)...............................................................................1

*Buckley v. Trenton Sav. Fund Soc.,*
   111 N.J. 355 (1988) ............................................................................28

*Castronova v. County of Bergen,*
   2015 N.J. Super. Unpub.LEXIS 1908 (Law Div. Aug. 7, 2015)......................................29, 30

*Chainey v. Street,*
   523 F.3d 200 (3d Cir. 2008)...............................................................................9

*DeBlasio v. Zoning Bd. of Adjustments,*
   53 F.3d 592 (3d Cir. 1995)................................................................................15

*Eichenlaub v. Twp. of Indiana,*
   385 F.3d 274 (3d Cir. 2004)...............................................................9, 10, 11, 13

*Eli Lilly & Co. v. Roussel Corp.,*
   23 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................26, 27

*Elmore v. Cleary,*
   399 F.3d 279 (3d Cir. 2005)...............................................................................8

*Emcore Corp. v. PricewaterhouseCoopers LLP,*
   102 F. Supp. 2d 237 (D.N.J. 2000) .....................................................................25

*Empress Casino Joliet Corp. v. Blagojevich,*
   638 F.3d 519 (7th Cir. 2011) ..............................................................................8

*Evanchko v. Fisher,*
   423 F. 3d 347 (3d Cir. 2005)..............................................................................12

*Fleet Credit Corp. v. Sion,*
   893 F.2d 441 (1st Cir. 1990)...............................................................................20

*Ford Motor Co. v. Edgewood Props., Inc.,*
   Civ. Action No. 06-4266, 2009 U.S. Dist. LEXIS 4172 (D.N.J. Jan. 20, 2009) ....................19

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009)................................................................................5

*H.J., Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989)...................................................................................24, 25

*H&R Grenville Fine Dining, Inc. v. Borough of Bayhead,*
    Civ. No. 1000325, 2011 U.S. Dist. LEXIS 145447 (D.N.J. Dec. 19, 2011 ) .........................11

*Hawk Mt. LLC v. Mirra,*
    2016 U.S. Dist. LEXIS 72962 (D. Del. June 3, 2016)...........................................................22

*Hickox v. Christie,*
    205 F. Supp. 3d 579 (D.N.J. 2016) ....................................................................................14

*Hill v. Borough of Kutztown,*
    455 F.3d 225 (3d Cir. 2006)...............................................................................................13

*Hughes v. Consol-Pa. Coal Co.,*
    945 F.2d 594 (3d Cir. 1991)...............................................................................................25

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010)...............................................................................................19

*Koynok v. Lloyd,*
    405 Fed. App'x 679 (3d Cir. 2011)......................................................................................14

*Leang v. Jersey City Bd. of Educ.,*
    198 N.J. 557 (2009) ...........................................................................................................28

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004)..........................................................................................19, 24

*Macauley v. Estate of Nicholas,*
    7 F. Supp. 3d 468 n.12 (E.D. Pa. 2014) .............................................................................20

*Madej v. Doe,*
    194 N.J. Super. 580 (Law Div. 1984) ...................................................................................6

*Maple Prop. Inc. v. Twp. of Upper Providence,*
    151 Fed. App'x 174 (3d Cir. 2005).......................................................................................9

*Marina Dist. Dev. Co. v. Ivey,*
    No. 14-2283(NLH/AMD), 2016 U.S. Dist. LEXIS 146084 (D.N.J. Oct. 21,
    2016) ...................................................................................................................................19

*Michaels v. New Jersey,*
    955 F. Supp. 315 (D.N.J. 1996) ...........................................................................................6

*Nicholas v. Penn. State Univ.,*
    227 F.3d 133 (3d Cir. 2000)..................................................................................................9

*Nicini v. Morra,*
    212 F.3d 798 (3d Cir. 2000)..................................................................................................9

*Parker Avenue, L.P. v. The City of Philadelphia*,
    660 Fed. App'x. 156 (3d Cir. 2016)................................................................16, 18

*Printing Mart-Morristown v. Sharp Elecs Corp.*,
    116 N.J. 739 (1989) .........................................................................................26

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989).............................................................................25

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)...........................................................................1, 5

*Steele v. Cicchi*,
    855 F.3d 494 (3d Cir. 2017).............................................................................11

*Strategic Envtl. Partners, LLC v. Bucco*,
    184 F. Supp. 3d 108, 127-28 (D.N.J. 2016)......................................9, 13, 15, 18

*Taylor v. Metzger*,
    152 N.J. 490 (1998) .........................................................................................29

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)...........................................................................................7

*Thomas v. Independence Tp.*,
    463 F.3d 285 (3d Cir. 2006).........................................................................11, 14

*Timber Props. v. Chester*,
    205 N.J. Super. 273 (Law Div. 1984) ................................................................8

*Tomana v. Moeller*,
    No. 2:16-cv-41, 2016 U.S. Dist. LEXIS 116700 (W.D. Pa. Aug. 30, 2016).........20

*Turner v. Wong*,
    363 N.J. Super. 186 (App. Div. 2003) ..............................................................29

*United Artists Theater Circuit, Inc. v. Twp. of Warrington*,
    316 F.3d 392 (3d Cir. 2003).............................................................................15

*United States v. Bergrin*,
    650 F.3d 257 (3d Cir. 2011).............................................................................24

*United States v. Mazzei*,
    521 F.2d 639 (3d Cir. 1975).............................................................................21

*Velop, Inc. v. Kaplan*,
    301 N.J. Super. 32 (App. Div. 1997) ................................................................26

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ...................................................................................16

*Warren v. Fisher*,
    Civ. No. 10-5343; 2013 U.S. Dist. Lexis 38212 (D.N.J. Mar. 19, 2013) ...................11, 13, 18

*In re Xanadu Project at Meadowlands Complex*,
    415 N.J. Super. 179 (App. Div. 2010) ....................................................17

*Youngblood v. DeWeese*,
    352 F.3d 836 (3d Cir. 2004) ...................................................................8

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ...............................................................................14

**Statutes**

18 U.S.C. §§ 1962(c) and (d) ...............................................................18, 19

42 U.S.C. § 1983 ...................................................................................8, 9, 16

N.J.S.A. § 2C:21-1(a)(1) .......................................................................22

N.J.S.A. §§ 2C:41-1(a)(1)(h) and (o) ...................................................20

N.J.S.A. § 2C:41-2(c) ...........................................................................18

N.J.S.A. § 2C:41-2(d) ...........................................................................19

N.J.S.A. § 33:1-42 .................................................................................17

N.J.S.A. § 2C:20-5(a)-(f) ......................................................................20

N.J.S.A. § 2C:27-3(a) ...........................................................................23

N.J.S.A. § 2C:20-5 ................................................................................20

N.J.S.A. § 2C:20-5(d) ...........................................................................20

**Rules**

Fed. R. Civ. P. 4(e)(1) ..........................................................................30

Fed. R. Civ. P. 4(e)(2) ..........................................................................30

Fed. R. Civ. P. 4 ...................................................................................30

Fed. R. Civ. P. 9(b) ...............................................................................13, 22

Fed. R. Civ. P. 12(b)(5)................................................................................30

Fed. R. Civ. P. 12(b)(6)..................................................................................4

Fed. R. Civ. P. 12(f)........................................................................................7

N.J. Ct. R. 4:4-4(a)(1)...................................................................................30

N.J. Ct. R. 4:69-1...........................................................................................14

**Regulations**

N.J.A.C. § 5:23A-2.1.....................................................................................15

N.J.A.C. § 13:2-7.7(d)...................................................................................14

N.J.A.C. § 13:2-17.1......................................................................................13

**Constitutional Provisions**

U.S. Const., Fourteenth Amendment...............................................................9

**Treatises**

Restatement (Second) of Torts, §46, cmt. d (Am. Law. Inst. 1979)...............28

## STATEMENT OF FACTS[1]

### I.    BACKGROUND.

Plaintiffs Timothy Harmon and Matthew Harmon, through their corporate entities, currently operate the Boathouse Bar and Grill and formerly operated another restaurant, 507 Main, both in the Borough of Belmar.  First Amended Complaint ("FAC") at ¶¶ 3, 15.

In January 2014, the Borough and a real estate developer, Loko, LLC, entered into a Redevelopment Agreement to develop some land in the Borough into condominiums.  FAC at ¶ 10.  During the first phase of development, scheduled to end in January 2017, Loko was allowed to "construct a temporary food/outdoor café and pier bar."  Redevelopment Agreement (attached to Declaration of April Claudio ("Claudio Decl.") at Exh. A) at 37.  The operation of the "café and pier bar" was expressly subject to Loko's obtaining all necessary government approvals.  *Id.*

More than a year later, on March 20, 2015, Loko entered into a lease (the "Lease") with a Harmon-affiliated corporation, Plaintiff DCJ Belmar, Inc., pursuant to which DCJ Belmar was to operate the "outdoor bar-club & café" at the Loko site (or the Salt facility, as it is sometimes referred to in the FAC).  Lease (Claudio Decl., Exh. B) at 1 and 7.  At the time, DCJ Belmar owned a liquor license for use at the 507 Main restaurant and bar.  In April 2015, DCJ Belmar applied for a person-to-person and place-to-place transfer of its liquor license to another Harmon-affiliated entity, plaintiff Dockside Dining, LLC, which was not a tenant at the Loko site, for use at the Loko site.  Retail Liquor License Application (the "Application) (Claudio Decl., Exh C) at 2, 3, and 8.  Thus, the Application confusingly sought to transfer *ownership* of

---

[1]The Court is obliged to ignore conclusory allegations and consider only the FAC's "well-pleaded factual allegations."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  This Statement of Facts therefore relies only on the FAC's "well-pleaded factual allegations" and materials which are referenced or integral to the FAC, matters of public records, or matters subject to judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

the license from a tenant at the Loko site to another entity with no connection to the Loko site, while also seeking to transfer the license's *location* to the Loko site.

The Application also disclosed that Timothy and Matthew Harmon were previously fined $62,500 by the New Jersey Division of Alcoholic Beverage Control. *Id*. at 6A and 6B.

## II.   THE BOROUGH COUNCIL CONSIDERS THE APPLICATION AND A DIVIDED COUNCIL ULTIMATELY DENIES THE APPLICATION.

The Application was considered at the June 8, 2016 Borough Council meeting. FAC ¶ 37. The Plaintiffs received notice of the hearing, and their attorney appeared. Minutes of June 8, 2016 Borough Council Meeting ("June 8, 2016 Minutes") (Claudio Decl., Exh. D) at 2-3. During the meeting's public session, two members of the public spoke in opposition to the Application. Ollie Klein of Klein's Fish Market expressed a "number of concerns," including concerns about the adequacy of the site's pump station, "security, fencing, noise, policing, and parking." *Id.* Gene Murray also spoke and expressed his agreement with Mr. Klein. *Id.* The Plaintiffs' attorney publicly responded to the concerns of Messrs. Klein and Murray. *Id.*

During the Council's public deliberations, Councilman Thomas Brennan, a defendant, announced that "he would be recusing from voting on all liquor license resolutions since his band plays at many of the[] establishments" whose interests are affected by such resolutions. *Id.* Thus, in addition to recusing himself from consideration of the Application, he also recused himself from the numerous other liquor-license related matters that evening. *Id.* at 4-5.

After Councilman Brennan announced his recusal, Councilwoman Janis Keown-Blackburn, a defendant, stated that she would vote against the Application because the transfer of the license was not in the best interests of the Borough's residents. *Id.* at 2. The Plaintiffs' attorney was allowed to, and did, publicly respond to the Councilwoman's concerns. *Id.* Next, Councilwoman Jennifer Nicolay, a defendant, expressed her concerns about "security, parking,

and noise" and that she would vote against the Application. *Id.* at 3. The final Council member, Councilman Brian Magovern, a defendant, favored the Application, responded to Defendant Nicolay's concerns about security and noise, and stated that he had known the Harmons for years and believed they would do a good job. *Id.*

Ultimately, with one vote in favor of the Application and two against, the resolution approving the Application did not pass. *Id.*

### III.    DOCKSIDE DINING AND DCJ BELMAR APPEAL THE DENIAL.

On June 14, 2016, Dockside Dining and DCJ Belmar appealed the denial of the Application to the Division of Alcoholic Beverage Control. June 14, 2016 Notice and Petition of Appeal (Claudio Decl., Exh. E). That appeal was transferred to the Office of Administrative Law and remains pending. Notice of June 13, 2017 Status Conference (Claudio Decl., Exh. F).

### IV.    THE PLAINTIFFS, EXCEPT FOR DCJ BELMAR AND TWO DAWGS, FILE SERIAL NOTICES OF TORT CLAIM RELATING ONLY TO THE PROCESSING, INVESTIGATION, AND DENIAL OF THE APPLICATION.

On or about August 17, 2015, Dockside Dining, Timothy Harmon, and Matthew Harmon filed a Tort Claim Form ("Original Notice") with the Borough (Claudio Decl., Exh. G). The Original Notice identified the individuals who were allegedly at fault as Defendant Mayor Doherty and Defendants Colleen Connolly, Andrew Huisman, and Thomas Palmisano. Original Notice at 2. The Original Notice described the "negligence or wrongful acts . . . which caused [the claimants'] damages" as follows: "Negligently and intentionally failed to investigate, process and report on license transfer application; failed to respond to inquiries; failed to interview relevant parties." *Id*. The Original Notice does not mention anything about the Boathouse or any construction issues relating to the Loko site. Also, neither plaintiff DCJ Belmar nor plaintiff Two Dawgs, Inc. was identified as claimants.

3

On July 15, 2016, an Amended Tort Claim Form ("July 2016 Notice") was filed. (Claudio Decl., Exh. H).  The July 2016 Notice added two more claimants:  Loko and its principal Gregory Kapalko.  Despite adding new claimants, the July 2016 Notice still did not identify DCJ Belmar or Two Dawgs as claimants.  *Id*. at 1.  The July 2016 Notice also added the following agencies and employees who allegedly injured the claimants: the Borough, the Borough's police department, the Mayor and Council of Belmar, and the individual council members.  Defendants Cox, Scott, Bianchi, and Poff were not mentioned in the July 2016 Notice.  *Id*. at 2.  The July 2016 Notice also added the following sentence to the description of the "negligence or wrongful acts . . . which caused [the claimants'] damages:"  "Maliciously, intentionally or in a grossly negligent manner denied the aforesaid [license transfer] Application, without legal or factual basis."  *Id*.  Thus, the July 2016 Notice still focused exclusively on the Application.  Neither the Boathouse nor the construction of the Loko facility was mentioned.

More than a month later, on August 22, 2016, a Second Amended Tort Claim Form (the "August 2016 Notice") was filed.  (Claudio Decl., Exh. I).  The August 2016 Notice made no changes to the list of claimants, the list of agencies and employees who caused the claimants harm, or the description of the "negligence or wrongful acts . . . which caused [the claimants'] damages."  *Id.* at 1-2.  Thus, despite filing *three* separate notices of tort claim, plaintiffs DCJ Belmar and Two Dawgs were never identified as claimants; defendants Cox, Scott, Bianchi, and Poff were never identified as employees who were allegedly at fault; and acts relating to the Boathouse or the construction of the Loko facility were never alleged to have caused harm.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus "a

complaint must do more than allege the plaintiff's entitlement to relief.  [It] has to show such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

While the Court must accept a complaint's well-pleaded factual allegations, it should disregard "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Santiago*, 629 F.3d at 128; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

The FAC is full of conclusory and wildly speculative allegations of misconduct.  For instance, Paragraph 22 alleges that Defendant Mayor Doherty "instructed Borough employees . . . to delay processing of the Plaintiffs['] alcoholic beverage licensing application and to interfere with the construction process for the Salt facility."  This allegation is conclusory and not entitled to a presumption of truth.  *Santiago*, 629 F.3d at 132 (allegations that police chief and lieutenant "directed" others to violate plaintiff's constitutional rights are "naked assertions" that "are not entitled to the assumption of truth").  Likewise Paragraph 97 which alleges that Defendants Bianchi and Poff obtained their employment "in exchange for [an] agreement that they would . . . harass, fine and interfere with the completion of the Plaintiff's Salt facility" must be disregarded. *Iqbal*, 556 U.S. at 679-80 (allegation that defendants "'had entered into a contract, combination, or conspiracy to prevent competitive entry and had agreed not to compete with one another' . . . was a 'legal conclusion' and as such not entitled to the assumption of truth") (quoting *Twombly*, 550 U.S. 544, 551 (2007)).

After discarding these and the numerous other allegations that are not well pleaded, the FAC tells an innocuous story of civil servants and public officials faithfully and legally discharging their duties.  The FAC must therefore be dismissed.

5

## ARGUMENT

I.     **ALL CLAIMS BY DCJ BELMAR AND TWO DAWGS MUST BE DISMISSED BECAUSE THEY DID NOT FILE A TORT CLAIM NOTICE, AND ALL ALLEGATIONS RELATING TO THE BOATHOUSE AND THE CONSTRUCTION OF THE LOKO FACILIY SHOULD BE STRICKEN BECAUSE NONE OF THE TORT CLAIM NOTICES GAVE NOTICE THAT PLAINTIFFS INTENDED TO ASSERT CLAIMS BASED ON THOSE EVENTS.**

"[T]o maintain a cause of action against a public entity, a claimant must file a notice of claim with the public entity within ninety days of accrual of the cause of action. A claimant's failure to satisfy this precondition mandates dismissal." *Michaels v. New Jersey*, 955 F. Supp. 315, 329 (D.N.J. 1996); *Madej v. Doe*, 194 N.J. Super. 580, 588-89 (Law Div. 1984) (the failure to file a notice of claim is "jurisdictional"). The purposes of the notice requirement are:

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) inform the State in advance as to the indebtedness or liability that it may be expected to meet.

*Beauchamp v. Amedio*, 164 N.J. 111, 121-22 (2000) (internal quotations and citations omitted).

None of the Plaintiffs' notices were filed on behalf of DCJ Belmar or Two Dawgs or otherwise identify them as prospective plaintiffs. The Court should therefore bar them from asserting a claim here. *See Alberts v. Gaeckler*, 446 N.J. Super. 551, 563 (Law Div. 2014) (dismissing claim by husband when wife's tort claim notice did "not explicitly or implicitly suggest [that the husband] intends to assert a . . . claim"). A contrary rule would frustrate the purposes of the notice requirement: the public entity would not be able to investigate potential claims or resolve them prior to litigation. The Borough is not required to assume that other unnoticed corporate entities may make claims for liability. *Id.*

Furthermore, the tort claims notices do not even hint at events underpinning large swaths of the FAC.  As discussed above, the Plaintiffs' three notices gave notice only of injuries flowing from the manner in which the Application was handled.  Noticeably absent are allegations relating to interference and harassment with the construction of the Loko site by either the police or construction officials.  In fact, construction officials Bianchi and Poff are not named in any of the Plaintiffs' notices.  Similarly, there is no reference to any allegations relating to the Boathouse.  Accordingly, all of the Plaintiffs' allegations relating to the Boathouse and the construction of the Loko facility should be ignored by the Court in assessing whether the Plaintiffs have adequately pleaded any causes of action.  In addition, in the event the FAC is not dismissed in its entirety, all allegations in the FAC relating to the Boathouse and the construction of the Loko facility[2] should be stricken as "immaterial" and "impertinent" pursuant to Rule 12(f).

Finally, inasmuch as Defendants Poff, Bianchi, Cox, and Scott are not mentioned in the Plaintiffs' notices, all claims against them should be dismissed.

## II.   ALL CLAIMS AGAINST DEFENDANTS NICOLAY, KEOWN-BLACKBURN, BRENNAN, AND MAGOVERN SHOULD BE DISMISSED BECAUSE THEY ENJOY ABSOLUTE LEGISLATIVE IMMUNITY.

All counts of the FAC are directed at council members Nicolay, Keown-Blackburn, Brennan, and Magovern (the "Council Members").  But every well-pleaded allegation against the Council Members describes purely legislative activity which is afforded absolute immunity. "The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law."  *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998).  "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"  *Id.* at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

---

[2]These allegations are set forth at: ¶¶ 22 (partial), 23-25, 27-33, 53, 69, 75, 77 (partial), 79, 81, 84, 91, 92, 95-99, 104-08, and 115.

Plaintiffs' well-pleaded allegations show only that: Defendants Nicolay and Magovern voted in favor of the Redevelopment Agreement, FAC ¶¶ 9, 43; the Council Members enacted an ordinance creating a permit-parking zone near the Boathouse, *id.* ¶¶ 32, 107; "Defendant Brennan recused himself from participating in the consideration of [the Application]," *id.* ¶ 42; and Defendants Nicolay and Keown-Blackburn voted against the Application. *Id.* ¶ 43.

Each of these allegations constitutes legislative action. *Bogan v. Scott-Harris*, 523 U.S. 44, 47, 55 (1998) (mayor and city council member immune from liability for advocating, promoting, and passing an ordinance, stating: "acts of voting for an ordinance were, in form, quintessentially legislative."); *Youngblood v. DeWeese*, 352 F.3d 836, 840 (3d Cir. 2004) (legislative activities include "voting for a resolution"); *Brown v. City of Bordentown*, 348 N.J. Super. 143, 148 (App. Div. 2002) (adopting *Bogan*'s characterization of legislative act).

Legislative immunity is absolute and allows no kind of liability to be imposed.  The immunity thus bars claims under 42 U.S.C. § 1983, RICO, and state law.  *See Bogan*, 523 U.S. at 54 ("Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities."); *Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 529-30 (7th Cir. 2011) ("[L]ike § 1983, there is nothing in RICO to demonstrate the 'clear legislative intent' required to abrogate common-law immunity."); *Timber Props. v. Chester*, 205 N.J. Super. 273, 288-89 (Law Div. 1984) (absolute legislative immunity "was preserved under the Tort Claims Act"). Accordingly, the Court should dismiss the FAC as against the Council Members.

## III.   COUNT I SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO STATE DEPRIVATIONS OF PROCEDURAL OR SUBSTANTIVE DUE PROCESS.

Count I asserts claims under 42 U.S.C. § 1983 against all the individual Defendants.  To state a § 1983 claim, one must allege that the defendant: (1) acted under color of state law and (2) deprived the plaintiff of her constitutional or federal statutory rights.  *Elmore v. Cleary*, 399

F.3d 279, 281 (3d Cir. 2005).  "The first step in evaluating a Section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (internal quotations and citations omitted).

The Plaintiffs allege that they were deprived of their "constitutional rights to due process of law under the Fourteenth Amendment."  FAC ¶¶ 69, 70, 74, 75, and 79.  There are two types of constitutional due process rights:  substantive and procedural.  *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 138-39 (3d Cir. 2000).  The FAC does not specify which type is being asserted, but the FAC's allegations fail to allege a due-process violation of either kind.

### A.    Plaintiffs Have Not Pleaded a Violation of Substantive Due Process.

"The core concept of [substantive] due process is protection against arbitrary action and only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (internal quotations, citations, and alteration omitted).  Thus, a substantive due process claim must allege: (1) an interest "protected by the substantive due process clause," (2) the government's deprivation of that interest, and (3) governmental action so arbitrary and unreasonable that it "shocks the conscience."  *Id*.  The "shocks the conscience" test "is a high bar—'what shocks the conscience is only the most egregious official conduct.'"  *Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 127-28 (D.N.J. 2016) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004)).  Importantly, a public official's alleged improper motive by itself does not "shock the conscience."  *Id*.  And "the politics and animosities that often animate local decision-making are not matters of constitutional concern."  *Maple Prop. Inc. v. Twp. of Upper Providence*, 151 Fed. App'x 174, 180 (3d Cir. 2005).

### 1.    Boathouse Allegations

The FAC first alleges that the individual Defendants (except for Bianchi and Poff) "caused the Belmar police department to disrupt the operation of the Boathouse [] through a pattern of threats, intim[id]ation, arbitrary enactments and fraud," FAC ¶ 69, and placed "arbitrary and unreasonable special conditions on Plaintiffs' liquor license for the Boathouse[.]" FAC ¶ 75.  For reasons discussed in Point I, these allegations must be ignored because the Boathouse is not mentioned in any of the Plaintiffs' three tort claim notices.

Moreover, virtually all of the allegations relating to the Boathouse are conclusory and should not be considered by the Court.  For instance the Plaintiffs repeatedly allege that they were harassed and threatened in the operation of the Boathouse, but they never allege any specific acts of the Defendants constituting such harassment or threats.  FAC ¶¶ 30, 53, 69, and 108.  Also, while Paragraph 75 refers to special conditions being placed on the Boathouse license, no allegations indicate what those conditions were, what actions the individual Defendants took to impose them, or why the placement of those conditions was arbitrary.

The only *facts* alleged about the Boathouse are that the Borough denied an application for a temporary permit to extend its premises on St. Patrick's Day and enacted a parking-permit requirement for the benefit of residents living near the Boathouse. FAC ¶¶ 30, 32.  Neither of these acts comes close to "shocking the conscience."  Indeed, the Third Circuit has found that the following allegations about the acts of zoning officials do not "shock the conscience":  (1) applying "subdivision requirements to [plaintiffs'] property that were not applied to other parcels"; (2) pursuing "unannounced and unnecessary inspection and enforcement actions"; (3) delaying "certain permits and approvals"; (4) "improperly increas[ing] tax assessments"; and (5) "malign[ing] and muzzl[ing] the [plaintiffs]".  *Eichenlaub*, 385 F.3d at 285-86.  By comparison, the FAC's two factual allegations about the Boathouse are child's play.

In addition, the right to temporarily enlarge the premises where alcohol can be served on St. Patrick's Day and to have unrestricted parking around one's business are not fundamental rights that trigger substantive due process concerns. *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) ("substantive due process rights are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution") (internal quotations and citations omitted).

### 2.    Liquor License Allegations

The Plaintiffs also allege that the individual Defendants (except for Bianchi and Poff) deprived them of due process by causing "the alcoholic beverage license transfer . . . to be intentionally delayed and arbitrarily denied." FAC ¶¶ 70, 74. Again, such allegations hardly "shock the conscience." *Eichenlaub*, 385 F.3d at 286 ("delay[ing] permits and approvals," among many other alleged actions, did not "shock the conscience"); *Warren v. Fisher*, Civ. No. 10-5343; 2013 U.S. Dist. Lexis 38212, at *29 (D.N.J. Mar. 19, 2013) (complaint alleging, among many other things, that plaintiffs' "applications before town committees were delayed and denied" failed to state a substantive due process claim).

Moreover, one's interest in transferring a liquor license is not protected by substantive due process. *Thomas v. Independence Tp.*, 463 F.3d 285, 297 (3d Cir. 2006) ("the denial of the plaintiff's application for a liquor license transfer cannot support a due process claim"); *H&R Grenville Fine Dining, Inc. v. Borough of Bayhead*, Civ. No. 1000325, 2011 U.S. Dist. LEXIS 145447 at *51 (D.N.J. Dec. 19, 2011 ) (no law supports idea that "a Liquor License constitutes a fundamental property interest for purposes of a substantive due process analysis").

In addition, notwithstanding the Plaintiffs' conclusory allegation that the denial of the Application was "arbitrary," the minutes of the Borough Council meeting tell a completely different story. The issue was thoroughly debated by the public, the Plaintiffs' attorney, and the

three voting council members.   And the two members who voted against the transfer had legitimate reasons for their decisions based on concerns for security, noise, and parking. (Claudio Decl., Exh. <u>D</u>).

### 3.    Construction Allegations

Finally, the Plaintiffs allege that individual defendants Doherty, Connolly, "certain members of the Borough Council," Bianchi, and Poff "implemented a scheme and policy to delay, damage and destroy the Salt project through fabricated and fraudulently alleged U.C.C.; CAFRA and Belmar Code violations."  FAC ¶ 79.  As already discussed, these allegations must be ignored because no notice of them was given in the Plaintiffs' tort claims notices.

Moreover, no *facts* are alleged to suggest any wrongdoing in connection with the construction of the Loko site.   Besides Paragraph 79's entirely conclusory reference to a fraudulent CAFRA violation, the FAC contains just one other reference to a CAFRA violation: that "Defendants Connolly and Huisman attempted to stop the project on the basis of a false claim of a New Jersey Department of Environmental Protection CAFRA violation, which never existed."  FAC ¶ 29.   Similarly, the only other reference to a Uniform Construction Code violation is that Defendants Bianchi and Poff "falsely alleged and cited Plaintiffs for non-existent Uniform Construction Code violations[.]"  FAC ¶ 97.  But no facts are alleged identifying the nature of the alleged CAFRA and Code violations or explaining how and why they were "false." These deficiencies require dismissal of the construction-related claims.  *Evanchko v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (a party asserting a §1983 claim must identify the offending conduct, who engaged in it, and when and where it occurred); *Alston v. Administrative Offices of the Del. Courts*, 178 F. Supp. 3d 222, 231 (D. Del. 2016) ("A civil rights complaint must state the conduct, time, place and persons responsible for the alleged civil rights violation"). Moreover, inasmuch as the construction allegations are based on "fabricated and fraudulent[]"

violations of ordinances and regulations, they are subject to Rule 9(b)'s heightened pleading requirement.  When measured against Rule 9(b), the construction allegations fail all the more.

Finally, the borough officials' alleged efforts to interfere with the construction of the Loko site do not "shock the conscience."  *Eichenlaub*, 385 F.3d at 286 ("pursu[ing] unannounced and unnecessary inspections and enforcement actions" did not "shock the conscience"); *Strategic Envtl. Partners*, 184 F. Supp. 3d at 129-30 ("allegations that Defendants harassed and obstructed [remediation project] through targeted police stops, ordered all applications to go through [defendant's] office, planted or permitted asbestos to be delivered to [plaintiff's] property and then sought an injunction on that basis" did not "shock the conscience"); *Warren,* 2013 U.S. Dist. LEXIS 38212 at *29 (allegation that "municipal defendants subject [plaintiffs] to unannounced and unnecessary inspections" failed to state a substantive due process claim).

### B.      Plaintiffs Have Not Pleaded a Violation of Procedural Due Process.

Plaintiffs also fail to allege a procedural due process violation.  To state a procedural due process claim, a "plaintiff must allege that  (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

### 1.      Boathouse Allegations

As mentioned above, the only well-pleaded allegations relating to the Borough's dealings with the Boathouse are that a St. Patrick's Day expansion permit was denied and that the Borough enacted a permit-parking zone near the Boathouse.  There are no allegations that the Plaintiffs were deprived of an opportunity to be heard regarding those actions.  Consequently, they failed to state a procedural due process claim relating to the Boathouse.  Moreover, both actions could have been appealed by the Harmons, but were not.  *See* N.J.A.C. § 13:2-17.1

(providing for appeal to Director of the Division of Alcoholic Beverage Control from municipal action concerning denial of retail license); N.J. Ct. R. 4:69-1 (providing for action in lieu of prerogative writ to appeal municipal ordinance).  The Plaintiffs' failure to avail themselves of those procedural protections is fatal to their procedural due process claim.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (no due process violation when State "has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them"); *Koynok v. Lloyd*, 405 Fed. App'x 679, 682 (3d Cir. 2011) ("District Court correctly determined that Koynok cannot show that he was deprived of due process . . . because Koynok failed to take advantage of all available avenues for appellate review").

### 2.   Liquor License Allegations

As also mentioned above, "the denial of the plaintiff's application for a liquor license transfer cannot support a due process claim."  *Thomas*, 463 F.3d at 297.  Thus, the Plaintiffs' procedural due process claim based on the failure to approve the Application must be dismissed.

Moreover, the Plaintiffs received adequate process regarding the Application.  With respect to their charge that the Application was "intentionally delayed," N.J.A.C. § 13:2-7.7(d) allows applicants to appeal to the Division of Alcoholic Beverage Control if no action is taken on a transfer application within 60 days of filing.  The Plaintiffs could have used this regulation to expedite their Application, but they didn't.  Consequently, they cannot claim a procedural due process violation.

With respect to the Borough Council's denial of the Application, the Plaintiffs were given notice of a hearing at which they appeared and participated.  (Claudio Decl., Exh. D).  The Constitution requires nothing more.  *Hickox v. Christie*, 205 F. Supp. 3d 579, 601 (D.N.J. 2016) ("[w]here practicable, due process generally requires notice and a hearing in advance of a deprivation of liberty") (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

They also were granted an appeal of the denial, which is pending in the Division of Alcoholic Beverage Control.  June 14, 2016 Notice and Petition of Appeal (Claudio Decl., Exh. E); May 9, 2017 Notice of June 13, 2017 Status Conference (Claudio Decl., Exh. F).

These procedures meet the requirements of constitutional due process.  *DeBlasio v. Zoning Bd. of Adjustments*, 53 F.3d 592, 597 (3d Cir. 1995) (no procedural due process violation exists "when a state affords a full judicial mechanism with which to challenge the administrative decision in question") (internal quotations and citations omitted), *abrogated on other grounds*, *United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003); *Strategic Envtl. Partners, LLC*, 184 F. Supp. 3d at 127-28 (dismissing procedural due process claim because plaintiff could, and did, challenge municipal decision through the courts).

### 3.    Construction Allegations

As discussed above, the factual allegations relating to the construction issues are terribly scant.  At most they allege that some of the individual defendants gave erroneous citations for a construction code violation and improperly issued a stop work order.  As with the denial of the Appeal, there are appeal procedures for reviewing such decisions.  *See* July 23, 2015 Notice of Violation and Order to Terminate (describing appeal process under N.J.A.C. § 5:23A-2.1).  In fact, the Plaintiffs took advantage of those procedures by appealing the stop work order and ultimately paying a $500 fine to resolve the issue.  *See* August 19, 2015 Letter of Monmouth County Construction Board of Appeals (Claudio Decl., Exh. L); December 21, 2015 Letter of Plaintiffs' Counsel to Ted Bianchi (Claudio Decl., Exh. M); December 21, 2015 Letter of Plaintiffs' Counsel to Monmouth County Construction Board of Appeals (Claudio Decl., Exh. N).

## IV.   COUNT II SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS HAVE FAILED TO ALLEGE AN EQUAL PROTECTION CLAIM.

Count II asserts a § 1983 claim against all Defendants based on an alleged violation of the Equal Protection Clause, contending that the "defendants intentionally implemented a policy of selectively enforcing state and local laws against Plaintiffs." FAC ¶ 84.

Inasmuch as the Plaintiffs do not allege membership in a protected class, they must prove a "class of one" Equal Protection claim, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a "class of one" claim, the plaintiff must allege not only that other parties were treated differently, but also that the plaintiff and the other parties are "alike in all relevant respects." *Parker Avenue, L.P. v. The City of Philadelphia*, 660 Fed. App'x. 156, 159 (3d Cir. 2016). The Plaintiffs here have failed to identify any other party "alike in all relevant respects" who was treated differently by the Defendants. Only two paragraphs, Paragraphs 20 and 44, contain allegations about how others were treated. But neither of them sufficiently allege facts showing that the Plaintiffs and the others were "alike in all relevant respects."

Paragraph 20 alleges that liquor license transfer applications of Chef's International and 10th Avenue Burrito Company were processed within 60 days. But none of the relevant comparable details of those applications are alleged. Among other things, the FAC does not allege:  1) whether Chef's International and 10th Avenue Burrito were previously fined by the Division of Alcoholic Beverage Control, as the Harmons have been; 2) whether the other applications showed that the purported transferee was not, in fact, a tenant at the location shown on the application, as was the case with the Application; 3) whether the other applicants were proposing to finance their projects in ways relevantly similar to the financing mechanisms

proposed by the Harmons; 4) whether the other applications were also filed at a time of year when the Borough's police personnel had little time to investigate license transfer applications. By failing to allege facts relating to these and other relevant details, the Plaintiffs have failed to meet their burden of alleging facts showing that the applications of Plaintiffs, Chef's International, and 10th Avenue Burrito are "alike in all relevant respects."

Paragraph 44 alleges that the Borough Council approved other "outdoor bar facilities," specifically mentioning five[3] such alleged facilities.  Again, the Plaintiffs failed to plead facts sufficient to show that the situations of any of the other five facilities are "alike in all relevant respects" to the Plaintiffs.  To be sure, there is one important difference apparent from the FAC: the Plaintiffs were denied a request to *transfer* a license while the other five entities mentioned in Paragraph 44 allegedly received approvals for "outdoor bar facilities."  Also, the FAC does not state whether the other applications were opposed by members of the public, as the Plaintiffs' Application was.  The FAC also does not state whether the other facilities were subject to the jurisdiction of Belmar's Borough Council.[4]  And, except for a conclusory allegation that certain (unidentified) approved outdoor bar facilities are "in much closer proximity to residential structures than is the Salt property," the FAC does not state any facts suggesting that the approved outdoor facilities were in locations relevantly similar to the Loko site.  Finally, the FAC does not allege whether the other facilities presented the same issues relating to noise,

---

[3]The "Marina Grille" and the "9th Avenue Pier" refer to the same operation.  FAC ¶ 49.

[4]In fact, inasmuch as it is admitted that the 9th Avenue Pier/Marina Grille is situated on municipal property, FAC ¶49, it is subject to the jurisdiction of the Division of Alcoholic Beverage Control, not the Borough of Belmar.  N.J.S.A. § 33:1-42*; In re Xanadu Project at Meadowlands Complex*, 415 N.J. Super. 179, 182 (App. Div. 2010) ("when the sales will take place on State property, authorization to sell is obtained by way of a special concessionaire permit issued by the Director of the New Jersey Division of Alcoholic Beverage Control").

parking, security, fencing, and adequacy of pump station that concerned the Council Members and the citizens who opposed the Application.

The failure to allege these details about the other facilities and show that they are relevantly similar to the Plaintiffs' situation is fatal to the Plaintiffs' Equal Protection claim. *Parker Avenue*, 660 Fed. App'x at 159 (affirming dismissal of Equal Protection claim because plaintiff "failed to allege whether any of [the other applicants] were opposed by neighbors or local civic groups" or "were similar regarding their locations or surroundings, including with respect to issues such as traffic, noise, density, or size of the residential development"); *Strategic Envtl. Partners*, 184 F. Supp. 3d at 126 (dismissing Equal Protection claim of landfill operator because it failed to allege facts showing comparator landfill also "was a legacy landfill subject to the newly enacted requirements of the Legacy Landfill Law, was creating pervasive, malodorous smells, or that the owners of [the other landfill] entered into a consent order with the DEP"); *Brick City Grill, Inc. v. City of Newark*, Civ. No. 14-4491, 2016 U.S. Dist. LEXIS 43945, at *15-16 (D.N.J. Mar. 30, 2016) (dismissing Equal Protection claim where plaintiff failed to allege "facts to support the inference that these locations are alike 'in all relevant aspects'—namely that these other facilities were licensed by the Newark Division of Alcohol Beverage Control Board, were subject to an investigation following a violent altercation nearby, and did not make use of the formal due process"); *Warren*, 2013 U.S. Dist. LEXIS 38212, at *24 ("Merely alleging that other mining operations exist within the town lines does not plausibly suggest that those mines are similar in all relevant aspects to Continental, for purposes of the Equal Protection Clause").

## V.   COUNTS III AND IV SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE CLAIMS UNDER FEDERAL RICO OR NEW JERSEY STATE RICO.

Counts III and IV assert violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and its state-law analogue, N.J.S.A. § 2C:41-2(c)

and (d) ("NJ RICO").[5]   To state a RICO claim under § 1962(c), one must allege:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (internal quotations omitted) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).[6]

Plaintiffs assert their RICO allegations against only the individual Defendants (the "RICO Defendants"), FAC ¶¶ 89, 91, and allege that they were "associated" with one or more "RICO enterprises"—Belmar and its Police Department, Council, Construction Department, and Code Enforcement Department—and operated the enterprises through a pattern of racketeering acts, specifically (1) extortion and attempted extortion; (2) forgery and fraud; and (3) improper influence.

### A.   Forgery, Fraud, and Improper Influence Are Not RICO Predicate Acts.

Section 1961(1)(A) defines "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical  . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]"  Sections 1961 (B) through (G) list

---

[5]Because RICO and NJ RICO are similar and because the FAC devotes nearly all of its racketeering allegations to RICO, this memorandum will principally address RICO, noting NJ RICO variations where appropriate.

[6]The elements of a NJ RICO claim are similar:

(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by, or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured.

*Marina Dist. Dev. Co. v. Ivey*, No. 14-2283(NLH/AMD), 2016 U.S. Dist. LEXIS 146084, at *23-24 (D.N.J. Oct. 21, 2016) (citing *Ford Motor Co. v. Edgewood Props., Inc.*, Civ. Action Nos. 06-1278; and 06-4266, 2009 U.S. Dist. LEXIS 4172, at *38 (D.N.J. Jan. 20, 2009); N.J.S.A. § 2C:41-2(c)).

indictable federal offenses which can also be racketeering activity, but none are applicable here. Thus, the FAC alleges only one type of racketeering activity listed in §1961—extortion.

Plaintiffs' other proposed predicate acts—forgery, fraud, and improper influence—are not racketeering activity under RICO.[7]  *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir. 1990) ("acts of common law fraud that do not implicate the mails (or the wires) do not constitute 'racketeering activity'" under RICO); *Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 483 n.12 (E.D. Pa. 2014) ("fraud, forgery or identity theft . . . are clearly not racketeering activity"); *Tomana v. Moeller*, No. 2:16-cv-41, 2016 U.S. Dist. LEXIS 116700, at *23 (W.D. Pa. Aug. 30, 2016)  ("'common law fraud' is not a RICO predicate act.").

### B.    The Amended Complaint Does Not Plead a Claim of Extortion.

The Plaintiffs fail to allege facts showing that any RICO Defendant committed extortion. "A person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion."  N.J.S.A. § 2C:20-5.  Extortion, in turn, is defined as a threat to commit one of several listed harms, including threats to "[t]ake or withhold action as an official, or cause an official to take or withhold action[.]".  N.J.S.A. § 2C:20-5(d).[8]

A fundamental problem with Plaintiffs' extortion claim is that none of the RICO Defendants are alleged to have obtained or attempted to obtain any property from Plaintiffs. Plaintiffs characterize their property as "the right to open and operate their business[.]"  FAC ¶ 99.  Assuming that this constitutes "property" for purposes of extortion, no RICO Defendant is alleged other than conclusorily to have received or sought to receive this or any other "property"

---

[7]Under NJ RICO forgery and extortion are predicate acts.  N.J.S.A. § 2C:41-1(a)(1)(h) and (o). Improper influence is not a predicate act under NJ RICO.

[8]Although Plaintiffs allege violations of N.J.S.A. § 2C:20-5(a)-(f), the FAC alleges no threats of bodily harm or other criminal offense (5(a)), to accuse or charge someone with an offense (5(b)), to expose a secret (5(c)), to strike or boycott (5(e)), or to testify or withhold testimony (5(f)).

from the Plaintiffs.  Without an allegation that a RICO Defendant obtained or sought to obtain the Plaintiffs' property, no theft by extortion or attempted theft by extortion is alleged. Elsewhere, the Plaintiffs merely recite elements of the claim—that RICO Defendants had "the specific intent to extort money, property and pecuniary benefit from Plaintiffs"—but allege not a single well-pleaded fact that RICO Defendants obtained this property, or even demanded it.

Equally fatal, Plaintiffs never allege a well-pleaded threat.  The FAC's only references to threats are found in Paragraphs 99 and 104.  Paragraph 99, which alleges that the "RICO Defendants threatened to take and/or withhold official action," is entirely conclusory.  It does not indicate whether the threat was to take some type of action or to refrain from acting.  It also does not indicate which Defendant made the threat, how the threat was made, to whom the threat was made, what the threatened official action was, or what the Defendant wanted in exchange.

Paragraph 104 alleges that the RICO Defendants threatened "Construction Official Bianchi; Code Enforcement Officer Poff; Electrical Sub-Code Official Callahan and Fire Marshall John [R]izzitello."  FAC ¶ 104.  Ignoring for a moment the absurd implication that some RICO Defendants threatened themselves in support of a common conspiracy and that all allegations relating to the construction of the Loko facility should be ignored for reasons stated in Point I, this allegation also is entirely conclusory.  Like Paragraph 99 it does not allege any *facts* showing the existence of a threat.  Nor does the paragraph allege a demand for property.

The Plaintiffs have thus failed to allege a predicate act of extortion.[9]

---

[9]Plaintiffs also allege common law extortion as a predicate act.  FAC ¶ 94.  Common law extortion also requires the taking of Plaintiffs' property, which, as discussed above, is lacking here. *United States v. Mazzei*, 521 F.2d 639, 650-51 (3d Cir. 1975) ("At common law extortion was . . . 'an abuse of public justice, which consists in any officer's unlawfully taking, by colour of his office, from any man, any money or thing of value, that is not due to him, or more than is due, or before it is due.'").

### C.    The Amended Complaint Does Not Plead a Claim of Forgery.

While forgery is not a predicate act under RICO, it can be under NJ RICO.  The Plaintiffs have nevertheless failed to plead facts supporting this claim.  "A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor . . . (1) [a]lters or changes any writing of another without his authorization[.]"  N.J.S.A. § 2C:21-1(a)(1).

The Plaintiffs allege—"upon information and belief"—that Defendants Huisman, Cox, and Scott "altered or changed multiple writings, interviews and statements during the investigation and contained in the Belmar Police Department 507 Main transfer investigation file."   FAC ¶ 101; *see also id.* ¶ 102 (alleging "Defendants" "altered or changed multiple statements of witnesses")).  As a species of fraud, forgery must be pleaded with particularity; yet the Plaintiffs fail to allege a specific RICO Defendant who forged a specific document.  *See Hawk Mt. LLC v. Mirra*, 2016 U.S. Dist. LEXIS 72962, at *53-54 (D. Del. June 3, 2016) (forgery allegations did not satisfy "Rule 9(b) because it is unclear which defendants are precisely charged with the forgeries and who transmitted the forged documents in each instance. . . . [T]he allegations in the present case grouped together seven defendants accused of forging and transmitting Jordan's signature, without distinguishing the separate roles of each defendant.").  The Plaintiffs also do not say which RICO Defendant forged which document, how the document was altered or changed, or how these changes were intended to defraud or injure anyone.  Accordingly, the Plaintiffs have failed to allege forgery with respect to any RICO Defendant.

**D.      The Amended Complaint Does Not Plead a Claim of Improper Influence.**

Improper influence is not a valid predicate act for RICO or NJ RICO.  Even if it were, it would be subject to the same infirmities as extortion because the FAC contains no well-pleaded allegations of threats by the RICO Defendants.

A person commits an offense of improper influence:

> if he directly or indirectly: [1] Threatens unlawful harm to any person with purpose to influence a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election; or [2] Threatens harm to any public servant with purpose to influence a decision, opinion, recommendation, vote or exercise of discretion in a judicial or administrative proceeding; or [3] Threatens harm to any public servant or party official with purpose to influence him to violate his official duty.

N.J.S.A. § 2C:27-3(a)

The Plaintiffs allege conclusorily that "Construction Official Bianchi; Code Enforcement Officer Poff; Electrical Sub-Code Official Callahan and Fire Marshall John [R]izzitello" were threatened, but they fail to allege who threatened these public servants or any facts showing they were threatened.  FAC ¶ 104.  Likewise, at Paragraph 106, the Plaintiffs allege that "Defendants Doherty and Connolly threatened to unlawfully harm the Construction Official [Defendant Bianchi], the Code Enforcement Officer [Defendant Poff] and other sub-code officers in order to force them to harass the Plaintiffs[.]"  This allegation, again made "upon information and belief," is completely conclusory and does not provide any factual detail.  It is simply a parroting of a statutory element of the crime.  The allegation provides neither the nature of the threat, who made it, who received it, nor when it was made.

Paragraph 108, alleging "upon information and belief"[10] that Defendant Huisman "threatened the Construction and Sub-code officials," is insufficient for the same reasons. The Plaintiffs also allege that Defendant Connolly "urged" "neighbors of the Boathouse Bar and Grill" to lodge false complaints, but this allegation does not describe a threat nor suggest a threat against a public servant. *Id.* ¶ 105. Finally, the Plaintiffs allege that Defendants Doherty, Connolly, Huisman, and the Council Members "caused a permit parking ordinance to be enacted," an action that is plainly not a threat. *Id.* ¶ 107. Thus, the Plaintiffs have failed to allege an offense of improper influence.

Moreover, inasmuch as all the allegations of improper influence relate to the construction of the Loko facility and the Boathouse, they must be ignored.

### E.    The Plaintiffs Cannot Show a Pattern of Racketeering Activity.

The Plaintiffs' difficulties pleading a single predicate act are compounded by the fact that "[a] pattern of racketeering activity requires at least two predicate acts of racketeering," *Lum*, 361 F.3d at 223, and that pattern of racketeering activity must be shown as to *each defendant*:

> Plaintiffs also must show that each defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." This has been described as "a very difficult test to satisfy," because mere association with an enterprise does not violate the statute. Rather, the "conduct or participate" element requires a defendant to "have some part in directing those affairs."

*In re Aetna UCR Litig.*, No. 07-3541, 2015 U.S. Dist. LEXIS 84600, at *84-85 (D.N.J. June 30, 2015) (citations omitted); *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'") (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244,

---

[10]  Tellingly virtually all of the substantive allegations relating to the commission of predicate acts are made "upon information and belief." FAC ¶¶ 97, 101, 102, 105, 106, and 108.

(1989)); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) ("no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern.").  Not only must each defendant have committed two predicate acts, but the acts must be related.  *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991) (citing *H. J. Inc.*, 492 U.S. at 233).

The Plaintiffs cannot show that any individual Defendant engaged in a pattern of racketeering activity.  The FAC does not allege that any RICO Defendant engaged in a single well-pleaded predicate act, much less a series of at least two related acts which share "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics."  *Hughes*, 945 F.2d at 609.  Rather, the well-pleaded allegations in the FAC amount to nothing more than isolated, unrelated acts of several individuals acting separately regarding such diverse matters as police officers' investigating a liquor license transfer application, council members' voting on a resolution, and construction officials' issuing citations.  Such allegations are insufficient to establish a pattern of racketeering activity by any individual Defendant.

Based on the foregoing, the RICO and NJ RICO claims should be dismissed. [11]

---

[11]Plaintiffs' claim of a RICO conspiracy under § 1962(d) is woefully deficient.  *See* FAC ¶ 91.  "In order to state a claim under RICO subsection [1962] (d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)."  *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (quotation omitted).  To survive a motion to dismiss, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose, as well as an agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity."  *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 240 (D.N.J. 2000).  Even a generous reading of the FAC reveals only conclusory allegations, without facts showing an agreement to commit predicate acts towards a pattern of racketeering activity.  *See* FAC ¶¶ 32, 97, 113.

VI.   **COUNTS V AND VI SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO ALLEGE INTENTIONAL INTERFERENCE WITH A CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE.**

Count V alleges intentional interference with a contractual relationship against all Defendants.  Count VI, for intentional interference with prospective economic advantage, is nearly identical.[12]  "A claim for tortious interference with contractual relationship requires '(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages.'" *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010) (quoting *Velop, Inc. v. Kaplan,* 301 N.J. Super. 32 (App. Div. 1997)).  In the tortious interference context, "malice" "means that the defendant intentionally inflicted harm 'without justification or excuse.'" *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 421 (D.N.J. 2016).  The malice element focuses on "whether [the] defendant's actions amounted to sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated." *Id*.

Among other defects, the FAC fails to allege the third element—loss of a contract or prospective gain— with respect to both tortious interference claims. Count V refers to the Lease between Loko and DCJ Belmar.  FAC ¶ 117.  But there is no allegation that DCJ Belmar lost the Lease, much less lost the Lease as a result of the actions of any of the Defendants.  The FAC also fails to allege facts showing a loss "prospective economic advantage."  To do this, the Plaintiffs "must allege facts that, if true, would give rise to a reasonable probability that *particular anticipated contracts* would have been entered into."  *Eli Lilly & Co. v. Roussel Corp.*, 23 F.

---

[12]Because these claims are so similar and because Plaintiffs allege the existence of a contract, this brief primarily addresses intentional interference with a contractual relationship.  However, the logic is equally fatal to the claim for interference with prospective economic advantage. *Compare* FAC  ¶¶ 117-19 *with id.* ¶ 121-23.  To state that claim, a plaintiff must allege facts showing: (1) that she was in the pursuit of business; (2) that the interference was intentional and malicious; (3) that the interference caused loss of the prospective gain; and (4) that the injury caused damages. *Printing Mart-Morristown v. Sharp Elecs Corp.*, 116 N.J. 739, 751 (1989).

Supp. 2d 460, 493 (D.N.J. 1998) (emphasis supplied).  The FAC does not identify any "particular anticipated contracts" that they would have entered into but for the Defendants' alleged actions.  The FAC refers to the Plaintiffs' prospective "operation of an outdoor restaurant/bar on the Loko property," FAC ¶129, which suggests that the Plaintiffs may be relying on the loss of future patronage from unknown and unidentified bar customers.  But "the claimed loss of unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations."  *Id*. at 494; *see also Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc.*, Civ. No. 10-5303, 2011 U.S. Dist. LEXIS 28625, at *10 (D.N.J. Mar. 21, 2011) ("Plaintiff 'must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers.'" (citation omitted)).

The FAC's tortious interference claims also fail because the FAC does not allege any acts of malicious interference which resulted in damages.  Paragraph 118 identifies four actions that allegedly constitute interference with the Plaintiffs' contracts or business relations:  1) the Council's denial of the Application; 2) "failing to issue permits for the construction of the [Loko] facility"; 3) "issuing stop work orders and otherwise interfering with the construction of the [Loko] facility"; and 4) "telling representatives of Loko [] that the Borough would never allow the Salt facility to open and would never authorize the transfer."

Regarding the denial of the Application, there are no well-pleaded facts suggesting that the two Council members who voted against the Application did so without justification.  To the contrary, the minutes of the Council meeting show that their decisions were well justified.

Regarding the allegations concerning the failure to issue construction permits and the issuance of stop work orders at the permits for the construction of the Loko facility, for reasons already discussed, those allegations are not well pleaded.  In addition, there are no well pleaded

facts plausibly suggesting that any stop work orders or denials of construction permits were not justified.   Rather, the FAC relies on conclusory—and therefore insufficient—allegations to establish malice and the absence of justification, such as alleging that the stop work orders were "illegal and improper" or that the Defendants acted "intentionally and without justification" in connection with the stop work orders and issuance of permits.  FAC ¶¶ 27, 118.

Regarding the allegation that statements were made to "representatives of Loko," nothing in the FAC suggests that any of the Plaintiffs were harmed as a result of such communications. Loko entered into and remained a party to the Lease, notwithstanding those alleged communications.

Finally, not all Plaintiffs have standing to raise this claim.  Only DCJ Belmar, Inc., which never filed a notice of tort claim and thus is barred from asserting any claims, is in privity with Loko, and no Plaintiff is alleged to be a third-party beneficiary of the Lease.

## VII.   COUNT VII SHOULD BE DISMISSED BECAUSE THE FAC FAILS TO ALLEGE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To prevail on a claim for intentional infliction of emotional distress, one "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. In general, that requires proof that the emotional distress be so severe that no reasonable person could be expected to endure it."  *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 587 (2009) (internal citations omitted).  The "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'")  *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988) (quoting Restatement (Second) of Torts, §46, cmt. d (Am. Law. Inst. 1979))

The Plaintiffs have failed to allege intentional and outrageous conduct.  They simply allege that the Defendants' conduct "has been extreme, outrageous and directed towards" the

Harmon Plaintiffs.  FAC ¶124.  This is entirely conclusory and fails to explain what actions by the Defendants were atrocious, utterly intolerable, or beyond the bounds of decency.

The Plaintiffs have also failed to plead severe distress.  They parrot the elements of the cause of action, saying that the Harmons' "emotional distress is so severe that no reasonable person could be expected to endure it;" and that they have suffered, "physical injury, bodily harm and emotional distress," FAC ¶¶ 126, 127, but no facts are alleged from which the Court could find that the Harmons suffered severe emotional distress.  They allege no medical diagnosis, medical treatment, nor any description of how this distress has manifested itself in the Harmons' lives.  *See Taylor v. Metzger*, 152 N.J. 490, 515 (1998) ("Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so") (quotation omitted); *Turner v. Wong*, 363 N.J. Super. 186, 200-01 (App. Div. 2003) ("Mere allegations of 'aggravation, embarrassment, an unspecified number of headaches, and loss of sleep,' are insufficient as a matter of law to support a finding of severe mental distress that no reasonable person could be expected to endure.") (citation omitted); *Aly v. Garcia*, 333 N.J. Super. 195, 204 (App. Div. 2000) ("It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae."); *Castronova v. County of Bergen*, 2015 N.J. Super. Unpub. LEXIS 1908, *16 (Law Div. Aug. 7, 2015) (granting motion to dismiss for lack of severe emotional distress because "nowhere in Plaintiff's Complaint is any actual disorder or emotional or mental condition pleaded.").

## VIII.   SERVICE OF PROCESS SHOULD BE QUASHED AS TO DEFENDANTS CONNOLLY, PALMISANO, COX, AND POFF.

According to the Plaintiffs' Proof of Service (ECF No. 10), the Plaintiffs' process server claims to have served process on Defendants Connolly, Palmisano, and Poff by delivering their summonses and complaints to April Claudio, the Clerk for the Borough.  (ECF No. 10 at 20, 56, and 80).   The process server also claims to have served Defendant Cox by delivering his summons and complaint to Defendant Doherty.  *Id.* at 62.

Rule 4 authorizes three methods for service of process: (1) personal service on the defendant, (2) service at the defendant's "dwelling or usual place of abode," or (3) service on "an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2).  N.J. Ct. R. 4:4-4(a)(1), which is incorporated by Fed. R. Civ. P. 4(e)(1), authorizes the same three methods of service on individuals.

By serving process on Ms. Claudio and Defendant Doherty, the Plaintiffs have not complied with any of the proper methods for service of process.  Thus, service of process should be quashed as to Defendants Connolly, Palmisano, Cox, and Poff pursuant to Rule 12(b)(5).

## CONCLUSION

For these reasons, Defendants request that the Court grant their motion to dismiss Plaintiffs' First Amended Complaint.

Respectfully submitted,

**GIBBONS P.C.**

Attorneys for Defendants

By:  *S/ Christopher Walsh*
            Christopher Walsh, Esq.
            Calvin K. May, Esq.

Dated: June 13, 2017