**McLAUGHLIN STAUFFER & SHAKLEE, P.C.**
Monmouth Shores Corporate Park
4814 Outlook Drive, Suite 112
Wall Township, New Jersey 07753
Tel (732) 751-2800
Fax (732) 751-2598
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY HARMON, et al., | : |
| | : |
| | : Civil Action No.: 17-cv-02437 |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| BOROUGH OF BELMAR, et al., | : |
| | : ELECTRONICALLY FILED |
| Defendants. | : |
| | : |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Of Counsel:
Roger J. McLaughlin, Esq.

On the Brief:
Richard J. Shaklee, Esq.
Jason A. Leacock, Esq.

## TABLE OF CONTENTS

I.      Preliminary Statement ............................................................... 1

II.     Factual Background ................................................................... 1

III.    Argument ................................................................................ 2

        A.      Standards Under a Motion to Dismiss. ...................................... 2

        B.      Plaintiffs Provided Proper Notice of Their Tort Claims
                Against Defendants. ............................................................ 5

        C.      Defendants Nicolay, Keown-Blackburn, Brennan and
                Magovern Are Not Entitled to Legislative Immunity. ............... 8

        D.      The FAC States Deprivations of Procedural
                and Substantive Due Process. ............................................... 10

        E.      Plaintiffs Have Stated an Equal Protection Claim. .................. 23

        F.      Plaintiffs Have Stated Claims Under Federal RICO
                and New Jersey State RICO.................................................. 24

        G.      Plaintiffs Have Stated Claims of Intentional Interference
                with a Contract and with Prospective Economic Advantage.................... 29

        H.      Plaintiffs Have Stated a Claim of Intentional Infliction
                of Emotional Distress. ......................................................... 31

        I.      Defendants Connolly, Palmisano, Cox and Poff Are On Notice
                of Plaintiffs' Claims Against Them........................................ 32

IV.     Conclusion ............................................................................. 32

## TABLE OF AUTHORITIES

**Federal Cases**

*Alston v. Admin. Offices of the Del. Courts, Superior Court & Supreme Court of Del.,*
   178 F. Supp. 3d 222 (D. Del 2016) ................................................................17, 18

*Alvin v. Suzuki*, 227 F.3d 107, 118 (3d Cir. 2000) ..............................................................23

*Am. Marine Rail NJ, LLC v. City of Bayonne,*
   289 F.Supp. 2d 569, 581-82 (D.N.J. 2003) ................................................................13

*Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010) ..............29

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ........................................................2, 3, 10, 17

*Barry v. Santander Bank, N.A. (In re Liberty State BEneifts of Del., Inc.),*
   541 B.R. 219, 241 (Bankr. D. Del. 2015) ................................................................27

*Bell Atlantic Corp. v. Twombly*. 550 U.S. 544, 555 (2007) ................................2, 3, 10, 17

*Breslin v. Brainard*, No. 01-CA-7269, 2004 U.S. Dist. LEXIS 8594 ..............................28

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ....................4, 31, 32

*Cal. Pub. Emples. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 141 (3d Cir. 2004) ................3

*Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) ....................................................10, 11

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ........................................................................3, 10

*Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 170 (3d Cir. 2006) ..........18, 19, 20

*Cty. of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998) ..............................................11, 15

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley,*
   385 F.App'x 135, 141 (3d Cir. 2010) ................................................................11, 16

*DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, n. 10 (3d Cir. 1995) ........................13

*Ecotone Farm LLC v. Ward*, 639 F.App'x 118, 126 (3d Cir. 2016) ....................11, 12, 20

*Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 286 (3d Cir. 2004) ..........................................20

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) ..................................................17, 19, 20

*Fowler v. UPMC Shady Side*, 578 F.3d 203, 210 (3d Cir. 2009) ........................................2

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) ...................................20

*Goldenbaum v. Delorenzo*, No. 08-1127 (MLC), 2010s U.S. Dist. LEXIS 130792..........21

*Judge v. Shikellamy Sch. Dist.*, 135 F.Supp. 3d 284, 293-94 (MD. Pa 2015)....................21

*Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2009 U.S. District LEXIS 98217 .............7

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163, 164 (1993)..................................................................................................19

*Logan v. Salem Baptist Church of Jenkintown*, No. 10-cv-0144,
    2010 U.S. Dist. LEXIS 77279 ........................................................................................22

*Lum v. Orini*, 361 F.3d 217, 223 (3d Cir. 2004) ...................................................................2

*MFS, Inc. v. Dilazaro*, 771 F. Supp. 2d 382, 434 (E.D. Pa. 2011) ....................................22

*Nitzke v. Williams*, 490 U.S. 319, 327 (1989) .......................................................................2

*Philips v. County of Allegheny*, 515 F.3 224, 233 (3d Cir. 2008).........................................2

*Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) ............................16, 21, 22

*Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) ...........................................................4, 16

*Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, Civil Action No. 09-3125 (FLW),
    2011 U.S. Dist. LEXIS 19713.........................................................................................30

*Revell v. Port Authority*, 598 F.3d 128, 134 (3d Cir. 2010) .................................................2

*Ryan v. Burlington Cty.*, 889 F.2d 1286, 1290-91 (3d Cir. 1989) ........................................9

*Scheuer v. Rhodes,* 516 U.S. 232, 236 (1974).......................................................................3

*Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ...........................................................4

*Strategic Envtl. Partners, LLC v. Bucco, 184 F. Supp. 3d 108, 129-30 (D.N.J. 2016)*......20

*Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006)..............................................13, 21, 22

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 298-299 (1964) ...............................................15

*West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 91
(3d Cir. 2010).........................................................................................................................2

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ...............................................................23

**State Cases**

*Alberts v. Gaeckler*, 446 N.J. Super. 551, 563 (Law Div. 2014)......................................5, 6

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988) ..................................31, 32

*Estate of McGrath by McGrath v. N.J. Dist. Water Supply Com'N*,
224 N.J. Super. 563, 573 (Law Div. 1986) .........................................................................6

*Fuchilla v. Layman*, 109 N.J. 319, 321 (1988) ..........................................................7, 10

*Gober v. Twp. Comm of Pemberton Twp.*, No. L-053419-83,
1984 N.J. Super. LEXIS 1356 (Law Div. Jan. 10, 1984)..............................................16

*Guerrero v. Newark*, 216 N.J. Super. 66, 72 (App. Div. 1987).............................................7

*Henderson v. Herman*, 373 N.J. Super. 625, 638 (App. Div. 2004)....................................6

*In re Roy*, 142 N.J. Super. 594, 599-600 (App. Div. 1976)..............................................8

*Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 587 (2009) ..........................................31

*Lebron v. Sanchez*, 407 N.J. Super. 204, 220 (App. Div. 2009)...........................................6

*Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989)...............29

*Velez v. City of Jersey City*, 180 N.J. 284, 286, 291 (2004) ..................................................7

*Velop, Inc. v. Kaplan*, 301 N.J. Super. 32, 49 (App. Div. 1997) ........................................29

**Statutes**

42 U.S.C. § 1983...............................................................................7, 10, 17, 19, 20

18 U.S.C. § 1961................................................................................................7, 24

18 U.S.C. § 1961(1)(A)....................................................................................25, 27

18 U.S.C. § 1961(3) ..............................................................................................25

18 U.S.C. § 1961(4) ..............................................................................................25

18 U.S.C. § 1961(5) ..............................................................................................28

18 U.S.C. § 1962(c).........................................................................................24, 25

18 U.S.C. § 1962(d)...............................................................................................24

N.J.S.A. § 59:1-1 .................................................................................7

N.J.S.A. § 59:8-4 ............................................................................6, 7, 8

N.J.S.A. § 2C:20-5 ...............................................................................25

N.J.S.A. § 2C:21-1 ...............................................................................25

N.J.S.A. § 2C:21-1(a) ...........................................................................26

N.J.S.A. § 2C:27-2 ....................................................................25, 27, 28

N.J.S.A. § 2C:27-2(c) ...........................................................................28

N.J.S.A. § 2C:41-1 ...............................................................................24

N.J.S.A. § 2C:41-1(a)(1)(g) ...................................................................27

N.J.S.A. § 2C:41-1(a)(1)(h) ...................................................................25

N.J.S.A. § 2C:41-1(a)(1)(o) ...................................................................26

N.J.S.A. § 2C:41-1(d) ...........................................................................28

N.J.S.A. § 2C:41-2(c) ...........................................................................24

**Rules**

Fed. R. Civ. P. 8(a)(2) ...........................................................3, 10, 17, 19

Fed. R. Civ. P. 12(b)(6) .......................................................................2, 4

**Regulations**

N.J.A.C. § 13:2-7.7(c)............................................................................9

N.J.A.C. § 13:2-7.7(d) ..........................................................................22

**Constitutional Provisions**

U.S. Const., First Amendment ...............................................................15

U.S. Const., Fourteenth Amendment ..........................................16, 20, 21, 22

**Treatises**

*Restatement (Second) of Torts, §46, comment d (1965)* ...................................31

## I.       **Preliminary Statement**

Defendants have brought a Motion to Dismiss a Complaint at its inception.  Despite the fact that the Complaint is thirty-one pages in length and contains one hundred twenty-eight paragraphs of factual contentions, Defendants continually assert in their brief that there are not enough well-pleaded facts, or, that the factual contentions do not have merit.  Under the liberal standard for pleadings, though, as will be set forth, the notice given of the facts underlying the causes of action are more than sufficient so that this matter should proceed to discovery.

It is clear that Defendants are making a summary judgment argument based on the assertion that Plaintiffs are not entitled to relief under the facts alleged in the Complaint.  However, based on the Complaint, the allegations of which must be taken as true, and the Certification of Timothy Harmon in Opposition to Defendants' Motion, which is submitted as support for the pleadings, and, as illustration that what Defendants truly seek is summary judgment, this matter should proceed to discovery.

## II.      **Factual Background**

For purposes of a motion to dismiss, as will be set forth infra, the facts alleged in the Complaint must be taken as true.  Therefore, Plaintiffs rely on the facts set forth in their First Amended Complaint ("FAC" or "Complaint").

By denying Plaintiffs' application for a license transfer, Defendants have prevented the only permissible use of the subject property, which was for an outdoor bar in accordance with the Redevelopment Agreement (Exhibit A attached to Declaration of April Claudio ("Claudio Decl.") at 37) and the Lease between Loko and Plaintiff DCJ Belmar Inc. (Claudio Decl., Exhibit B at 7).

### **Plaintiffs Are Entitled to Discovery Regarding Certain Matters**

As an example of discovery needed in this matter, Plaintiffs plan to take discovery with respect to communications between the Borough and Chefs International and between the Borough

1

and two individuals who spoke at the June 8, 2016 Borough Council meeting in opposition to Plaintiffs' license transfer. Further, Plaintiffs require discovery regarding Borough communications with licensed facility D'Jais, as well as intra-Borough communications regarding the investigations and enforcement activities stated herein.

Discovery needs to be taken regarding many allegations in the Complaint, including but not limited to paragraphs 20, 21, 22, 28, 30, 32, 35, 38, 45 and 50. Therefore, there are facts in contention which support a cause of action and Plaintiffs should have the opportunity to delve into them.

## III.  Argument

### A.  Standards Under a Motion to Dismiss.

Defendants bring a motion to dismiss the FAC at its inception under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. In such a motion to dismiss, all factual allegations in the FAC must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 *U.S.* 544, 555 (2007). The Court must draw all reasonable inferences from the facts in the Complaint in the Plaintiffs' favor. *West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 91 (3d Cir. 2010), citing *Revell v. Port Authority*, 598 F.3d 128, 134 (3d Cir. 2010); *Fowler v. UPMC Shady Side*, 578 F.3d 203, 210 (3d Cir. 2009); *Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Lum v. Orini*, 361 F.3d 217, 223 (3d Cir. 2004). A court assuming the veracity of the factual allegations of the Complaint, must deny such a motion where the facts of the Complaint "plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679; *Fowler*, 578 F.3d at 210. Accordingly, there is no weighing of the facts related in the Complaint in a motion to dismiss because any reading of those facts which would support the case proceeding must be accepted. *Bell Atlantic Corp.*, 550 U.S. at 563. *See also Nitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance…dismissal based on a judge's

disbelief of the complaint's factual allegations"); *Scheuer v. Rhodes,* 516 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears that "a recovery is very remote and unlikely").

Thus, contrary to Defendants' argument in their Brief, Plaintiffs need not state the case specifically at this stage of the litigation; the Federal Rules of Civil Procedure call for notice pleading.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."") (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Additionally, any shortcomings should result in Plaintiffs' being allowed to amend the complaint. *See Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 141 (3d Cir. 2004) (the District Court granted the Defendant's motion to dismiss the Amended Complaint, but permitted the Plaintiffs leave to file a Second Amended Complaint); *Ashcroft*, 556 U.S. at 687 (holding that the Court of Appeals should decide whether to remand the case so that the plaintiff could seek leave to amend his deficient complaint).

Defendants essentially seek summary judgment, but without the opportunity for discovery. Defendants' Brief relies very heavily on factual contentions or on assertions that Plaintiffs lack facts to support Plaintiffs' contentions.  This is improper in a motion to dismiss, as Plaintiffs should be permitted to develop facts through discovery.  See Twombly, supra, 550 U.S. at 556 ("Asking for plausible grounds to infer [a required element of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the required element].").

Defendants' position in this Motion is essentially that all facts to prove all causes of action asserted should be in the possession of Plaintiffs even before the case begins.  This flies in the face

of the notice pleading standard as well as the standard governing review of motions to dismiss.

Additionally, several times in their Brief, Defendants cite to and rely upon documents outside the Complaint and, based on that, contend that causes of action are deficient.  Again, this is seeking summary judgment without opportunity for discovery.  Plaintiffs at this stage have no opportunity to test these contentions through discovery.  The most glaring examples are Defendants' assertions as to the reasons for the votes of the Borough Council persons at the June 8, 2016 meeting and citations to the same in the Minutes of that meeting (pages 2-3 of Defendants' Brief).  At this point, Plaintiffs have no opportunity through discovery to show these may not be the true reasons for denial, or, that the votes may have been influenced by other means, or by other motives.

Generally, no documents outside the Complaint should be cited to in a motion to dismiss, see Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) ("As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. *** The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment."), as the question is whether the Complaint states a cause of action, and not whether the opposing party has documents to contradict it.  Indeed, Defendants' citations to documents outside the Complaint to contradict it only bolsters Plaintiffs' argument that this is actually a summary judgment motion.  Some of those documents may not be considered by the Court in evaluating this Motion.  For example, the Minutes of the June 8, 2016 Borough Council Meeting (Claudio Decl., Exh. D), the December 21, 2015 letter of Plaintiffs' counsel to Ted Bianchi (Claudio Decl., Exh. M) and the December 21, 2015 letter of Plaintiffs' counsel to the Board of Appeals (Claudio Decl., Exh. N) are not "matters incorporated by reference or integral to the claim, items subject to judicial notice, [or] matters of public record."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006); See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(""public record[s]" in this context are materials like decision letters of government agencies and published reports of administrative bodies").

**B.      Plaintiffs Provided Proper Notice of Their Tort Claims Against Defendants.**

The claims by Plaintiffs DCJ Belmar, Inc. ("DCJ") and Two Dawgs, Inc. ("Two Dawgs") should not be dismissed, and the allegations relating to the Boathouse and the construction of the Loko facility should not be stricken, because Plaintiffs provided proper notice to the Borough of those claims.  Proper notice was provided even without naming DCJ or Two Dawgs as claimants, because the notices filed by Plaintiffs convey the nature of the action and the Borough would be on notice of the relationship of the entities.  Further, the subject liquor license application indicates that Plaintiffs Timothy Harmon and Matthew Harmon are the principals/shareholders of Two Dawgs, in addition to being the principals of DCJ (Claudio Decl., Exh. C at Item 7.1A).  The claims by DCJ are based on the same events as those by Plaintiff Dockside Dining, LLC ("Dockside") set forth in the tort claim notices, as DCJ is the entity currently holding the License that is unable to transfer the license, as a result of the Borough's failure to investigate and process the application, failure to respond to inquiries, failure to interview relevant parties, and denial of the application without legal or factual basis.  (Claudio Decl., Exh. G, H and I at 3(c), (e).)  Thus, as the current holder of the license sought to be transferred, it would be logically assumed that DCJ would assert its own claims in connection with the Borough's improper actions with respect to the license transfer.  *See* Alberts v. Gaeckler, 446 N.J. Super. 551, 563 (Law Div. 2014) ("As plaintiff's husband, it would have been logically assumed that he would be testifying about the effect of the injuries suffered on his wife's lifestyle or how the injury to his wife affected his life.")  Additionally, the general description of the injuries suffered by Dockside in the tort claim notices also applies to DCJ, as DCJ suffered similar injuries as Dockside from the same events described on the notices.  *See* Alberts, 446 N.J. Super. at 563.

Similarly, as to Two Dawgs, the tort claim notices convey the nature of the action and the Borough was aware of the relationship between Two Dawgs and Dockside by the mention of Two Dawgs on the application for license transfer.  (Claudio Decl., Exh. C at Item 7.1A.)  Because of that relationship, it would be logically assumed that Two Dawgs would assert claims regarding the Borough's improper actions with regard to its operation of its business, as noted in the tort claim notices with respect to Dockside, and its lost revenue and profits from operation of business; financing costs of delay, and costs and expenses incurred as a result of delays. *See* Alberts, 446 N.J. Super. at 563; Claudio Decl., Exh. H at 4b(5).

Plaintiffs acted in good faith to file a proper claim against the Borough and its officials and employees which caused Plaintiffs' damages, and the Borough's actions were continuing, as indicated on the tort claim notices, from June 1, 2015 to the present.  See Estate of McGrath by McGrath v. N.J. Dist. Water Supply Com'N., 224 N.J. Super. 563, 573 (Law Div. 1986) (holding that the plaintiffs substantially complied with N.J.S.A. § 59:8-4 because the events forming the basis of the claim were a continuing circumstance and the plaintiffs acted in good faith to file a proper claim against numerous defendants).  Defendants "had enough information" from the tort claim notices "to reach an opinion as to the liability." Henderson v. Herman, 373 N.J. Super. 625, 638 (App. Div. 2004).  Plaintiffs' failure to expressly identify DCJ and Boathouse on the tort claim notices did not deprive the Borough of "its opportunity to understand the basis of its potential liability" for Defendants' tortious actions alleged in the Complaint. Lebron v. Sanchez, 407 N.J. Super. 204, 220 (App. Div. 2009).  The purposes of the Tort Claim Act's notification requirements, to inform the Borough of Defendants' improper actions and Plaintiffs' injuries, were satisfied. See id.

Aside from the tort claim notices providing adequate notice of claims by DCJ and Two Dawgs, a tort claim notice is required only for claims under the New Jersey Tort Claims Act,

N.J.S.A. § 59:1-1, et seq.  Thus, Plaintiffs' federal claims in Counts I, II and III of the FAC, as well as Plaintiffs' claims in Count IV under New Jersey's Racketeer Influenced and Corrupt Organizations statute, N.J.S.A. § 2C:41-1, et seq. ("NJ-RICO"), are not governed by the Tort Claims Act, and therefore, no tort claim notice is required for those claims.  The Tort Claims Act governs negligence and intentional tort claims, Velez v. City of Jersey City, 180 N.J. 284, 286, 291 (2004) and the notice provisions of the act do not apply to claims under 42 U.S.C. § 1983, Fuchilla v. Layman, 109 N.J. 319, 321 (1988).  The notice provisions of the Tort Claims Act also do not apply to claims under the federal Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1961 et seq. or NJ-RICO, as "a RICO claim does not sound in…tort."  Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 98217, at *20 (E.D. Pa. Oct. 20, 2009).

The allegations in the FAC relating to interference and harassment at the Loko site and the allegations relating to the Boathouse apply to causes of action not governed by the Tort Claims Act: Plaintiffs' claims under 42 U.S.C. § 1983 and the federal and state RICO statutes.[1]  By contrast, the actions giving rise to Plaintiffs' tort claims relate to the investigation, processing and denial of Plaintiffs' application for the license transfer, all of which were set forth in the tort claim notices.

Furthermore, the information that Plaintiffs provided to the Borough on the tort claim notices also provided adequate notice of the allegations related to harassment at the Loko site, as the allegations related to the investigation and denial of the license transfer application subsume the allegations related to the Loko site.  In Guerrero v. Newark, 216 N.J. Super. 66, 72 (App. Div. 1987), the Court found that the plaintiff provided adequate notice of a tort claim, as the plaintiff substantially complied with the requirements of N.J.S.A. § 59:8-4.  As in Guerrero, the Borough here "received information sufficient to allow it to investigate the facts and either settle the claim,

---

[1] See ¶¶ 69, 72, 75, 77, 79, 81, 84, 91, 92, 95-99, 104-08 and 115, relating to Counts I, II, III and IV of the FAC.

if meritorious, or prepare a defense to it," id. at 72, and the Borough "was also supplied with adequate information to estimate its monetary exposure" for Plaintiffs' damages. Id. at 73.

Contrary to Defendants' argument that all claims against Defendants Poff, Bianchi, Cox and Scott should be dismissed because those defendants are not mentioned in Plaintiffs' notices, Plaintiffs need not have provided the names of those specific defendants in order to file a tort claim. See In re Roy, 142 N.J. Super. 594, 599-600 (App. Div. 1976) (holding that under N.J.S.A. § 59:8-4, the names of specific employees of a municipality who might have caused the death of the plaintiff's wife were not needed in order to file a claim; the most that the plaintiff needed to know was that employees of the municipality might have caused his wife's death). Plaintiffs' tort claim notices provided adequate notice of the actions of Defendants Poff, Bianchi, Cox and Scott forming the basis of Plaintiffs tort claims, as those defendants' actions are subsumed in the information set forth in the tort claim notices.

Therefore, Plaintiffs provided adequate notice to the Borough of their claims against Defendants pursuant to the Tort Claims Act.

## C.   Defendants Nicolay, Keown-Blackburn, Brennan and Magovern Are Not Entitled to Legislative Immunity.

The claims against Defendants Nicolay, Keown-Blackburn, Brennan and Magovern in the FAC should not be dismissed because those Defendants are not entitled to legislative immunity. The actions of those Defendants set forth in the FAC are not legislative activities.

> There are two requirements which an act must meet in order to be regarded as legislative for immunity purposes. First, the act must be "substantively" legislative, *i.e.*, legislative in character. Legislative acts are those which involve policy-making decision of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to

> assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.
>
> [Ryan v. Burlington Cty., 889 F.2d 1286, 1290-91 (3d Cir. 1989).]

The actions of Defendants Nicolay, Keown-Blackburn and Brennan leading to the denial of Plaintiffs' application for a license transfer were not legislative in character under Ryan, as the denial did not "involve policy-making decision of a general scope." Id. The denial of the transfer affected a small number, and thus "the legislative power is not implicated, and the act takes on the nature of administration." Id. at 1291. Further, the act was not "passed by means of established legislative procedures," id. at 1291, because: Plaintiffs were not provided notice that their application would be disapproved, contrary to N.J.A.C. § 13:2-7.7(c) (see ¶39 of FAC); the actions of Defendants Nicolay, Brennan and Keown-Blackburn were in direct conflict with other decisions they had made to approve outdoor bar facilities in the Borough (see ¶44 of FAC); and Defendant Nicolay urged a nearby restaurant owner to appear at the June 8, 2016 Borough Council meeting and speak in opposition to Plaintiffs' application (¶46 of FAC). Indeed, the last allegation is clearly outside the scope of a councilmember's duties and therefore cannot be considered legislative.

The other actions of Defendants Nicolay, Keown-Blackburn, Brennan and Magovern set forth in the FAC are also not legislative activities. Conspiring to impose a permit parking zone only in the area of the Boathouse Bar and Grill is not a legislative activity. FAC ¶ 32. Intentionally and unlawfully causing the Belmar police department to disrupt the operation of the Boathouse Bar and Grill through a pattern of threats, intimidation, arbitrary enactments and fraud is also not a legislative activity. FAC ¶ 69. Taking unlawful actions to place arbitrary and unreasonable special conditions on Plaintiffs' liquor license for the Boathouse Bar and Grill is also not a legislative activity. FAC ¶ 75. Nor is implementing a policy to delay, damage and destroy the Salt project through fabricated U.C.C., CAFRA and Belmar Code violations. FAC ¶ 79.

Therefore, Defendants Nicolay, Keown-Blackburn, Brennan and Magovern are not entitled to legislative immunity.

**D.    The FAC States Deprivations of Procedural and Substantive Due Process.**

The FAC states a claim of deprivations of procedural and substantive due process.

**1.    Plaintiffs Have Stated a Claim for Violation of Substantive Due Process with Respect to the Boathouse.**

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

First, contrary to Defendants' argument that the allegations relating to the Boathouse should be dismissed because the Boathouse is not mentioned in Plaintiffs' tort claim notices, the notice provisions of the Tort Claims Act do not apply to claims under 42 U.S.C. § 1983, as stated above. Fuchilla, supra, 109 N.J. at 321.

Further, contrary to Defendants' argument on page 10 of their brief, the allegations relating to the Boathouse are not conclusory and meet the notice pleading standard under the Federal Rules of Civil Procedure. *See Ashcroft*, *supra*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, *supra*, 550 *U.S.* at 555. ("Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."") (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs need not prove their case at this stage. These allegations relating to the Boathouse are in paragraphs 30, 32, 53, 69, 72, 75, 105, 107, 108 and 115, and they provide Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 *U.S.* at 555.

Defendants argue on page 11 of their brief that no constitutional right of Plaintiffs is implicated by Defendants' actions. However, there is, that being "the liberty interest to pursue a

calling or occupation." <u>Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley</u>, 385 <u>F. App'x</u> 135, 141 (3d Cir. 2010). Thus, Plaintiffs' liberty interest to pursue their ownership and operation of the Boathouse is protected by the substantive due process clause. Defendants deprived Plaintiffs of that protected interest by Defendants' various actions stated above, and Defendants' deprivation of that interest shocks the conscience. <u>Chainey</u>, <u>supra</u>, 523 <u>F.3d</u> at 219.

"[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." <u>Cty. of Sacramento v. Lewis</u>, 523 <u>U.S.</u> 833, 849 (1998). Defendants' above conduct related to the Boathouse was intended to injure Plaintiffs in a way that was unjustifiable by any government interest. Defendants were not justified in harassing Plaintiffs in the operation of the Boathouse; arbitrarily denying applications for permits; conspiring to impose a permit parking zone only in the area of the Boathouse; falsely accusing Plaintiffs of alcoholic beverage law violations; disrupting the operation of the Boathouse through a pattern of threats, intimidation, arbitrary enactments and fraud; and contacting neighbors of the Boathouse and urging them to falsely lodge complaints with the Borough. This action rises to the conscience-shocking level.

In <u>Ecotone Farm LLC v. Ward</u>, 639 <u>F. App'x</u> 118, 126 (3d Cir. 2016), the court found the defendants' alleged behavior to be sufficiently conscience-shocking for the plaintiffs to sustain a substantive due process claim at the pleadings stage. In that case, the plaintiffs owned a 31-acre plot of land where they conducted farming activity. <u>Id.</u> at 121. The lawsuit concerned the plaintiffs' efforts to renovate a house and two barns on the property, which they alleged were thwarted by twelve defendants. <u>Id.</u>

> The plaintiffs accuse[d] Ward [plaintiffs' neighbor and a member of the township committee] and Fox [township engineer] of conspiring to use their government positions to harass them repeatedly and obstruct full enjoyment of their land over the course of several years, motivated by personal vendettas and the expectation that their own private interests would be advanced (in Ward's case, gaining greater

11

control over his easement, and in Fox's case, collecting large fees throughout the process and currying favor with Ward and the [New Jersey Conservation Foundation], who provide him with work).

[*Id.*]

The court reasoned:

These accusations rise above the mere allegation of an "improper" motive and depict corruption and repeated abuse of government power with the deliberate aim of harming someone. They are conscience-shocking and sufficient to sustain a substantive due process claim at the pleadings stage.

[*Id.*]

As in Ecotone, here, Plaintiffs accuse Defendants of conspiring to use their government positions to harass Plaintiffs repeatedly and obstruct full enjoyment of their interests in the Boathouse and also the Loko property over the course of several years. FAC ¶¶ 30, 32, 53, 69, 72 and 75. As in Ecotone, Defendants here were motivated by personal vendettas and the expectation that their own private interests would be advanced. See FAC ¶¶ 44, 47, 48 and 49: The Borough's denial of Plaintiffs' application for a license transfer was in conflict with the Borough's approval of the 9th Avenue Pier, which is owned by Chef's International, Inc., a company whose officers have close personal relationships with Defendants Doherty and Connolly. See also FAC ¶ 50: Among Plaintiffs' competitors is D'Jais, a bar and restaurant the owners of which have contributed tens of thousands of dollars to the political campaigns of Defendant Doherty; those individuals, and Defendant Doherty, have been proponents of State legislative efforts to extend the period of operation of seasonal alcoholic beverage licenses, efforts which Plaintiffs have opposed.

As the court reasoned in Ecotone, here, the allegations stated in the FAC "depict corruption and repeated abuse of government power with the deliberate aim of harming someone." Ecotone, supra, 639 F. App'x at 126. This court should therefore find that "[t]hey are conscience-shocking and sufficient to sustain a substantive due process claim at the pleadings stage." *Id.*

### 2. Plaintiffs Have Stated a Claim for Violation of Substantive Due Process with Respect to the Salt Facility.

Plaintiffs have stated a claim of violation of their substantive due process rights because of Defendants' deprivation of Plaintiffs' interest in the Salt facility.

Plaintiff DCJ Belmar Inc.'s leasehold interest in the subject property is a property interest subject to substantive due process protection. Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 581-82 (D.N.J. 2003) ("a lessor, like a property owner, "possesses a property interest worthy of substantive due process protection against arbitrary and irrational governmental deprivation."") (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, n. 10 (3d Cir. 1995). This is so because "the "use and enjoyment" of a subject property are rights that are inherent to ownership, and, by implication, to a leasehold." Am. Marine Rail, 289 F. Supp. 2d at 582. Additionally, Plaintiffs' leasehold interest in the Loko property was not a typical leasehold; pursuant to the Borough's own Redevelopment Agreement and the Lease, Plaintiffs were restricted to using the leasehold only for an outdoor bar.  Indeed, by the terms of the Borough's Redevelopment Agreement, the Borough mandated the purposes for which Plaintiffs could use their leasehold.

Accordingly, despite Plaintiffs' argument, the property interest here is not simply a typical transfer of a liquor license.  But, even if it were, the case upon which Defendants rely for the proposition that the denial of Plaintiffs' application for a liquor license transfer cannot support a due process claim, Thomas v. Indep. Twp., 463 F.3d 285 (3d Cir. 2006), cites Pennsylvania law. Additionally, the case is distinguishable from the present case because in Thomas, there were no restrictions on the use of the property, as there are here for the Loko property in the Lease and Redevelopment Agreement.

The Borough Council had previously approved and signed a Redevelopment Agreement mandating that an outdoor establishment be constructed on the premises.  Defendant Nicolay voted

13

in favor of said Redevelopment Agreement (FAC ¶ 43).  The actions of Defendants Nicolay, Brennan and Keown-Blackburn were in direct conflict with the decisions they had made to approve outdoor bar facilities in the Borough, including the 10th Avenue Burrito Company; D'Jais; The Anchor Tavern, the Marina Grille, the 9th Avenue Pier, and others (FAC ¶ 44).  Additionally, the efforts of Defendants Doherty and others to interfere with, injure and disrupt Plaintiffs' business operations have upon information and belief been in retaliation for Plaintiffs' opposition to State legislative efforts to extend the period of operation of seasonal alcoholic beverage licenses.  FAC ¶ 50.  Thus, Plaintiffs have alleged more than simple delay and denial of the application for a transfer, contrary to the cases relied upon by Defendants.

Another distinction from the cases cited by Defendants is the unique factual setting here given the use of the property as set forth in the Redevelopment Agreement – "a temporary food/outdoor café and pier bar" (Claudio Decl., Exhibit A at 37) – and the restriction in the Lease that the premises must be used only for an outdoor bar-club and café (Claudio Decl, Exhibit B at 7).  As discussed above, by denying Plaintiffs the ability to transfer their license, the Borough prevented the property from being used in the only manner set forth in the Redevelopment Agreement and the Lease, and deprived Plaintiffs of their ability to use the property in the sole permissible manner.  Therefore, this is not merely a case of a failure to transfer a liquor license. Defendants' denial of the license transfer deprived Plaintiffs of their leasehold interest in the Loko property, which cannot be used without the transfer.

Moreover, the grounds upon which the denial was based, as stated at the June 8, 2016 Borough Council meeting, had already been addressed before that by the Borough Planning Board, which granted site plan approval and amended site plan approval for an outdoor bar at the subject property.

As set forth above, "conduct intended to injure in some way unjustifiable by any

government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, supra, 523 U.S. at 849. The Borough's conduct with respect to the Salt facility and Plaintiffs' license transfer was intended to injure Plaintiffs in some way unjustifiable by any government interest. After entering into the Redevelopment Agreement, which established that the property must be used for an outdoor bar and café, Defendants went to great lengths to deny the license transfer, thus preventing the very use of the property to which Defendants agreed. Defendants did so while, during the same period of time, they approved other similar facilities in the Borough. Plaintiffs properly relied upon Defendants' approvals of an outdoor bar and have incurred substantial expenses as a result of Defendants' conduct. Thus, Defendants' conduct is unjustifiable and rises to the conscience-shocking level.

The District of New Jersey has also held that a constitutional violation by a governmental entity could constitute conduct that is conscience-shocking.

> Under either the shocks the conscience or rational basis standards, a fact finder could conclude that if the HCIA and Hudson County [two of the defendants] violated the Commerce Clause, a constitutional violation, then that violation could constitute conduct that is either conscience shocking or is not rationally related to a legitimate governmental interest.
>
> [Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 585 n.7 (D.N.J. 2003).]

As discussed infra, Plaintiffs have stated a claim of violation of their equal protection rights. Additionally, Defendants' conduct alleged is in retaliation for speech by Plaintiffs protected by the First Amendment, and therefore, also has implications of violation of freedom of speech. See N.Y. Times Co. v. Sullivan, 376 U.S. 254, 298-99 (1964) ("The theory of our Constitution is that every citizen may speak his mind…on matters of public concern"). As discussed above, Plaintiffs have alleged in paragraph 50 of the FAC that they have opposed State legislative efforts to extend the period of operation of seasonal alcoholic beverage licenses, which efforts Defendant Doherty and

owners of D'Jais, contributors to Doherty's political campaigns, have advocated.   Upon information and belief, the efforts of Defendant Doherty and others to interfere with, injure and disrupt the legitimate business operations of Plaintiffs have been, at least in part, in retaliation for Plaintiffs' opposition to those efforts.

Additionally, even when viewed from the vantage of a liquor license transfer, contrary to Defendants' argument, case law provides that a liquor license is a property interest for purposes of substantive due process.  In Gober v. Twp. Comm. of Pemberton Twp., No. L-053419-83, 1984 N.J. Super. LEXIS 1356 (Law Div. Jan. 10, 1984), the court stated regarding liquor licenses that they are indeed valuable economic assets and hence property.  Id. at *24-25.

Further, applicable here to Plaintiffs, the right to earn a living is also considered a liberty interest under case law.  Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994) ("the liberty to pursue a calling or occupation…is secured by the Fourteenth Amendment"); Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, supra, 385 F. App'x at 141.  Plaintiffs thus had a right to pursue the opening and ownership of the Salt facility in order to earn a living, which right is secured by the Fourteenth Amendment.

Defendants argue on pages 11-12 of their Brief that the Borough Council's action in denying the liquor license transfer was not arbitrary.  In support of that argument, Defendants point to the Minutes of the June 8, 2016 Borough Council meeting to contradict the Complaint, which is wholly improper in a motion to dismiss, for the reasons discussed above.  See Pryor, supra, 288 F.3d at 560.  Moreover, the reasons for the denial as expressed in the Minutes are not factual. Contrary to Defendants' argument, the Borough Council's action was arbitrary because the Council denied the license transfer despite the fact that the Borough Planning Board approved an outdoor bar at the subject location and the fact that the Borough entered into a Redevelopment Agreement providing for the construction of an outdoor bar.

Thus, Plaintiffs are entitled to show that Defendants' actions relating to Plaintiffs' liquor license and leasehold were in violation of Plaintiffs' substantive due process rights.

Additionally, Plaintiffs have sufficiently pled a violation of substantive due process for Defendants' conduct relating to the construction at the Salt facility. Defendants argue that the FAC alleges no facts to support a substantive due process violation in regard to the construction of the Salt facility, however, the allegations in the FAC relating to construction certainly meet the notice pleading standard under the Federal Rules of Civil Procedure. *See Ashcroft*, *supra*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, *supra*, 550 *U.S.* at 555. As discussed above, Plaintiffs need not state the case specifically at this stage of the litigation. See FAC ¶¶ 22, 23, 24, 27, 28, 29, 30, 31, 33, 79 and 97.

Defendants argue on page 12 of their brief that claims regarding the construction of the Salt facility must be dismissed for lack of facts. Clearly, the Complaint demonstrates a multitude of facts to place Defendants on notice of the claim, i.e., "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Defendants further cite to Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) and Alston v. Admin. Offices of the Del. Courts, Superior Court & Supreme Court of Del., 178 F. Supp. 3d 222 (D. Del. 2016) for the proposition that a Section 1983 action must identify conduct, time, place and persons responsible. A review of the facts above makes clear that all of these elements are asserted, in contrast to Evancho and Alston. In Evancho, plaintiff, an employee of the Pennsylvania Bureau of Narcotics Investigation and Drug Control, alleged she was demoted in retaliation for whistleblowing activity and named the Pennsylvania Attorney General as a defendant. Evancho, 423 F.3d at 349-50. However, the Complaint disclosed no facts at all that the Attorney General had any role or knowledge of her demotion, but rather, that she was relying entirely on a respondeat superior theory. Id. at 353-54. In Alston, a pro se plaintiff brought an action against State defendants alleging that they acted with

17

racial animus to bar him from using the facilities and resources of the State University to construct and test the prototype of an alternative energy device he claimed to have conceived. Alston, 178 F. Supp. 3d at 230.  The Court declared that Alston failed to meet the pleading requirements under the Rules in that his claims were "rambling, vague, and (at times) nonsensical." Id. at 231.  In contrast, the FAC here is quite detailed, setting forth the circumstances, time frames, specific actions and persons who participated in the actions complained of.

In Cty. Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 170 (3d Cir. 2006), the court held that the appellants stated a substantive due process claim.  In that case, the appellants applied to the Planning Board in 1994 for approval to merge two tracts in order to extend their sand and gravel extraction operations.  They alleged in their complaint that the appellees attempted to impose unreasonable and unlawful restrictions on their use of their property in violation of an agreement, to condition approval of their application on terms in violation of that agreement, to defeat their application by erroneously attributing environmental contamination from other sources to their extraction operations, and made false public accusations against appellants during the application process.  Additionally, they claimed that a planning board engineer's investigation made false accusations about the appellants' extraction operations.

Similar to Cty. Concrete Corp., here, Defendants have, among other actions, (1) attempted to impose unreasonable and unlawful conditions on Plaintiffs' liquor license for the Boathouse between 2015 and 2017 (FAC ¶ 75); (2) fabricated U.C.C., CAFRA and Belmar Code violations in order to delay, damage and destroy the Salt project (FAC ¶ 79); (3) interfered with and harassed Plaintiffs in the construction of the Salt facility, issuing illegal stop work orders and sending police officers to the property threatening to arrest Plaintiffs' contractors (FAC ¶ 27); and (4) directed representatives of the Belmar Construction Department to deny permits for facilities at the Salt property that had previously been approved by the Planning Board and directed employees of the

Borough Construction Department to obstruct and interfere with Plaintiffs, while at the same time showing preferential treatment to other property owners (FAC ¶ 28). As the court in Cty. Concrete Corp. held that the plaintiffs stated a substantive due process claim, the Court here should also find that Plaintiffs have stated a substantive due process claim.

Defendants then argue on pages 12 to 13 of their brief that all allegations regarding construction of the Salt facility must meet "Rule 9(b)'s heightened pleading requirement" because Plaintiffs allege that the violations of which Defendants accused Plaintiffs are false. Rule 9(b), however, only requires a heightened standard where causes of action are pled dependent on fraud or mistake. Plaintiffs are not doing so, but instead are pleading an action under 42 U.S.C. § 1983, which includes allegations that Defendants acted under false pretext. This, however, does not make fraud or mistake an element of the cause of action. Indeed, Rule 9(b) goes on to state, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This is clearly the case here, as malice, intent and knowledge are all relevant to the arbitrary and unreasonable actions of Defendants.

More importantly, however, notice pleading is all that is required in 1983 actions. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S.163, 164 (1993). As the Third Circuit explained in Evancho:

> In *Leatherman*, the Supreme Court addressed the question of "whether a federal court may apply a 'heightened pleading standard' - more stringent than the usual pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure - in civil rights cases alleging municipal liability." 507 U.S. at 164. The Supreme Court held that a federal court may not. *Id.* It noted that Rule 8(a)(2) requires "a complaint [to] include only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 168. It also noted that Rule 9(b) imposes a particularity requirement in two specific instances, but that municipal liability under § 1983 was not one of them. "The Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. Expressio unius est

19

exclusio alterius." *Id.*

[Evancho, supra, 423 F.3d at 351-52.]

Finally, as to the allegation of the need for a heightened requirement, it is respectfully submitted that the paragraphs cited above do contain all necessary specifics in pleading.

As to Defendants' contentions that the actions alleged do not shock the conscience, it must also be noted that Defendants' conduct here was more extreme than that in the cases cited in Defendants' Brief.  Defendants made greater efforts to interfere with the construction of the Loko site than "pursuing unannounced and unnecessary inspections and enforcement actions" as in Eichenlaub v. Twp. of Ind., 385 F.3d 274, 286 (3d Cir. 2004).  Unlike in Eichenlaub, Plaintiffs here have alleged corruption and self-dealing.  FAC ¶¶ 44, 47, 48, 49 and 50, discussed supra.  Defendants' conduct alleged in FAC ¶¶ 22, 23, 24, 27, 28, 29, 30, 31, 33, 79 and 97 as set forth above also was more extreme than in Strategic Envtl. Partners, LLC v. Bucco, 184 F. Supp. 3d 108, 129-30 (D.N.J. 2016).  Also, as discussed above, the Courts in Ecotone, supra, 639 F. App'x at 126 and Cty. Concrete Corp., supra, 442 F.3d at 170 found violations of substantive due process in similar circumstances to the present case.

Thus, Plaintiffs have stated a claim for violation of their substantive due process rights related to construction at the Salt property.

### 3. Plaintiffs Have Stated a Claim for Violation of Procedural Due Process with Respect to the Boathouse.

Plaintiffs have alleged violation of their procedural due process rights relating to the Boathouse.

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."

[Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).]

Defendants deprived Plaintiffs of their liberty to pursue their occupation at the Boathouse by their actions set forth in FAC ¶¶ 30, 32, 53, 69, 72, 75, 105, 107, 108 and 115. See Piecknick, supra, 36 F.3d at 1259 (holding that the liberty to pursue a calling or occupation is secured by the Fourteenth Amendment).  Defendants argue that there are no due process violations because there are procedures available which Plaintiffs did not utilize.  However, as to the denial of Plaintiffs' permits for the St. Patrick's Day parade, the procedures available to Plaintiffs did not provide due process of law, as the permits were for that single day and the event had passed by the time Plaintiffs had an opportunity to appeal.  See Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 293-94 (M.D. Pa. 2015) (the plaintiff's claim that she was given approximately one day to choose whether she would resign from her position or face termination proceedings without a hearing was sufficient to state a violation of procedural due process to survive a motion to dismiss).

### 4. Plaintiffs Have Stated a Claim for Violation of Procedural Due Process with Respect to the Salt Facility.

Although Defendants argue that the denial of Plaintiffs' application for a liquor license transfer cannot support a due process claim, Plaintiffs' leasehold interest in the Loko property is also the interest of which Defendants' have deprived Plaintiffs without due process.  See Goldenbaum v. Delorenzo, No. 08-1127 (MLC), 2010 U.S. Dist. LEXIS 130792, at *22-23 (D.N.J. Dec. 10, 2010) (holding that the plaintiffs had a right to possession of a property, which right was entitled to procedural due process protections).  As discussed above, Defendants have deprived Plaintiffs of their leasehold interest in the Loko property because of the provisions in the Borough's own Redevelopment Agreement, which restrict the use of the property to a temporary food/outdoor café and pier bar.  Plaintiffs' leasehold interest in the property is rendered unusable because of the denial of the license transfer, despite the fact that the Borough Planning Board already addressed all of the alleged issues raised by the councilpersons at the June 8, 2016 Borough Council meeting.

Additionally, Thomas, discussed in section IIID2 above, states that "the liberty to pursue a

calling or occupation . . . is secured by the Fourteenth Amendment." Thomas, 463 F.3d at 297 (quoting Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994)).  "The Third Circuit has held that a business itself constitutes a protected property right under the Fourteenth Amendment." MFS, Inc. v. Dilazaro, 771 F. Supp. 2d 382, 434 (E.D. Pa. 2011).  See also Logan v. Salem Baptist Church of Jenkintown, No. 10-cv-0144, 2010 U.S. Dist. LEXIS 77279, at *14 (E.D. Pa. July 29, 2010) (holding that the plaintiffs sufficiently alleged the deprivation of their ability to pursue their chosen profession in violation of their right to procedural due process, thus surviving a motion to dismiss).  Defendants therefore deprived Plaintiffs of their liberty to pursue the operation of their business, in violation of their right to procedural due process.

As to Defendants' arguments that Plaintiffs have received adequate process as to the liquor license, although Defendants argue that N.J.A.C. § 13:2-7.7(d) allows applicants to appeal to the Division of Alcoholic Beverage Control if no action is taken on a transfer application within 60 days of filing, this option is futile if the reason for the delay is that a background check was taking place.  Although the precise extent of the background check is unclear, it is apparent that the background check should have been completed considerably sooner based on its purpose. Furthermore, Plaintiffs should have had three years under the Redevelopment Agreement to exercise their liberty and property interests of the leasehold and operate an outdoor bar.  However, the Borough cut the time short with its investigation, thereby preventing Plaintiffs' use of the leasehold, at best arbitrarily, and possibly maliciously, for the reasons stated in the Complaint.

As was the situation with respect to the Boathouse and liquor license, with respect to the construction issues, Plaintiffs also had no meaningful opportunity to appeal.  As discussed in relation to Plaintiffs' liquor license, pursuant to the Redevelopment Agreement, Plaintiffs were to operate their temporary outdoor bar for a three-year period during Phase I of the project.  However, Defendants harassed Plaintiffs in the construction of the bar, issuing erroneous citations for

construction code violations and issuing improper stop work orders.   Plaintiffs' appeals of Defendants' actions cut into the temporary period of time which Plaintiffs had to construct and operate their business.

Additionally, pursuant to a settlement agreement in a lawsuit brought by Loko against the Borough and Defendant Doherty, the parties in that litigation will execute an amended redevelopment agreement which provides for the demolition of structures on the Loko property and permits the use of an outdoor bar only as an accessory use to an indoor user occupying the first floor of the new building to be constructed.  See Certification of Timothy Harmon ("Harmon Cert.") at ¶ 11.  This also makes an appeal by Plaintiffs futile because it does not permit the use of Plaintiffs' license at the Loko property pursuant to their lease.  Hence, the Borough has effectively destroyed the very right of appeal to which it points to argue that it has not violated Plaintiffs' procedural due process rights.  See Alvin v. Suzuki, 227 F.3d 107, 118 (3d Cir. 2000) ("When access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim.")

Therefore, Plaintiffs have stated a claim of violation of their procedural due process rights.

**E.      Plaintiffs Have Stated an Equal Protection Claim.**

Defendants violated Plaintiffs' rights under the Equal Protection Clause.

To state a claim of violation of equal protection rights, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In accordance with Willowbrook, Plaintiffs have alleged that Defendants approved outdoor facilities for other operations similarly situated and that there was no rational basis for the difference in treatment.

The operations whose outdoor bar facilities were approved, set forth in paragraph 44 of the

Complaint, are similarly situated to Plaintiffs. The Borough approved outdoor facilities for operations in much closer proximity to residential structures than is the Salt property. In particular, the 10th Avenue Burrito Company is directly across the street from a senior citizen complex, the Anchor Tavern is on the same street as the complex, and the Marina Grille and 9th Avenue Pier are in closer proximity to residential structures than is the Salt property.

On pages 16-17 of their Brief, Defendants again attempt to argue facts which are in fact in dispute, and to introduce facts outside of the Complaint, which is improper in a motion to dismiss. It is apparent that what Defendants actually seek is summary judgment, and not dismissal of the Complaint.

Plaintiffs have thus stated a claim for violation of their equal protection rights.

**F.     Plaintiffs Have Stated Claims Under Federal RICO and New Jersey State RICO.**

Plaintiffs have stated claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the New Jersey RICO Act ("NJ-RICO"), N.J.S.A. § 2C:41-1 et seq.

Pursuant to RICO, 18 U.S.C. § 1962:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.[2]

---

[2] The NJ-RICO statute is very similar and provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. § 2C:41-2(c).

24

Defendants Doherty, Connolly, Huisman, Palmisano, Nicolay, Keown-Blackburn, Brennan and all of the other defendants that are not government entities are "persons" as that term is defined in 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) (collectively referred to as "RICO Defendants"). Belmar and its affiliated subordinate entities (Police Department, Borough Council, Construction Department, Code Enforcement Department) constitute "enterprises" within the meaning of 18 U.S.C. § 1961(4) and 18 U.S.C. § 1962(c), which were engaged in activities affecting interstate commerce at all times relevant to the FAC. Where necessary, these enterprises are referred to as "RICO enterprises" for the purposes of this section of this Brief.

Each of the RICO Defendants is and/or was associated with one or more of the RICO enterprises. Upon information and belief, the RICO Defendants conspired to, and did, operate the entities through a pattern of "racketeering activity" in violation of 18 U.S.C. § 1962(c) and (d). The RICO Defendants committed multiple, repeated and continuous violations of N.J.S.A. § 2C:20-5 et seq. (extortion and attempted extortion); multiple violations of N.J.S.A. § 2C:21-1 et seq. (forgery and related offenses) and common law fraud; violations of N.J.S.A. § 2C:27-2 (bribery); and various other illegal acts, as yet unknown, but which Plaintiffs will further identify through the course of discovery.

**Extortion** – The FAC states a claim of extortion. Extortion is predicate act under RICO, pursuant to 18 U.S.C. § 1961(1)(A), and under NJ-RICO, pursuant to N.J.S.A. § 2C:41-1(a)(1)(h). "A person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion. A person extorts if he purposely threatens to: … d. Take or withhold action as an official, or cause an official to take or withhold action." N.J.S.A. § 2C:20-5.

Contrary to Defendants' argument, the FAC does allege that Defendants obtained or attempted to obtain property from Plaintiffs. As a result of Defendants' conduct, Plaintiffs' competitors gained an advantage, which benefitted the RICO Defendants. As set forth in

paragraph 24 of the FAC, Defendant Doherty advised Defendant Magovern and other members of the Borough Council that a project larger than the Loko Redevelopment project would be better for the Borough and would be lost if the Salt facility were allowed to open.  As set forth in paragraph 48 of the FAC, the officers of Chef's International, Inc., which owns the 9th Avenue Pier, have close personal relationships with Defendants Doherty and Connolly; as set forth in paragraph 50, the owners and supporters of D'Jais, another of Plaintiffs' competitors, have contributed tens of thousands of dollars to the political campaigns of Defendant Doherty.  Thus, by taking away Plaintiffs' right to open and operate the Salt facility, the RICO Defendants were benefitted by the competitive advantage obtained by individuals with whom they had close personal relationships.

Contrary to Defendants' argument, the FAC alleges threats in paragraph 106: "Upon information and belief, Defendants Doherty and Connolly threatened to unlawfully harm the Construction Official, the Code Enforcement Officer and other sub-code officers in order to force them to harass Plaintiffs during the construction of the Salt facility and issue improper and illegal violation notices and stop work orders."  Therefore, Plaintiffs have stated a claim of extortion.

**Forgery** – The FAC states a claim of forgery.  Forgery is a predicate act under NJ-RICO pursuant to N.J.S.A. § 2C:41-1(a)(1)(o).  "A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor: (1) Alters or changes any writing of another without his authorization." N.J.S.A. § 2C:21-1(a).

The FAC alleges that three defendants, Huisman, Cox and Scott, altered or changed multiple writings, interviews and statements during the license transfer investigation and contained in the Belmar Police Department investigation file.  FAC ¶ 101.  The FAC further alleges that the Defendants altered or changed multiple statements of witnesses in said file.  *Id.* ¶ 102.

**Bribery** – Plaintiffs have stated a claim of bribery.  Bribery is a predicate act under

RICO, pursuant to 18 U.S.C. § 1961(1)(A), and NJ-RICO, pursuant to N.J.S.A. § 2C:41-1(a)(1)(g).

> A person is guilty of bribery if he directly or indirectly offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
> …c. Any benefit as consideration for a violation of an official duty of a public servant or party official.
> d. Any benefit as consideration for the performance of official duties.
>
> [N.J.S.A. § 2C:27-2.]

As alleged in paragraph 97, Defendants Bianchi and Poff accepted employment in the Borough of Belmar and maintained their employment as consideration for the violation of their official duties by utilizing their positions to harass, fine and interfere with the completion of the Salt facility, falsely citing Plaintiffs for non-existent Uniform Construction Code violations and demanding that Plaintiffs pay fines, cease work and abandon the Salt project, at the behest of Defendants Doherty and Connolly.

Additionally, Defendants Doherty and Connolly conferred benefits upon Chefs International, Inc., whose officers have close personal relationships with those defendants, by interfering with Plaintiffs' businesses, which are competitors of Chefs International. See FAC ¶¶ 44-49. To the extent that Defendants Doherty and Connolly were personally benefited by the competitive advantage Chefs International enjoyed as a result of Defendants' actions to suppress competition against Chefs International, Defendants Doherty and Connolly are guilty of bribery. This indeed would also be true as to the advantages given to D'Jais by the subtraction of a potential competitor in that D'Jais was a political contributor to Defendant Doherty's campaigns, certainly to be considered a "benefit." Therefore, Plaintiffs have stated a claim of bribery.

Further, Plaintiffs may rely on circumstantial evidence in pleading a claim under RICO. See Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Del., Inc.), 541 B.R. 219, 241 (Bankr. D. Del. 2015) (holding that ordinary circumstantial evidence will suffice to plead a RICO

claim); <u>Breslin v. Brainard</u>, No. 01-CA-7269, 2004 <u>U.S. Dist. LEXIS</u> 8594, at *13 (E.D. Pa. May 7, 2004) (holding that the plaintiff must prove that the RICO violation caused his injuries through either direct or circumstantial evidence).

      **Pattern of Racketeering activity** – Plaintiffs have shown a pattern of racketeering activity, pursuant to 18 U.S.C. § 1961(5) and N.J.S.A. § 2C:41-1(d).

Plaintiffs have shown a pattern of bribery with respect to Defendants Bianchi, Poff, Doherty and Connolly, because Defendants Doherty and Connolly offered, and Defendants Bianchi and Poff accepted, continued employment in the Borough as consideration for Defendants Bianchi and Poff's harassment, fines and interference with the completion of Plaintiffs' Salt facility, in violation of Defendants Bianchi and Poff's official duties.  N.J.S.A. § 2C:27-2(c).  Additionally, Defendants Doherty and Connolly accepted the benefit of the competitive advantage enjoyed by Chefs International, with whom those defendants had close personal relationships, as consideration for their harassment and interference with Plaintiffs' businesses.  The same may be said of Defendant Doherty as to D'Jais.

Plaintiffs have shown a pattern of extortion by Defendants Doherty, Connolly and Huisman. As set forth in paragraph 106 of the Complaint, Defendants Doherty and Connolly threatened to unlawfully harm the Construction Official, Code Enforcement Officer and other sub-code officers in order to force them to issue improper and illegal violation notices and Stop Work Orders.  As set forth in paragraph 108, Defendant Huisman also threatened the Construction and sub-code officials of the Borough and urged that they should harass and harm Plaintiffs with respect to both the Salt facility and the Boathouse.

Plaintiffs have shown a pattern of forgery by Defendants Huisman, Cox and Scott in paragraphs 101 and 102 of the Complaint.  In those paragraphs, Plaintiffs alleged that the defendants, with the purpose to defraud or injure Plaintiffs, without authorization, altered or

changed multiple writings, interviews, and statements of witnesses during the license transfer investigation and contained in the Belmar Police Department transfer investigation file.

Therefore, Plaintiffs have stated claims of violation of RICO and NJ-RICO.

### G.     Plaintiffs Have Stated Claims of Intentional Interference with a Contract and with Prospective Economic Advantage.

Plaintiffs have stated claims of intentional interference with a contract and intentional interference with prospective economic advantage.  A claim of intentional interference with a contract requires ""(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages."" Amgro, Inc. v. Lincoln Gen. Ins. Co., 361 F. App'x 338, 345 n.9 (3d Cir. 2010) (quoting Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (App. Div. 1997)).  A claim of intentional interference with prospective economic advantage is similar and requires allegations that (1) the plaintiff was in pursuit of business, (2) the interference was done intentionally and with malice, (3) the interference caused the loss of the prospective gain and (4) the injury caused damage. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989).  In the tortious interference context, the term "malice" means that the harm was inflicted intentionally and without justification or excuse. Id. at 751.

As to the first two elements of a claim of intentional interference, the Complaint alleges that Plaintiffs were in pursuit of business and entered into a lease with Loko, LLC providing for the construction of Plaintiffs' outdoor bar and café.  Defendants took numerous actions to interfere with Plaintiffs' businesses and to prevent the construction of the Salt facility.

Contrary to Defendants' argument, the FAC does allege the third element, that Defendants caused the loss of a prospective gain.  Paragraph 118 alleges that Defendants interfered with Plaintiffs' contractual relationship with Loko, LLC by failing and refusing to approve the license transfer, by failing to issue permits for the construction of the facility, by issuing stop work orders

and otherwise interfering with the construction of the facility, and by telling representatives of Loko that the Borough would never allow the Salt facility to open and would never authorize the transfer of Plaintiffs' license.  Paragraph 122 alleges that Defendants interfered with Plaintiffs' pursuit of their prospective economic advantage and contractual business relationship in which Plaintiffs had a reasonable expectation of economic advantage.  Contrary to Defendants' argument, Plaintiffs lost their lease with Loko.  The lease was effective only for a limited time and for a specific purpose.  Defendants destroyed Plaintiffs' use of the lease by taking time away from Plaintiffs' ability to use the Salt facility, and Defendants therefore interfered with Plaintiffs' prospective economic advantage from the use of the facility.

Furthermore, as discussed above, pursuant to the settlement agreement in a lawsuit brought by Loko against the Borough and Defendant Doherty, the parties in that litigation will execute an amended redevelopment agreement which provides for the demolition of structures on the Loko property and permits the use of an outdoor bar only as an accessory use to an indoor user occupying the first floor of the new building to be constructed.  See Harmon Cert. ¶ 11.  This demonstrates the ultimate interference with contract and prospective economic advantage, Plaintiffs' loss of the lease with Loko which was entered into in accordance with the aforementioned original Redevelopment Agreement.  Now, the Borough, which was a party to the original redevelopment agreement, is entering into a second redevelopment agreement destroying the purpose of Plaintiffs' lease.  Hence, this is not just interference with a contract, it is destruction of a contract.

Defendants' argument on pages 27-28 of their Brief that there are no allegations of malicious interference in the FAC is fact-sensitive and requests that the Court accept their position without opportunity for discovery.  Discovery is needed in order to establish that Defendants' actions of interference with Plaintiffs' contracts or business relations were unjustified.  See Reckitt Benckiser Inc. v. Tris Pharma, Inc., Civil Action No. 09-3125 (FLW), 2011 U.S. Dist.

LEXIS 19713, at *23-24 (D.N.J. Feb. 28, 2011) (finding that the complaint set forth ""enough factual matter (taken as true) ... to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Whether or not Defendant did, in fact, act with "malice," is an issue of fact, not appropriately decided on a motion to dismiss.") (internal citations omitted).

Although Defendants argue that not all Plaintiffs have standing to raise a claim of tortious interference, the Borough was on substantive notice of the claims. As discussed supra in section III(B), Plaintiffs substantially complied with the notice provisions of the New Jersey Tort Claims Act. Plaintiffs' tort claim notices adequately informed the Borough of the bases of Plaintiffs' claims, and the Borough was aware from the license transfer application of the relationship of the entities. Therefore, Plaintiffs have stated claims of intentional interference with a contract and intentional interference with prospective economic advantage.

**H.      Plaintiffs Have Stated a Claim of Intentional Infliction of Emotional Distress.**

Plaintiffs have stated a claim of intentional infliction of emotional distress. To prevail on a claim for intentional infliction of emotional distress, ""the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." In general, that requires proof that "the emotional distress . . . be so severe that no reasonable person could be expected to endure it."" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 587 (2009) (internal citations omitted). "The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."" Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988) (quoting Restatement (Second) of Torts, §46, comment d (1965)).

Plaintiffs have alleged that Defendants' conduct was intentional and outrageous, as Defendants have gone to great lengths to prevent the opening of Plaintiffs' business while showing preferential treatment to other licensed establishments. See FAC ¶¶ 22, 23, 24, 25, 26, 27, 28, 29,

30, 32, 33, 34, 35, 36, 37, 38, 43, 44, 45, 47, 48, 49, 50, 51, 52 and 53.  The above constitutes conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, supra, 111 N.J. at 366.  Further, Plaintiffs allege that they have suffered severe distress as a result of Defendants conduct, including physical manifestations of depression and anxiety.  See FAC ¶¶ 126-27.  Therefore, Plaintiffs have stated a claim of intentional infliction of emotional distress.

> **I.      Defendants Connolly, Palmisano, Cox and Poff Are On Notice of Plaintiffs' Claims Against Them.**

As a result of Plaintiffs' delivery of the summonses and complaint to the Clerk for the Borough and to Defendant Doherty, Defendants Connolly, Palmisano, Cox and Poff are on notice that Plaintiffs are bringing claims against them.  Plaintiffs are arranging for personal service on these defendants.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint should be denied.

McLAUGHLIN STAUFFER & SHAKLEE, P.C.
Attorneys for Plaintiffs


By: _Roger J. McLaughlin_
    ROGER J. McLAUGHLIN, ESQUIRE

Dated: _August 18, 2017_