# McLAUGHLIN STAUFFER & SHAKLEE, P.C.
ATTORNEYS AT LAW
MONMOUTH SHORES CORPORATE PARK
4814 OUTLOOK DRIVE; SUITE 112
**WALL TOWNSHIP, NEW JERSEY 07753**
TELEPHONE: (732) 751-2800
TELEFAX: (732) 751-2598

ROGER J. McLAUGHLIN
DREW A. STAUFFER
RICHARD J. SHAKLEE
SUSAN L. SOLDA DeSIMONE**
JASON A. LEACOCK

E-MAIL
rshaklee@wall-lawyers.com

**N.J. & D.C. Bar

DENNIS M. CRAWFORD
(Retired)

World Wide Web
www.wall-lawyers.com

September 19, 2017

**VIA ECF**
Honorable Peter G. Sheridan, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

  Re: **Harmon, et al. v. Borough of Belmar, et al.**
    **Civil Action No. 17-2437**

Dear Judge Sheridan:

  We write pursuant to Your Honor's request during the September 6, 2017 hearing to address whether any of the federal abstention or related doctrines apply to this matter. We respectfully submit that the Court should adjudicate the matter.

  **1. Exhaustion of State Administrative Remedies Is Not Required to Bring an Action Pursuant to 42 U.S.C. § 1983.**

  Plaintiffs need not exhaust their state administrative remedies before bringing this action pursuant to 42 U.S.C. § 1983. "[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982). Because the relevant causes of action here are brought pursuant to 42 U.S.C. § 1983, exhaustion of state administrative remedies is not a prerequisite.

  Contrary to Defendants' argument, this action is not solely challenging the

Borough of Belmar's denial of Plaintiffs' application for a liquor license transfer. This action is also brought as a result of numerous actions of Belmar politicians, officials, employees and appointees in violation of Plaintiffs' rights to control and operate their businesses. Regardless of the outcome of Plaintiffs' appeal of the denial of the license transfer, Plaintiffs' civil rights were violated. Thus, the Court should adjudicate this case.

2. The <u>Burford</u> Abstention Doctrine

The <u>Burford</u> abstention doctrine does not apply in this case, because the adjudication of the case in a federal forum would not "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 <u>U.S.</u> 350, 361 (1989). Here there are no state efforts to establish a coherent policy with respect to the § 1983 claims, so the Court's adjudication would not disrupt any state efforts.

Contrary to Defendants' argument, the Borough's denial of the license transfer is only one factor in the determination of whether Defendants' conduct "shocks the conscience" and thereby violates Plaintiffs' substantive due process rights. Aside from the denial of the transfer, Defendants took many other actions against Plaintiffs as alleged in the First Amended Complaint, which tend to establish conscience-shocking behavior. Some examples are as follows:

- Paragraph 22: "In or about April 2014, the Defendants Doherty and Connolly began a concerted effort to prevent the Plaintiffs from constructing and opening the Salt facility on the Loko property. The Defendant Doherty advised representatives of the Plaintiffs, Loko, LLC and others that the Plaintiffs "would never open a business" in that location and

instructed Borough employees, including members of the Police Department and the Construction Department, to delay processing the Plaintiffs alcoholic beverage license application and to interfere with the construction process for the Salt facility."

- Paragraph 24: "During the aforesaid period of time, the Defendants Doherty and Connolly engaged in contact, discussions and negotiations with property owners; prospective developers; and their agents, representatives and attorneys, in an effort to replace the development contemplated by the approved Loko Redevelopment Agreement with another, larger project. During that process, the Defendant Doherty advised the Defendant Magovern and other members of the Borough Council that this alternative proposal was "better for the Borough" and "would be lost" if the Salt facility were allowed to open. The Defendant Doherty also attempted to force the owner of the Loko property to agree to a new partnership and Redevelopment Agreement with Doherty's preferred developers and urged Loko to terminate its relationship with the Plaintiffs, causing Plaintiffs extreme difficulties and loss of funding."

- Paragraph 27: "During the summer months of 2015, the Defendant Borough, through its Police Department and Construction Department, interfered with and harassed the Plaintiffs in the construction of the Salt facility; issued illegal and improper stop work orders; sent police officers to the property who threatened to arrest the Plaintiffs' contractors, and otherwise acted to disrupt and disturb the Plaintiffs' project."

- Paragraph 28: "During the aforesaid period of time, Defendants Doherty

and Connolly directed representatives of the Belmar Construction Department to deny permits for facilities at the Salt property which had previously been approved by the Planning Board and the Defendants Doherty and Connolly directed employees of the Borough Construction Department to obstruct and interfere with the Plaintiffs, while at the same time directing them to show preferential treatment to other property owners, such as Chef's International, Inc."

- Paragraph 30: "During the aforesaid period of time, Defendant Huisman engaged in a concerted effort to interfere with the Plaintiffs' businesses and the construction of the Salt facility. During that period of time, Huisman advised members of the Police Department as well as other officials of the Borough, including construction and code enforcement officials, to deny permits to the Plaintiffs; harassed the Plaintiffs in the operation of their business at the Boathouse; arbitrarily denied Plaintiffs' applications for permits for the St. Patrick's Day Parade; and advised other Borough officials that they needed to be "team players" in the Borough's efforts against the Plaintiffs."

These paragraphs are some examples of actions that form the basis of Plaintiffs' § 1983 claims and will not be addressed by the Division of Alcoholic Beverage Control ("ABC"). Thus, the Court will not disrupt the ABC's oversight by adjudicating this case.

In <u>Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd & Laracuente</u>, Civil Action No. 04-03919 (KSH), 2005 <u>U.S. Dist. LEXIS</u> 22654, at *29 (D.N.J. Sep. 29, 2005), the court held that <u>Burford</u> abstention was not warranted. In that case, the

plaintiff employer sued 86 current and former employees and a law firm, alleging violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and the New Jersey RICO statute; conspiracy to violate same; violation of common law fraud; common law conspiracy; and violations of New Jersey's Workers' Compensation fraud statute. Id. at *1-2. The plaintiff employer had decided to cease the manufacturing arm of its business and move the packaging and distribution functions to another facility, laying off 112 employees as a result. Id. at *4. According to the complaint, the layoffs angered several employees and they consulted with the defendant law firm, which instructed them to file fraudulent workers' compensation claims against the plaintiff. Id. at *5-6. The complaint asserted that the defendants used the mails to send letters and other materials in furtherance of a scheme to defraud the plaintiff, in violation of the RICO statute. Id. at *7. In response, the defendants argued the Federal Court should invoke abstention pending adjudication before the Division of Workers' Compensation. Ibid.

  The Court in Bath Unlimited found that a decision by the court would not interrupt the activities of the Division of Workers' Compensation because the elements of the plaintiff's RICO claim were not identical to a workers' compensation claim, nor were the plaintiff's various common law claims. Id. at *19. Similarly, in this case, a decision by this Court would not interrupt the activities of the ABC because the elements of Plaintiffs' RICO claims are not identical to an ABC appeal, nor are Plaintiffs' § 1983 claims or other various common law claims. As the court in Bath Unlimited found that the defendants were "conflating the veracity of the underlying workers' compensation claims into

the essence of the RICO claim, when it is only one of the evidentiary matters incident to the RICO claim," Defendants in this case are conflating the outcome of Plaintiffs' ABC appeal into the essence of Plaintiffs' claims in this action, when the ABC appeal is only one of the evidentiary matters incident to this action.

The court in Bath Unlimited also noted that the Supreme Court in Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 815 n.21 (1976) had stated that "the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." Bath Unlimited, 2005 U.S. Dist. LEXIS 22654, at *26. The court noted that it had federal question jurisdiction under 28 U.S.C. § 1331 and subject matter jurisdiction under 18 U.S.C. § 1964(c) of the federal RICO statute. Similarly, this Court has federal bases of jurisdiction over Plaintiffs' claims, which therefore raises the level of justification needed for abstention.

Chiropractic Am. v. LaVecchia, 180 F.3d 99 (3d Cir. 1999), cited by Defendants in their letter brief, is distinguishable from this case. Chiropractic Am. involved a "federal constitutional challenge to certain regulations of New Jersey's comprehensive no-fault automobile insurance law." Id. at 101. The court dismissed the complaint on the basis of Burford abstention because it found that "the courts of New Jersey are in the best position to consider the validity of the applicable regulations under state law, and can do so without having to examine the constitutional questions that have been raised by Appellants." Id. at 103. In this case, however, Plaintiffs are not challenging the validity of regulations under New Jersey law; rather, Plaintiffs are challenging the federal constitutionality of actions of Borough officials. This Court is in the best position to consider the legality of Defendants' actions, under the federal constitution and under state and

federal law, contrary to Chiropractic Am. Unlike in Chiropractic Am., in this case an examination of the constitutional questions raised by Plaintiffs is necessary for a disposition of the matter.

PTK, LLC v. Borough of Fort Lee, Civil Action No. 07-cv-2166(DMC), 2008 U.S. Dist. LEXIS 22934 (D.N.J. Mar. 24, 2008), also cited in Defendants' letter brief, is distinguishable from this case for a similar reason. In PTK, the court found that "[t]his case involves the attempted transfer of a liquor license from one plaintiff to another, and the administrative procedure surrounding said transfer. Clearly, this cause of action involves difficult questions of state, not federal law such that the first factor under Burford is satisfied." Id. at *11. This case, by contrast, involves more than the attempted transfer of a liquor license. It also involves the tortious, fraudulent and extortionate conduct of Belmar officials to interfere with Plaintiffs' ability to operate their businesses in the Borough, as alleged in the First Amended Complaint. This case involves difficult questions of federal law, unlike in PTK. Ibid.

Thus, this Court should not abstain under Burford. Neither the legal nor the equitable claims should be dismissed nor stayed.[1]

### 3. The Prudential Ripeness Doctrine

This case is ripe for judicial review under the prudential ripeness doctrine.

---

[1] Further, a material question at this point exists as to whether an equitable remedy in the form of an order to transfer the liquor license exists in any forum given that, as noted in Plaintiffs' opposition to the Motion to Dismiss, the recently adopted amendment to the Redevelopment Agreement does not allow for a food/outdoor café and pier bar mandated by the 2014 Redevelopment Agreement. In any case, no resolution in any administrative setting will address Plaintiffs' damages for the multitude of Defendants' actions designed to prevent Plaintiffs from operating their business.

In assessing ripeness, a court examines "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Nextel Communs. of the Mid-Atlantic, Inc. v. City of Margate, 305 F.3d 188, 193 (3d Cir. 2002).

> Whether a question is fit for judicial review depends upon factors such as [1] whether the agency action is final; [2] whether the issue presented for decision is one of law which requires no additional factual development; and [3] whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it.
>
> [Id. (quoting Felmeister v. Office of Attorney Ethics, Div. of N.J. Admin. Office of Courts, 856 F.2d 529, 535-36 (3d Cir. 1988)).]

Here, as to the first factor, the agency action is final because "the initial decisionmaker," the Borough of Belmar Council, "has arrived at a definitive position on the issue" of Plaintiffs' license transfer application "that inflicts an actual, concrete injury." Id. at 193. The Council's denial of the transfer has injured Plaintiffs by preventing them from operating a bar and café and preventing them from making use of the subject property pursuant to their lease in the only permissible manner under the lease and Redevelopment Agreement.

As to the second factor above, the only factual development needed is in the context of the § 1983 action, not before the ABC. Plaintiffs' § 1983 claims require factual development in this federal action regarding matters such as communications between the Borough and Chefs International, and intra-Borough communications regarding the investigations and enforcement activities set forth in the First Amended Complaint.

As to the third factor above, no further administrative action is needed to clarify the Borough Council's position; the Council clearly stated its final position on the record at its June 8, 2016 meeting.

Thus, the issues in this case are fit for judicial review under <u>Nextel</u>, 305 <u>F.3d</u> at 193.

This case is distinguishable from <u>Almeida v. Conforti</u>, No. 16-3411 (KM) (JBC), 2017 <u>U.S. Dist. LEXIS</u> 21817 (D.N.J. Feb. 14, 2017), which Defendants cite in their letter brief. In that case, the Superior Court, which is the agency that had the authority to issue carry permits, had not made a determination as to whether to issue a carry permit to the applicant. <u>Id.</u> at *22. The District of New Jersey held that the claims did not satisfy the ripeness requirement because there were factual issues that had not been decided by the Superior Court. <u>Id.</u> at *23. By contrast, here, the factual issues had already been addressed by the issuing authority, the Borough Council, when it denied the license transfer, expressing concerns about noise, security and parking.

As to the requirement of hardship to the parties of withholding court consideration, <u>Nextel</u>, 305 <u>F.3d</u> at 193, the hardship to Plaintiffs would be immediate and significant. <u>Id.</u> at 194. Plaintiffs have lost a substantial amount of income because of the denial of their ability to transfer their license and operate a bar and café at the property because of Defendants' various actions. Plaintiffs have also lost substantial good will and business opportunity as well as expenses concerning the approval and construction of the Salt facility. Thus, the hardship to Plaintiffs of withholding court consideration would be significant.

In <u>Bath Unlimited</u>, <u>supra</u>, 2005 <u>U.S. Dist. LEXIS</u> 22654, at *36, the court

found that the plaintiff's claims were sufficiently ripe for judicial decision. The court noted that the "plaintiff has alleged concrete and ongoing injuries that are not dependant upon the final adjudication of the workers' compensation claims." Id. at *33. Similarly, in this Case, Plaintiffs have alleged concrete and ongoing injuries that are not dependent upon the final adjudication of the denial of the license transfer.

Therefore, the Court should adjudicate this case in accordance with the ripeness doctrine.

### 4. The Primary Jurisdiction Doctrine

The Court should not dismiss this case under the primary jurisdiction doctrine.

First, once again, the denial of the license transfer is only part of this litigation and only part of Plaintiffs' claim of a violation of their substantive due process rights. Even if the license transfer were granted, Defendants nevertheless took numerous actions against Plaintiffs, as set forth above and more fully in the First Amended Complaint, in violation of Plaintiffs' due process rights.

In MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1104 (3d Cir. 1995), the court cautioned as follows with regard to primary jurisdiction:

> Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.' 'Expertise' is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility.
>
> [Ibid. (quoting Elkin v. Bell Telephone, 491 Pa. 123, 420 A.2d 371, 377 (Pa. 1980)).]

In this matter, the damages inflicted by the Defendants' several actions may only be remedied by recourses provided for in a § 1983 action. No agency expertise is needed to decide those standards.

## Conclusion

The Court should adjudicate this case, because (1) exhaustion of administrative remedies is not required to bring an action pursuant to 42 U.S.C. § 1983, (2) <u>Burford</u> abstention does not apply, and (3) the case is ripe for adjudication under the prudential ripeness doctrine.

Respectfully,

RICHARD J. SHAKLEE

RJS/jal