**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIMOTHY HARMON, et al., ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> BOROUGH OF BELMAR, et al., ) <br> ) <br> *Defendants*. ) <br> ) <br> ) <br> ) | Civil Action No: <br> 17-cv-2437 (PGS)(LHG) <br><br><br> **MEMORANDUM** <br> **AND** <br> **ORDER** |

      This matter comes before the Court pursuant to the Motion to Dismiss filed by Defendants Borough of Belmar, Mayor Matthew Doherty, Colleen Connolly, Andrew Huisman, Jennifer Nicolay, Janis Keown-Blackburn, Thomas Brennan, Brian Magovern, Thomas Palmisano, Thomas Cox, Tina Scott, Ted Bianchi, and Robert Poff (collectively, "Defendants"). (ECF No. 12). Defendants are seeking dismissal of Plaintiffs Timothy Harmon, Matthew Harmon, DCJ Belmar, Inc., Dockside Dining, LLC, and Two Dawgs's (collectively, "Plaintiffs") First Amended Complaint ("FAC") (ECF No. 9), wherein Plaintiffs raised seven claims: (1) violation of due process pursuant to 42 U.S.C. § 1983; (2) violation of equal protection pursuant to 42 U.S.C. § 1983; (3) violation of the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d); (4) violation of New Jersey RICO; (5) intentional interference with a contractual relationship; (6) intentional interference with prospective economic advantage; and (7) intentional infliction of emotional distress.

## BACKGROUND

      Plaintiffs Timothy and Matthew Harmon ("The Harmons") own and operate restaurants and bars in the Borough of Belmar, New Jersey. The Harmons currently operate the Boathouse

Bar and Grill. (FAC ¶¶ 2-3).  In January 2014, the Borough entered into a Redevelopment Agreement with real estate developer, Loko, LLC. (*Id.* at ¶ 10).  The plan included the construction and operation of an outdoor café and bar, located at the northern boundary of the Borough, by the Shark River Inlet ("the Loko property").  (*Id.* at ¶¶ 10, 13 ).  Thereafter, Plaintiffs entered into an agreement with Loko to construct the outdoor café and bar, and to operate the facility for a three-year period ("Agreement"). (*Id.* at ¶ 13).  As part of the Agreement, Plaintiffs were to transfer the alcoholic beverage license from another restaurant, "507 Main," to the Loko property to operate a facility to be known as "Salt" (hereinafter, "Salt Facility"). (*Id.* at ¶ 15).

By way of background, Plaintiffs ceased operation of "507 Main" and, on April 24, 2015, applied to the Borough for the transfer of the alcoholic beverage license at "507 Main" to the Loko property. (*Id.* at ¶ 16).  During this same period, Loko demolished the existing structure on its property, in preparation for the construction of the Salt facility and other improvements. (*Id.*). Thereafter, Plaintiffs claim to have "engaged contractors, expended substantial funds, obtained construction and other permits from the Borough and began the process of constructing the Salt facility." (*Id.* at ¶ 17).

According to Plaintiffs, over the next year, Defendants conspired in various manners to interfere with their current operations at the Boathouse restaurant; their liquor license applications; and their construction of the Salt facility.  The Complaint alleges that, contrary to the "normal policies and procedures" of the Belmar Police Department, Defendant Palmisano assigned Plaintiffs' application to Defendant Huisman, who did not ordinarily investigate alcoholic beverage licenses. (*Id.* at ¶ 19).

In April 2015,[1] Plaintiffs claim, "Defendants Doherty and Connolly began a concerted effort to prevent the Plaintiffs from constructing and opening the Salt facility." (*Id.* at ¶ 22). Doherty allegedly told individuals "that the Plaintiffs 'would never open a business' in that location." (*Id.*). Defendants Doherty and Connolly allegedly directed Defendant Bianchi and the Construction Department to delay issuing permits for Plaintiffs' construction, despite already having Borough approval, to which Bianchi complied. (*Id.* at ¶ 23). In another episode, Defendants Doherty and Connolly allegedly discussed and negotiated with individuals to develop a different, larger, project on the already approved Loko property. (*Id.* at ¶ 24). Specifically, "Defendant Doherty advised Defendant Magovern and other members of the Borough Council that this alternative proposal was 'better for the Borough' and 'would be lost' if the Salt facility were allowed to open." (*Id.*). Doherty also allegedly attempted to coerce the Loko LLC to terminate its agreement with Plaintiffs and to agree to a new Redevelopment plan. (*Id.*).

At an April 2015 meeting, Doherty also allegedly made the following statements: (1) "The Borough will approve D'Jais or Ollie Klein at that location, but not the Harmon brothers"; (2) "The Harmons' application is going to get lost at police headquarters and it's going to take forever to come to the Council"; (3) "When the Harmons' application comes before the Council, we will deny the liquor license and force them to go to the ABC"; and, (4) "We know people there (at the ABC) and if by chance they approve the transfer, we will appeal. They will never open." (*Id.* at ¶ 26).

That summer, the Borough, Police Department, and Construction Department allegedly harassed the Harmon Brothers' interests. (*Id.* at ¶ 27). Specifically, Defendants Connolly and

---

[1] Although the Complaint identifies the date as "April 2014," it is clear from the chronology of the Complaint that Plaintiffs meant 2015.

Huisman filed a false CAFRA claim to the New Jersey Department of Environmental Protection, "in an effort to stop the project." (*Id.* at ¶ 29). Huisman also allegedly advised members of the Police Department to harass Plaintiffs and "arbitrarily denied Plaintiffs' applications for permits for the St. Patrick's Day Parade." (*Id.* at ¶ 30). The Complaint also claims Huisman told other Borough officials to be "team players" and to shut down the Salt project. (*Id.*). That fall, Huisman appeared before the Belmar Planning Board, to object to the site plan for the Salt facility. (*Id.* at ¶ 31). Despite no electrical engineering or lighting experience, Huisman testified that the facility's lighting was inadequate, which purportedly contradicted a report prepared by the Board's licensed engineer. (*Id.*).

The Complaint also alleged "Defendants Huisman, Doherty, Connolly, Nicolay, Keown-Blackburn, Brennan and Magovern conspired to impose a permit parking zone in the area of the Boathouse Bar and Grill, the only licensed premises in the Borough so targeted." (*Id.* at ¶ 32). Defendants Doherty and Connolly also directed a Stop Work Order on the project, which Defendant Bianchi issued. (*Id.* at ¶ 33).

In late May or early June 2016, over a year after Plaintiffs filed their application, the Belmar Police Department finally issued a report to Mayor and Council. (*Id.* at ¶ 36). Despite oral and written requests for a copy of the investigation report, the Police Department never provided Plaintiffs with a copy. (*Id.*).

The "person to person and place-to-place" transfer application was heard on June 8, 2016, before councilmen Brennan and Magovern, and councilwomen Keown-Blackburn and Nicolay. (*Id.* ¶ 37, 41-44). Prior to the hearing, Defendants Doherty and Connolly allegedly urged Belmar residents and business owners to appear at the meeting and oppose Plaintiffs' license transfer. (*Id.* at ¶ 38). At the hearing, Brennan recused himself from deliberations, due to a potential conflict of

4

interest, since his band plays at many local establishments. (*Id.* at ¶ 42).  During the public deliberation, Keown-Blackburn stated that she did not believe the license transfer was in the best interests of the Borough and voted against the transfer. (*Id.* at ¶ 43); (Claudio Decl., Exh. D at 2). Similarly, Nicolay expressed concern about the potential "security, parking, and noise" issues, and voted against the transfer as well. (Claudio Decl., Exh. D at 3).  Magovern disagreed, noting that the impact of the transfer would be no different than similar establishments; he also acknowledged that he knew the Harmons and "fe[lt] they would do a good job." (*Id.*).  Therefore, he voted in support of the application; however, since there was only one vote in favor of the application, it did not pass.

Plaintiffs Dockside Dining and DCJ Belmar, interests controlled by the Harmon Brothers, appealed the denial a week later to the Division of Alcoholic Beverage Control (ABC), within the Department of Law and Public Safety. (Claudio Decl., Exh. E.).  The Director of ABC referred the matter to the Office of Administrative Law for a factual hearing and a recommendation on a cause of action.  The ABC application remains pending. (Claudio Decl., Exh. F.).

Thereafter, Plaintiffs Dockside Dining and the Harmon Brothers filed a Tort Claim Form against the Borough. (Claudio Decl., Exh. G).  Named defendants included Doherty, Connolly, Huisman, and Palmisano. (*Id.*)  The claim alleged, "[t]he Borough and its police department have negligently or intentionally failed to investigate and otherwise process Claimants' application for alcoholic beverage license transfer." (*Id.*)  The notice form was amended two more times.  The First Amended Tort Claim Form identified Nicolay, Brennan, Connolly, and Keown-Blackburn as defendants. (Claudio Decl., Exh. H).  In describing the "wrongful acts" the claim added, "Maliciously, intentionally or in a grossly negligent manner denied the aforesaid application

5

without legal or factual basis." (*Id.*)  The Second Amended Tort Claim Form made no changes to the parties involved or the description of the cause of action. (Claudio Decl., Exh. I).

Plaintiffs bring seven causes of action based on federal and state law.  Specifically, they allege violations of Due Process and Equal Protection under the Fourteenth Amendment, 42 U.S.C. § 1983; violations of federal and New Jersey RICO statutes; tortious interference with a contractual relationship; intentional interference with prospective economic advantages; and, finally, intentional infliction of emotional distress.  In addition to damages, Plaintiffs seek injunctive relief, directing the Borough to approve their transfer application and to operate the Salt facility for a three-year period.

## LEGAL STANDARD

In deciding whether to abstain from adjudicating a particular case, when a parallel state administrative proceeding remains pending, federal courts must analyze their abstention ability under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *See PTK, LLC v. Borough of Fort Lee*, No.07-2166, 2008 U.S. Dist. LEXIS 22934, at *11 (D.N.J. Mar. 24, 2008).  Under *Burford*, "a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available." *Chiropractic Am. v. LaVecchia*, 180 F.3d 99, 104 (3d Cir. 1999).  "The purpose of *Burford* is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts." *Matusow v. Trans-Cty. Title Agency, LLC*, 545 F.3d 241, 247 (3d Cir. 2008) (internal quotation marks and citations omitted).

## ANALYSIS

Recognizing that the ABC Director has referred the denial of Plaintiff's alcoholic-license transfer application to the Office of Administrative Law, this Court sua sponte requested the parties

to provide supplemental briefs addressing whether federal abstention and related doctrines apply in this matter. Defendants contend that given the "complex regulatory regime relating to the public sale of alcoholic beverages," this Court should decline to interfere with the expertise of the Director of ABC. Plaintiffs respond, contending that since their cause of action is not solely predicated on the denial of their application, but also purported constitutional and RICO-related violations, this Court should not abstain from addressing these causes of action. Having reviewed the parties' submissions, this Court concludes that abstention is appropriate in light of the *Burford* abstention doctrine.

      As background, the State of New Jersey has a comprehensive statutory scheme to regulate the use and sale of alcoholic beverages. According to the New Jersey Alcoholic Beverage Control Act, the public policy is to: (a) "strictly regulate alcoholic beverages"; (b) "foster moderation and responsibility in the use and consumption of alcoholic beverages"; (c) protect consumers' interests against fraud and misleading practices; (d) "protect against the infiltration" of the industry by known criminals; and (e) maintain municipal control over the retailing of alcoholic beverages. N.J. Stat. Ann. § 33:1-3.1(b)(1), (2), (4), (5) and (9). In order to maintain the public policy, there is a Director of ABC, who oversees all state policies and "has authority to determine substantial compliance with license" issues. *In re Application of Virgo's, Inc.*, 810 A.2d 1175, 1179 (N.J. Super. Ct. App. Div. 2002). Despite these broad powers, the Legislature delegated to each municipality the authority to investigate applicants, to inspect premises, to enforce the provisions of the Act, and to conduct public hearings on applications. N.J. Stat. Ann. § 33:1-24. As such, municipalities are vested with a high responsibility and a wide discretion, and are intended to have as their personal guide the public interest. *See Lyons Farms Tavern, Inc. v. Mun. Bd. of Alcoholic Beverage Control of the City of Newark*, 261 A.2d 345, 351 (N.J. Sup. Ct. 1970). In the event a

municipality denies an application, there is an appeal to the director. If the director finds the municipality "is prima facie erroneous and that irreparable injury to the appellant would otherwise result," the director may review and amend the relief. N.J. Stat. Ann. § 33:1-22.

Against this background, the Court considers whether abstention is warranted. The purpose of *Burford* abstention is to protect "complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of New* Orleans, 491 U.S. 350, 362 (1989). Determining whether *Burford* abstention applies requires a two-step analysis. First, the Court must consider whether "timely and adequate state court review is available." *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 F. App'x 135, 144 (3d Cir. 2010) (citing *Chiropractic Am.*, 180 F.3d at 104). Second, if timely and adequate state review is available, the Court must consider three issues:

> (1) whether the particular regulatory scheme involves a matter of substantial public concern, (2) whether it is the sort of complex, technical regulatory scheme to which the *Burford* abstention doctrine usually is applied, and (3) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy

*Chiropractic Am.*, 180 F.3d at 105 (internal quotation marks and citations omitted).

First, this Court recognizes that although possession of a liquor license may constitute "an interest in property for purposes of federal due process analysis," it is not absolute and is tempered with public health, safety, and welfare concerns. *Sea Girt Rest. & Tavern Owners Ass'n v. Borough of Sea Girt*, 625 F. Supp. 1482, 1488 (D.N.J. 1986); *Boss Co. v. Bd. of Comm'rs*, 192 A.2d 584, 586 (N.J. Sup. Ct. 1963). Here, New Jersey statutes and regulations set forth a stringent administrative process for transferring an alcohol beverage license. After filing an application, municipalities conduct a thorough investigation of the applicant's credentials and, upon receipt of a timely written objection, hold a hearing to determine the whether such an application should be

granted. *See* N.J. Admin. Code §§ 13:2-2.7 to 2.10. If denied, applicants can appeal to the Director of ABC within 30 days. Similarly, if the director upholds the municipality's denial, the determination can be appealed to the Appellate Division of the New Jersey Superior Court. *See* N.J. Admin. Code §§ 13:2-17.1 to 17.12. As such, there is a comprehensive statutory scheme, and a timely review process as required by the first prong of the *Burford* doctrine. Moreover, Plaintiffs have availed themselves of this process by administratively appealing the Borough's decision, which has been referred to the Office of Administrative Law.

Turning to the second prong of *Burford*, this Court finds all three factors are present. First, the regulation of alcohol distribution and licensure is a significant matter of local and state concern. *See Granholm v. Heald*, 544 U.S. 460, 484 (2005). Obviously, the municipality has the right to limit the number of alcohol beverage outlets; and the transferring of a liquor license to another location may not be in accordance with local concerns. This is an issue that should be considered by both the local and state government. *See, e.g.*, *PTK, LLC*, 2008 U.S. Dist. LEXIS 22934, at *11.

Second, "[t]o implicate the sort of technical, complex regulatory scheme to which *Burford* abstention is usually applied, the action must challenge the scheme itself, rather than just actions taken under color of the scheme." *Culinary Serv. of Del. Valley, Inc.*, 385 F. App'x at 144. As discussed above, under the Alcoholic Beverage Control Act, N.J. Stat. Ann. §§ 33:1-1 to -97, New Jersey has established robust regulatory scheme that promulgates various provisions pertaining to the application and receipt of a liquor license. Notably, under N.J. Admin. Code §§ 13:2-17.1 to 17.12, the Act provides an appeals process for which any individual can contest the denial of an application. *Id.* Although Plaintiffs maintain that adjudicating their Section 1983 and tort-related claims would not interfere with ABC's oversight, their prayer for relief states otherwise. It explicitly requests an order "[d]irecting Defendants to transfer the 507 Main alcoholic beverage

9

license to the Salt/Loko property and permitting the same to be operated for a three (3) year period." (FAC at ¶ 30). Obviously, this interferes with the statutory process for alcoholic beverage license approval and, more importantly, the apparent municipal concerns regarding the location and ownership of the proposed transfer.

Finally, the third factor is clearly satisfied, since litigation here would interfere with the pending administrative appeal. As such, this Court is satisfied that all three factors are met, thereby supporting a determination that abstention is warranted here. In addition, since this case also involves damages and injunctive relief, this Court will stay the matter and await the decision of the appeal to the Director of ABC. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996) (concluding that a stay is appropriate when the case involves damages); *Yamaha Motor Corp., USA v. Stroud*, 179 F.3d 598, 603-04 (8th Cir. 1999) (finding a stay, rather than dismissal, appropriate "[w]hen monetary damages are sought in addition to injunctive relief").

## ORDER

IT IS on this 23rd day of October, 2017,

**ORDERED** that Defendants' motion to dismiss" (ECF No. 12) is administratively terminated and may be re-opened upon final resolution of the appeal process.

*s/Peter G. Sheridan*
*PETER G. SHERIDAN, U.S.D.J.*