# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY HARMON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BOROUGH OF BELMAR, *et al.*,<br><br>Defendants. | Civil Action No.<br>3:17-cv-2437 (PGS) (TJB)<br><br>**MEMORANDUM<br>AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion by Defendants to dismiss Plaintiffs' Third Amended Complaint for failure to state a claim upon which relief can be granted. The nine-count complaint alleges: (1) due process violations under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; (2) violations of the equal protection clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; (3) violations of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; (4) violations of the New Jersey counterpart of RICO, N.J.S.A. 2C:41-1 to -6.2; (5) intentional interference with a contractual relationship; (6) intentional interference with prospective economic advantage; (7) intentional infliction of emotional distress; (8) violation of the New Jersey Civil Rights Act; and (9) retaliation for exercise of First Amendment rights.

In addition to damages, Plaintiffs seek injunctive relief, directing the Borough to approve their transfer application and to permit them to operate their leased restaurant facility for a three-year period. Defendants seek dismissal of Plaintiffs' Complaint in its entirety.

## FACTUAL BACKGROUND

Plaintiffs Timothy and Matthew Harmon (Harmon Plaintiffs) maintain restaurants and bars in the Borough of Belmar, New Jersey, including the Boathouse Bar and Grill (Boathouse). (Third Amended Complaint (TAC), ¶ 2-3). Plaintiff 1309 Main Street Associates (1309 Main) is an entity owned by the Harmon Plaintiffs, which, in turn, owns the property on which the Boathouse is located. (*Id.* at ¶ 3). In January 2014, the Borough entered into a redevelopment agreement with real estate developer, Loko, LLC. (*Id.* at ¶ 8). The plan included the construction and operation of an outdoor cafe and bar, located at the northern boundary of the Borough by the Shark River Inlet (Loko property). (*Id.* at ¶ 10, 13). Thereafter, Plaintiffs entered into an agreement with Loko to construct the outdoor cafe and bar, and to operate the facility for a three-year period. (*Id.* at ¶ 13). As part of the agreement, Plaintiffs were to transfer the alcoholic beverage license from another restaurant that they controlled, 507 Main, to the Loko property, which would operate a facility to be known as Salt. (*Id.* at ¶ 15).

Plaintiffs ceased operation of 507 Main and, on April 24, 2015, applied to the Borough for the transfer of the alcoholic beverage license at 507 Main to the Loko property. (*Id.* at ¶ 16). To secure the transfer, Plaintiffs submitted a "Retail Liquor License Application." (*Id.* at ¶ 17; Declaration of April Claudio, ECF No. 56-2, Ex. H, Liquor License Application). During this same period, Loko demolished the existing structure on its property, in preparation for the construction of the Salt facility and other improvements. (TAC at ¶ 14). Thereafter, Plaintiffs claim to have

"engaged contractors, expended substantial funds, obtained construction and other permits from the Borough and began the process of constructing the Salt facility." (*Id.*).

According to Complaint, Plaintiffs expected their application would be handled by the Belmar Police Department, which would have a detective investigate the application and prepare a report for the Mayor and Borough Council within sixty days. (*Id.* at ¶ 19). Plaintiffs allege that the Belmar Police Department handled similar liquor license applications for other local restaurants, Chefs International, Inc., and 10th Avenue Burrito Company, which were both outdoor bars and dining areas with live music, and were near residential structures, including a senior citizens' apartment building. (*Id.* at ¶ 20-21). However, the Complaint alleges that, contrary to the "policies and procedures" of the Belmar Police Department, Palmisano, as former Chief of Police, assigned Plaintiffs' application to Huisman, then a Captain of the Police Department who did not ordinarily investigate alcoholic beverage licenses. (*Id.* at ¶ 22).

At an April 2015 meeting, Mayor Doherty allegedly made the following statements: (1) "The Borough will approve D'Jais or Ollie Klein[1] at that location, but not the Harmon brothers"; (2) "The Harmons' application is going to get lost at police headquarters and it's going to take forever to come to the Council"; (3) "When the Harmons' application comes before the Council, we will deny the liquor license and force them to go to the ABC"; and, (4) "We know people there (at the ABC) and if by chance they approve the transfer, we will appeal. They will never open." (*Id.* at ¶ 48). Nevertheless, on June 8, 2016, over one year after Plaintiffs filed their liquor license application, it was heard before Councilmen Brennan and Magovern, and Councilwomen Keown-Blackburn and Nicolay (hereinafter, "Council Defendants"). (*Id.* ¶ 62, 65, 66, 6870, 72). Prior to the hearing, Mayor Doherty and Connolly allegedly urged Belmar residents and business owners

---

[1] The names of two other local restaurants.

3

to appear at the meeting and oppose Plaintiffs' license transfer, (*Id.* at ¶ 63), and instructed Nicolay, Keown-Blackburn, and Magovern to vote "no," (*Id.* at ¶ 70). At the hearing, Councilman Brennan recused himself from deliberations, due to a potential conflict of interest, since his band plays at many local establishments. (*Id.* at ¶ 67). During the public deliberation, Councilwoman Keown-Blackburn stated that she did not believe the license transfer was in the best interests of the Borough and voted against it. (*Id.* at ¶ 68; Claudio Decl., ECF No. 56-2, Ex. I Council Meeting Minutes, at 2). Similarly, Councilwoman Nicolay expressed concern about the potential "security, parking, and noise" issues, and voted against the transfer as well. (TAC, at ¶ 68; Council Meeting Minutes, at 3). Councilman Magovern disagreed, noting that the impact of the transfer would be no different than similar establishments; he also acknowledged that he knew the Harmons and "fe[lt] they would do a good job." (Council Meeting Minutes, at 3). He voted in support of the application; however, since there was only one vote in favor, it did not pass. (*Id.*).

Plaintiffs Dockside Dining and DCJ Belmar, interests controlled by the Harmon Brothers, appealed the denial a week later to the Division of Alcoholic Beverage Control (ABC), within the Department of Law and Public Safety. (Cladio Decl., ECF No. 56-2, Ex. J, Appeal). On November 3, 2017, Plaintiffs withdrew the appeal, since their lease of the property had expired, and a new Redevelopment Agreement had been entered between the Borough and Loko, LLC. (Claudio Decl., ECF No. 56-2, Ex. L, Withdrawal Letter). Before withdrawing their appeal, Plaintiffs Dockside Dining and the Harmon Brothers had filed a Tort Claim Form against the Borough on August 17, 2015. (Claudio Decl., ECF No. 56-2, Ex. AA, Tort Claim Form I). Named defendants included Doherty, Connolly, Huisman, and Palmisano. (*Id.*) The claim alleged, "[t]he Borough and its police department have negligently or intentionally failed to investigate and otherwise process Claimants' application for alcoholic beverage license transfer." (*Id.*) The notice form was

amended two more times, first to add Nicolay, Brennan, Connolly, and Keown-Blackburn as defendants, (Claudio Decl., ECF No. 56-2, Ex. BB "Tort Claim Form II"). In describing the "wrongful acts" the amended claim added, "Maliciously, intentionally or in a grossly negligent manner denied the aforesaid application without legal or factual basis." (*Id.*). The Second Amended Tort Claim Form made no changes to the parties involved or the description of the cause of action. (Claudio, Decl., ECF No. 56-2, Ex. CC "Tort Claim Form III").

In April 2015, while Plaintiffs' liquor license application remained pending, Mayor Doherty and Borough Administrator Connolly allegedly engaged in a "concerted effort to prevent the Plaintiffs from constructing and opening the Salt facility." (TAC at ¶ 29). Mayor Doherty allegedly told individuals "that the Plaintiffs 'would never open a business' in that location.'" (*Id.*). Doherty and Connolly allegedly directed Bianchi, as Borough Construction Officer, "to delay, deny and/or refuse to issue permits" for Plaintiffs' construction, despite already having received approval from the Borough Planning Board, to which Bianchi complied. (*Id.* at ¶ 34). On another occasion, Connolly directed Huisman and Palmisano to send police officers to the Salt property. (*Id.* at ¶ 38). The officers threatened to arrest the workers if they did not stop work. (*Id.*).

During that summer, Plaintiffs claim that Connolly and Huisman filed a false Coastal Area Facility Review Act (CAFRA) claim with the New Jersey Department of Environmental Protection, "in an effort to stop the project." (*Id.* at ¶ 44). Neither Connolly nor Huisman were able to produce a copy of any violation and Kapalko later verified that no violation existed. (*Id.*). That fall, Huisman appeared before the Belmar Planning Board, to object to the site plan for the Salt facility. (*Id.* at ¶ 28). Huisman claimed that the facility's lighting was inadequate, which purportedly contradicted a report prepared by the Board's licensed engineer. (*Id.*). At some point

thereafter, Plaintiff claims that Doherty and Connolly also directed a Stop Work Order on the Salt project, which was later issued by Bianchi. (*Id.* at ¶ 37).

Plaintiffs also assert claims relating to the Boathouse, another restaurant they own in Belmar. At its core, those allegations relate to Huisman's alleged attempt to prevent the Boathouse from obtaining a permit to expand its premises during the February 2016 St. Patrick's Day parade. (*Id.* at ¶ 59). According to the Complaint, Huisman also advised he would be "standing outside the Boathouse on the day of the St. Patrick's Day Parade" and would "immediately shut down the Boathouse" if he found any violations. (*Id.* at ¶ 59). Plaintiffs do not allege that the permit was in fact denied or that Huisman took any action to shut down the restaurant during the parade.

In addition, Plaintiffs allege Doherty had a personal desire to stop their project, claiming that he received assistance from officers of Chef's International to obtain a fifth mortgage on his house. They also allege that Doherty indirectly received political contributions from D'Jais, and that he was present at the grand opening of Anchor Tavern and stated that he had "a lot invested in this place." (TAC, at ¶¶ 80-91).

## LEGAL ANALYSIS

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported

conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

## 1309 Main's Standing

Defendants first contend that "the TAC does not allege that 1309 suffered any harm as a result of Defendants' alleged actions" and therefore lacks standing. (Defendants' Brief, ECF 56-1, at 20). According to the TAC, 1309 Main is "an entity owned by Plaintiffs Timothy and Matthew Harmon," which owns the real estate where the Boathouse is located.

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). As owner of the property on which the Boathouse sits, 1309 Main has standing to assert claims relating to that property, but only to the extent that the allegations affect development of the property or otherwise diminished the its value. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 141 (3d Cir. 2009); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 190 (3d Cir. 2006). As Plaintiffs' Boathouse allegations set forth no such claims, 1309 Main lacks standing to bring those claims and similarly lacks standing to bring any claims relating to the Salt facility.

## Substantive Due Process

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 433 F.3d 141, 146 (3d Cir. 2005). "As a general matter, [courts have] always been reluctant to expand the concept of

substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). "The history of substantive due process 'counsels caution and restraint.'" *Nicholas v. Pa. State. Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (quoting *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)). It is "a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties." *Armbruster v. Cavanaugh*, 410 Fed. App'x 564, 565 (3d Cir. 2011).

"To state a substantive due process claim, 'a plaintiff must have been deprived of a particular quality of property interest.'" *Nicholas*, 227 F.3d at 140 (citation omitted). Determining what is considered a "particular quality" "depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* "[T]his Circuit has adopted an approach . . . that focuses on the nature of the property interest at stake." *Id.* at 141. In this context, Plaintiffs aver that they have three constitutionally viable substantive due process interests: (1) their interest in the property as leaseholders; (2) their interest in engaging in business in the location; and (3) their interest in pursuing their calling, occupation, or livelihood. 1309 Main also sets forth a substantive due process claim relating to its ownership interest in the Boathouse property.

With regard to Plaintiffs' first claimed interest, this Court found in its February 26, 2018 opinion that "fatal to Plaintiffs' . . . [a]llegations is the fact that they do not own the property where the alleged misconduct took place." (February 26, 2018 Opinion, at 13). Plaintiffs contend they were deprived of their "property interest in developing and operating the business anticipated to be established on the property leased from Loko," (Plaintiffs' Brief, at 19), and urge the Court to depart from the law of this case.

As this Court's prior opinion recognized, in *Selig v. North Whitehall Township Zoning Hearing Board*, 653 Fed. App'x 155, 157 (3d Cir. 2016), the Third Circuit stated, "We are not aware of any case in which we have found that something other than full property ownership warrants substantive due process protection." Further, in *Nicholas*, the Third Circuit stated, "[W]e have so far limited non-legislative substantive due process review to cases involving real property ownership." 227 F.3d at 141. The Court notes this Third Circuit precedent and declines to depart from the law-of-the-case-doctrine in this context despite nonbinding case law cited by plaintiffs. *See, e.g., Am. Marine Rail N.J., LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 582-83 (D.N.J. 2003).

Plaintiffs' other claimed right to operate a business is not a recognized substantive due process right. *See Wrench Transp Sys., Inc. v. Bradley*, 340 Fed. App'x 812, 815 (3d Cir. 2009) (finding plaintiff's claimed "right to 'engage in business'" was "not protected by substantive due process"); *Flanders v. Dzugan*, 156 F. Supp. 3d 648, 665 n.10 (W.D. Pa. 2016) ([T]o the extent [plaintiff] complains that Defendants interfered with his ability to run his business, this allegation cannot serve as the basis for a substantive due process claim, because [plaintiff] did not have any constitutionally protected property interest in his business."). And Plaintiffs' final substantive due process argument, that they were deprived of their right to pursue their calling, occupation, or livelihood, (Plaintiffs' Brief, at 27), is similarly meritless. To allege a violation of their right "to hold specific private employment and to follow a chosen profession free from unreasonable government interference, . . . Plaintiffs must allege an inability to obtain employment within the field, not just a particular job or at a specific location or facility." *Culinary Serv. of De. Valley, Inc. v. Borough of Yardley, Pa.*, 385 Fed. App'x 135, 141 (3d Cir. 2010). Plaintiffs' substantive due process claims are therefore without merit.

Procedural Due Process

The Court similarly finds that Plaintiffs have failed to state a procedural due process claim, which requires a plaintiff to "allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner but the concept is flexible, calling for protection as dictated by the particular circumstances." *Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985). "[S]ubstantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary." *Cohen v. City of Phila.*, 736 F.3d 81, 86 (3d Cir. 1984), *superseded in part on other grounds by Cleveland Park Bd. of Educ. V. Loudermill*, 470 U.S. 532 (1985). However, "[w]hen access to [the] procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim." *Alvin v. Suzuki*, 227 F.3d 107, 118 (3d Cir. 2000).

Although the Court recognizes "a New Jersey liquor license is an interest in property for purposes of federal due process analysis,"[2] *see Sea Girt Restaurant & Tavern Owners Ass'n v. Borough of Sea Girt*, 625 F. Supp. 1482, 1488 (D.N.J. 1986), "a local agency may deny a license application without a hearing so long as prompt administrative or judicial review of the action is available thereafter." *Maple Prop., Inc. v. Twp. of Upper Providence*, 151 Fed. App'x 174, 177-78 (3d Cir. 2005). As the Court has already ruled, (*see* Feb. 26, 2018 Opinion, at 16-17), the delay associated with the transfer application did not constitute a due process violation because Plaintiffs

---

[2] Plaintiffs only argue that the delayed liquor license transfer – not Boathouse- or construction-related claims – was a denial of procedural due process. (*See* Plaintiffs' Brief, ECF No. 60, at 21-24).

failed to avail themselves of appellate relief, which they could have done after sixty days of delay, *see* N.J.A.C. § 13:2-7.7(d), and they later withdrew their application.

Further, Plaintiffs fail to allege they were denied due process because Defendants blocked their administrative remedies by amending the Redevelopment Agreement to preclude the use proposed by Plaintiffs. (*See* Claudio Decl., Ex. L). Plaintiffs' lease agreement expired on October 31, 2017, and on November 3, Plaintiffs withdrew their administrative appeal. (Claudio Decl. Ex. L). In light of the short-lived nature of Plaintiffs' lease, which – in addition to the Redevelopment Agreement – resulted in the appeal being withdrawn as moot, the Court finds no due process violation. The Court also reiterates that if Plaintiffs had availed themselves of appellate relief after their application was delayed for sixty days pursuant to N.J.A.C. 13:2-7.7(d), they would likely have avoided the problems allegedly caused by the Redevelopment Agreement.

First Amendment Retaliation

Plaintiffs allege that Defendants retaliated against them for their exercise of First Amendment rights arising from their political opposition to a State Senate bill; a claim asserted for the first time in the Third Amended Complaint. From June 2015 to January 2016, Plaintiffs Timothy and Matthew Harmon advocated to state legislators their opposition to a proposed State Senate bill "to extend the period of operation of seasonal alcoholic beverage licenses." (TAC, at ¶ 84). "At the end of 2015," they testified before a State Assembly committee in opposition to the bill. (TAC, at ¶ 85). Plaintiffs allege that Defendants Doherty and D'Jais supported the bill, (*id.* at ¶ 84), and, in retaliation, "interfered with and harassed the Plaintiffs in the construction of the Salt facility; issued illegal and improper stop work orders; and otherwise acted to disrupt and disturb the Plaintiffs' project," (*id.* at ¶ 173).

To successfully allege a § 1983 claim for retaliation for exercise of First Amendment rights, Plaintiff must set forth that "1) the plaintiff engaged in activity protected by the First Amendment; 2) the defendant took retaliatory action against the plaintiff 'sufficient to deter a person of ordinary firmness from exercising his or her rights'; and 3) a causal nexus existed between the protected activity and the retaliation." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. App'x 126, 133 (3d Cir. 2017) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

The retaliatory acts alleged with respect to prong two must be sufficient to "deter a person of ordinary firmness from exercising his or her First Amendment rights"; the test is not "whether Defendant's . . . [actions] actually deterred Plaintiffs from speaking." *Citizens for a Better Lawnside, Inc. v. Bryant*, 2007 WL 1557479, at 6 (D.N.J. May 24, 2007). To establish a causal nexus, the third prong, a plaintiff must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W.*, 480 F.3d at 267. The second and third prongs of the test pose questions of fact, rather than of law. *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Fredericks v. Twp. of Weehawken*, 2012 WL 5628196, at 7 (D.N.J. Nov. 15, 2012).

Although plaintiffs do not explicitly state that defendants knew of their protected activity, they allege generally that they have opposed the legislation of which Doherty and others have been proponents. Further, the alleged retaliatory acts, having begun at the same time as their advocacy, were temporally connected to plaintiffs' protected activity. In addition, Doherty's statements and the actions taken against plaintiffs and their businesses continued after plaintiffs' public testimony. The Court finds plaintiffs have sufficiently alleged a pattern of antagonism coupled with timing to establish a causal link to satisfy the causal nexus requirement.

As to the retaliatory-action prong of the test, Plaintiffs contend "the threats of arrest, the stopping of work at the site, the multiple acts of singling out the Boathouse for enforcement and different rules, all clearly show a retaliatory force which is anything but *de minimus*." (Plaintiffs' Brief, ECF No. 60, at 43). The Court agrees that these allegations would deter a person of ordinary firmness from exercising their First Amendment rights and therefore shall decline to dismiss plaintiff's claim for first amendment retaliation.

### Equal Protection

Under a "class of one" claim – asserted herein – the plaintiff must demonstrate that: "1) it 'has been intentionally treated differently from others similarly situated,' and 2) 'there is no rational basis for the difference in treatment.'" *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiffs contend this requirement is satisfied because the other establishments cited "have (1) outdoor seating; (2) alcohol service; (3) entertainment; and (4) approved liquor license transfers." Plaintiffs' Brief, at 46.

"[D]etermining whether an individual is 'similarly situated' to another individual is a case-by-case-fact-intensive inquiry." *Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012). The plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties." *Perano v. Twp. Of Tilden*, 423 Fed. App'x 234, 238 (3d Cir. 2011). As to the second prong, "[r]ational basis review is a very deferential standard. It is met 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the differing treatment." *Newark Cab Assoc. v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *United States v. Walker*, 473 F.3d 71, 77 (3d Cir. 2007)).

The TAC, like the initial complaint, fails to establish that Defendants treated Plaintiffs differently from others similarly situated. The TAC does not allege that the other identified businesses were tenants on the property, or whether a hearing was held before the Borough Council concerning the viability of the outdoor facility. Moreover, as the Court stated previously, the TAC "fails to demonstrate that there was an arbitrary or irrational basis for denying their application." Feb. 26, 2018 Opinion, at 18-19. The Court therefore finds Plaintiffs' Equal Protection claims must fail.

## New Jersey Civil Rights Act Claims

Plaintiffs assert the same claims in alleging a violation of the NJCRA as they do in their claim of a § 1983 violation. "[T]he NJCRA was intended to serve as an analog to [§ 1983]; it was intended to incorporate and integrate seamlessly with existing civil rights jurisprudence." *Chapman v. New Jersey*, 2009 WL 2634888, at 3 (D.N.J. Aug 25, 2009) (citation omitted). The Court's ruling on Plaintiffs' NJCRA claims shall reflect its already-discussed rulings on the § 1983 claims.

## Federal and State RICO Claims

The federal RICO act, 18 U.S.C. § 1962(c), prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affected interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." "To plead a RICO claim under § 1962(c) the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Brokerage Antitrust Litig.*, 618 F.3d 300, 363 (3d Cir. 2010). "A pattern of racketeering activity requires at least two predicate acts of racketeering." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

Plaintiffs allege that Defendants committed acts of extortion when Defendant Connolly directed Defendants Huisman and Palmisano to send armed police officers to the Salt property. TAC, at ¶ 38. "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); N.J.S.A. § 2C:20-5. Although the allegations "constituted threats directed to the Plaintiffs," (Plaintiffs' Brief, at 55), there is no allegation that "any Defendant took any property from a Plaintiff," (Defendants' Reply Brief, at 22).

Plaintiff similarly fails to claim an act of forgery as a predicate act under RICO. Paragraph 58 of the TAC, which provides in part that Defendants Cox, Scott, and Huisman "falsified reports and intentionally misrepresented statements made by individuals" and "falsely characterized . . . statements as having created an undisclosed interest in the alcoholic beverage license," fails to allege forgery with any specificity and thus is a "mere conclusory statement[]" "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681.

Plaintiffs also fail to allege a pattern of racketeering activity despite identifying several paragraphs of the TAC they contend constitute acts of extortion. (Plaintiffs' Brief, at 44 (citing TAC, at ¶ 29, 34, 43, 46, 48, 50, 77, 91, and 138)). Of the paragraphs cited, only paragraph 138 – which alleges "Defendant Doherty and others threatened 'to get' the Plaintiffs and interfered with Plaintiffs' legitimate business operations" – could be construed as an act of racketeering. This single allegation does not constitute a pattern. *See Lum v. Bank of Am.*, 361 F.3d 257, 267 (3d Cir. 2011) (requiring "at least two predicate acts" to establish a pattern of racketeering).

Finally, because "the pleadings do not state a substantive RICO claim, the RICO conspiracy claim must fail." *Hlista v. Safeguard Prop., LLC*, 649 Fed. App'x 217, 222 (3d Cir. 2016); *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000).

## Plaintiffs' State Law Claims

### *Intentional Interference with Contract/ Prospective Economic Advantage*

To establish tortious interference with "both contracts and prospective business relationships," a plaintiff must allege:

> (1) they had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage.

*Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79-80 (App. Div. 2004). Plaintiffs fail to adequately allege defendants tortuously interfered with a contract because according to the terms of plaintiffs' lease, it expired on October 31, 2017. (Claudio Decl., Ex. L).

Further, plaintiffs fail allege loss of prospective advantage, which requires "facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into. . . . '[T]he claimed loss of . . . unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations.'" *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998) (quoting *Advanced Power Sys., Inc. v. Hi-Tech Sys. Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992)). Plaintiffs' allegations fail to raise a reasonable probability that they would have had the opportunity to enter into a specific contract.

### *Intentional Infliction of Emotional Distress*

A plaintiff must allege "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe" to sustain a claim of intentional infliction of emotional distress. *Leang v. Jersey City Bd. Of Educ.*, 198 N.J. 557, 587 (2009). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buckley v. Trenton Sav. Fund. Soc'y*, 111 N.J. 355, 366 (1988). Plaintiffs' allegations do not approach what is necessary to establish a claim for intentional infliction of emotional distress and that claim is therefore dismissed.

*Notice of Claim*

Defendants contend Plaintiffs failed to file proper notices of their claims. "The New Jersey Tort Claims Act provides . . . that no action shall be brought against a public entity unless the claim upon which it is based shall have been presented in accordance with the procedure set forth." *Estate of McGrath by McGrath v. N. Jersey Dist. Water Supply Comm'n*, 224 N.J. Super. 563, 570-71 (N.J. Super. Ct. Law Div. 1986) (citing N.J.S.A. 59:8-3). The notice must provide "information sufficient to allow [the defendant] to investigate the facts and either settle the claim, if meritorious, or prepare a defense to it." *Guerrero v. City of Newark*, 216 N.J. Super. 66, 72 (N.J. Super. Ct. App. Div. 1987). Plaintiff submitted three notices of tort claims; each one alleges only tortious conduct with respect to the license transfer application. (*See* Claudia Decl., Ex. AA, at 2; Ex. BB, at 2; Ex. CC, at 2). Because the three notices made no mention of the construction- and Salt-related claims, they did not provide Defendants with adequate notice and the state tort claims must be dismissed to the extent that they related to those claims not noticed.

<u>Service on Connolly, Palmisano, Poff, and Cox</u>

"If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Plaintiffs have indicated that they have "attempted many times to serve Defendant Palmisano, but, upon information and belief, he is out of the country." (Plaintiffs' Brief, at 50). Plaintiffs have

therefore shown good cause for failing to serve Palmisano and the Court shall "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Further, the record indicates Connolly, Poff, and Cox were served in August, less than two months after the rule permits. (Summons Returned Executed, ECF No. 26, 27, 28). After they were served, the Court dismissed the First Amended Complaint, (February 26, 2018 Memorandum and Order, ECF No. 39), and plaintiffs filed their Second Amended Complaint, (SAC, ECF No. 40). The Court therefore concludes that those defendants would not be prejudiced by permitting late service. The Court shall, in its discretion, excuse plaintiff's improper service. *See MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 1097-98 (3d Cir. 1995) (finding that, although "absence of prejudice alone can never constitute good cause," the district court, under Rule 4(m), has "the discretion to allow [the] action to proceed even in the absence of 'good cause'").

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments advanced; for good cause shown, and for the foregoing reasons;

IT IS on this 20 day of November, 2018,

**ORDERED** that defendant's motion to dismiss (ECF No. 56) shall be **GRANTED** in part; and it is further

**ORDERED** that Counts I, II, III, IV, V, VI, VII, and VIII shall be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that defendant must effectuate service on defendant Thomas Palmisano within sixty (60) days of the date of this order.

PETER G. SHERIDAN, U.S.D.J.