# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY HARMON, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOROUGH OF BELMAR, *et al.*,<br><br>*Defendants*. | Civil Action No.: 17-cv-02437 (PGS)(ZNQ)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants' motion to dismiss Counts X and XI of Plaintiffs' Fourth Amended Complaint for failure to state a claim upon which relief can be granted.[1] (ECF Nos. 96, 100). In the Fourth Amended Complaint, Plaintiffs assert two new claims: (i) Breach of the Redevelopment Agreement (Count X); and (ii) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count XI). In the instant motion, Defendants seek dismissal of those new Counts on the grounds that Plaintiffs are not third-party beneficiaries of the subject Redevelopment Agreement and therefore lack standing to bring these claims. In the alternative, Defendants argue that dismissal is warranted because there was no breach of the Redevelopment Agreement and no bad faith. For the reasons stated herein, Defendants' motions to dismiss are denied.

---

[1] Defendants also seek an extension of time to file an answer to any remaining claims until such time that Defendants' motion to dismiss is ruled upon by the Court. (*Id.*) That request is granted. Defendants shall file an answer to any remaining claims within thirty (30) days of this Memorandum and Order.

## BACKGROUND

The Court presumes that the parties are familiar with the factual context and the procedural history of this action, which are set forth at length in the Court's prior Memorandum and Order dated November 20, 2018 (ECF No. 63). Accordingly, in the interest of judicial economy, the Court will recapitulate only those facts integral to resolving the instant motion.

Plaintiffs Timothy and Matthew Harmon ("Plaintiffs") maintain restaurants and bars in the Borough of Belmar, New Jersey. (Fourth Amended Complaint ("FAC") ¶¶ 2-3). The Defendant Borough of Belmar (the "Borough") is a resort community located along the Jersey Shore. (*Id.* ¶ 5).

The northern boundary of the Borough is marked by the Shark River Inlet and the Shark River. (*Id.* ¶ 6). The Borough created a redevelopment area along and near its boundary with the Shark River, including the property Plaintiffs refer to as the "Salt property" or the "Loko property." (*Id.* ¶ 7).

In January 2014, the Borough entered into the subject Redevelopment Agreement with real estate developer Loko, LLC ("Loko"). (*Id.* ¶ 8). The Redevelopment Agreement provided for a two-phase redevelopment of the Loko property; the first phase provided for the construction and operation of an outdoor café and bar; and the second phase provided for the construction of residential condominium units in which the first floor would contain commercial space. (*Id.* ¶ 10).

Throughout the course of Loko's negotiations with the Borough concerning the Redevelopment Agreement, Loko was engaged in discussions, consultations, and negotiations with Plaintiffs in a purported effort to induce Plaintiffs to own and operate the outdoor café and bar on the Loko property. (*Id.* ¶ 11). Plaintiffs allege that the Borough, the Mayor, and others were aware that Loko intended to have Plaintiffs operate the outside café and bar. (*Id.*).

On or about March 20, 2015, Plaintiffs entered into a lease agreement with Loko to construct and operate the outdoor bar and café on the Loko property. (*Id.* ¶ 13). Thereafter, Plaintiffs engaged contractors, obtained construction permits, and began the process of constructing the outdoor bar or café, which is referred to by Plaintiffs as the "Salt facility" or "Salt." (*Id.* ¶ 14).

In this version of the complaint, Plaintiffs allege, however, that they were ultimately prevented from opening and operating the Salt facility as result of Defendant's breach of the Redevelopment Agreement. (*Id.* ¶¶ 184-98). Specifically, Plaintiffs allege that Defendants breached Article 5.27 of the Redevelopment Agreement, which provides, in pertinent part:

> **5.27. Borough Cooperation.** The Borough shall cooperate with and assist the Redeveloper [or, Loko] so as to enable [Loko] to implement, develop and complete the Project in accordance with the Concept Plan and to otherwise perform [Loko's] obligations and responsibilities under this Redevelopment Agreement. This cooperation shall include, but not be limited to, (a) causing all construction and building permits over which the Borough or any of its agencies or offices has jurisdiction to be granted to [Loko] provided the applications for same comply with applicable law, [and] (b) assisting [Loko] in obtaining Governmental Approvals, in expediting required action by the Board in connection with site plan and subdivision applications filed by [Loko] in connection with this Redevelopment Agreement . . . . Nothing herein, however, shall constitute a guaranty or a warranty by the Borough that [Loko] will obtain site plan approval from the Planning Board, or any other Governmental Approvals that may be required from any governmental or quasi-governmental entity.

(*Id.* ¶ 189; *see also* Defendants' Moving Br., Ex. A, Redevelopment Agreement, Article 5.27 at 19, ECF No. 96-3). Rather than "cooperating and assisting" in the construction of the two-phase project set forth in the Redevelopment Agreement, which included Plaintiffs' Salt facility, the Borough allegedly "interfered with and disrupted the construction of Salt and, *inter alia*, delayed,

3

denied, or refused to issue permits for Salt despite its having been approved by the Borough Planning Board." (*Id.* ¶ 190).

In particular, Plaintiffs contend that Defendants breached Article 5.27 of the Redevelopment Agreement by: (i) filing a false Coastal Area Facility Review Act ("CAFRA") claim with the New Jersey Department of Environmental Protection in an effort to stop the project (*Id.* ¶ 191); (ii) issuing stop-work orders based upon erroneous correspondence indicating that construction on the Salt facility failed in numerous ways to comply with the plans approved by the Borough Planning Board (*id.* ¶¶ 192-93); (iii) appearing before the Borough Planning Board to object to the approval of an amended site plan for the Salt facility (*id.* ¶ 194); (iv) and voting against Plaintiffs' liquor license transfer application despite knowing that the Borough Council had previously approved the Redevelopment Agreement that provided for such an outdoor establishment to be located on the premises (*id.* ¶ 195).[2]

Plaintiffs do not purport to be parties to the Redevelopment Agreement. Rather, Plaintiffs contend that they are third-party beneficiaries of the Redevelopment Agreement because the Agreement provided for the construction of the outdoor café and bar at the Loko property—Salt—in which Plaintiffs agreed to operate. (*Id.* ¶¶ 185-88).

Defendants oppose Plaintiffs' contention that they are third-party beneficiaries because Article 3.02 of the Redevelopment Agreement did not permit Loko to lease any part of the Loko property to Plaintiffs without the express written consent of the Borough, which Loko did not obtain. Article 3.02 provides, in relevant part:

> **3.02. Description of Covenants.** The covenants to be imposed upon the Redeveloper [or, Loko], his successors and assigns, and recorded in the form of a Declaration of Covenants and Restrictions

---

[2] The facts surrounding each of these purported breaches are set forth at length in the prior Memo. (Memorandum at 2-6, ECF No. 63).

> ("**Exhibit D**"), shall set forth that [Loko] and his successors and assigns shall:
>
> * * *
>
> (b) [Loko] shall not sell, lease or otherwise transfer all or any portion of the Property (*other than to individual residential or retail tenants*) without the written consent of the Borough, provided however that the issuance of a Certificate of Completion for the Property shall constitute written approval for such sale or lease.

(Redevelopment Agreement, Article 3.02 at 10 (emphasis supplied)). As emphasized, however, the Redevelopment Agreement exempts leases to "retail tenants" from Loko's obligation to seek the express written consent of the Borough. The Redevelopment Agreement does not define the term "retail tenant," nor do Defendants.

Defendants also contend that other Articles of the Redevelopment Agreement demonstrate no contractual intent to recognize the rights of any third party to enforce the Agreement, including Plaintiffs. For example, Defendants point to Article 5.03 which expressly allocates to Loko the sole responsibility for the construction of the project. Article 5.03 provides, in pertinent part:

> **5.03. Redeveloper Undertakings.** In addition to any other obligation, responsibility, condition or undertaking set forth herein, or as set forth in an approval that may be granted for the Project by the Planning Board, or any other Governmental Approvals, the Redeveloper [or, Loko] agrees to undertake the following at the [Loko's] sole cost and expense:
>
> * * *
>
> (c) Complete the Riverwalk [or, the Loko property] . . . in accordance with the Concept Plan and the Site Plan at [Loko's] sole cost and expense.

(Redevelopment Agreement, Article 5.03 at 13). Based on the foregoing, among other reasons, Defendants seek dismissal of Counts X and XI for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Fourth Amended Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2001). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above

the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Id.*

In deciding motions under Rule 12(b)(6), courts may consider "document[s] *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citation and quotation marks omitted). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Id.* (citation omitted); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 (3d Cir. 2016). Accordingly, for purposes of resolving the instant motion, the Court will consider only documents "integral to or explicitly relied upon in the complaint," such as, for example, the Redevelopment Agreement and any amendments thereto. The Court will not consider, however, any documents or correspondences filed by Defendants in support of their motion that are extraneous to the FAC (*see* Certification of Certification of Counsel in Support of Motion to Dismiss Plaintiffs' Fourth Amended Complaint, ECF No. 96-2); nor will it consider the deposition transcript accompanying Plaintiffs' opposition papers (Certification of Richard K. Shaklee, Esq. in Opposition to Defendants' Motion to Dismiss Counts X and XI of Plaintiffs' Fourth Amended Complaint, Ex. 2, ECF No. 99-1).

## Analysis

### I. Standing

A threshold issue is whether Plaintiffs have standing to enforce the terms of the Redevelopment Agreement as third-party beneficiaries. Under New Jersey law, the right to third-party beneficiary status is reflected by statute in *N.J.S.A.* § 2A:15-2, which provides:

> A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him although the consideration of the contract did not move from him.

*Id.* New Jersey courts have long recognized and enforced contracts on behalf of third-party beneficiaries. *See Edwin J. Dobson, Jr., Inc. v. Rutgers, State Univ.*, 157 N.J. Super. 357, 408 (Law. Div. 1978), *aff'd sub nom. Broadway Maint. Corp. v. Rutgers, State Univ.*, 180 N.J. Super. 350, 434 A.2d 1125 (App. Div. 1981), *aff'd*, 90 N.J. 253, 447 A.2d 906 (1982). A third-party beneficiary is entitled to enforce the terms of the contract, including the implied covenant of good faith and fair dealing. *See Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010) (collecting cases).

The test for determining whether a third-party has an actionable right under a contract is whether the parties to the contract intended that a third party receive and have a right to the benefit of the contract. *Hojnowski ex rel. Hojnowski v. Vans Skate Park*, 375 N.J. Super. 568, 576, 868 A.2d 1087, 1092 (App. Div. 2005), *aff'd sub nom. Hojnowski v. Vans Skate Park*, 187 N.J. 323, 901 A.2d 381 (2006). "The [parties'] contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." *Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259, 447 A.2d 906, 909 (1982) (citing *Standard Gas Power Corp. v. New England Cas. Co.*, 90 N.J.L. 570, 573-74 (E. & A. 1917)); *see also Smith v. Boyd*, 272 N.J. Super. 186, 198 (Law.

Div. 1993); *Rieder Communities, Inc. v. Twp. of N. Brunswick*, 227 N.J. Super. 214, 222 (App. Div. 1988); *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J. Super. 370, 373 (Law. Div. 1972).

Where, as here, the contract is silent, New Jersey case law instructs that it is necessary for a reviewing court to (1) examine the pertinent provisions in the agreement and (2) the surrounding circumstances, in order to ascertain whether the parties intended to confer a legally enforceable right in a third-party. *Broadway Maint.*, 90 N.J. at 260 (citing *James Talcott, Inc. v. H. Corenzwit & Co.*, 76 N.J. 305, 312(1978)); *Rieder*, 227 N.J. Super. at 223.

In this case, discovery is required to determine the intent of the parties with respect to whether Plaintiffs were third-party beneficiaries, and, as such, this motion is premature; but the allegations in the complaint sufficiently set forth a plausible cause of action. For example, the Redevelopment Agreement requires the Borough to "facilitate [the] development . . . of the Project," which included the outdoor café and bar. (Redevelopment Agreement at 2; *see also id.*, Ex. B. at 37; FAC ¶¶ 11, 187). Moreover, Article 3.02(b) expressly provided that the Redeveloper could sell or lease the subject property to retail tenants (*see* Redevelopment Agreement, Article 3.02(b) at 10); and, in Article 5.27, the Borough covenanted that it would cooperate with and assist in obtaining permits and governmental approvals for all phases of the Project. (*See id.*, Article 5.27 at 19).

Moreover, Plaintiffs allege that throughout Loko's negotiations of the Redevelopment Agreement with the Borough, Loko was simultaneously in discussions with Plaintiffs to induce them to own and operate the outdoor café and bar. (FAC ¶ 11). As such, the "Borough and the Mayor, Council and Administrator" were all allegedly aware that the outdoor café and bar was to be operated by Plaintiffs. (*Id.*; *see also* Pl. Opp. Br. at 7-8, 9, 10, 14, 15).

In short, the provisions of the Redevelopment Agreement, together with surrounding circumstances alleged in the FAC, raise at least a plausible claim for relief. *Iqbal*, 556 U.S. at 678 Accordingly, dismissal of Counts X and XI at this preliminary stage of the litigation would be premature. *Id.* Rather, the facts and allegations presented to the Court more appropriately suggest that consideration of a fully developed record is warranted. *See, e.g., J.V. ex rel. Valdez v. Macy's, Inc.*, No. CIV. 13-5957 KSH CLW, 2014 WL 4896423, at *3 (D.N.J. Sept. 30, 2014); *Anthem Worldwide Lines, Inc. v. Colgate-Palmolive Co.*, No. CV 04-6243 (JLL), 2005 WL 8175119, at *3 (D.N.J. Sept. 30, 2005); *see also Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, No. CIV.A. 12-2010, 2013 WL 3716525, at *5 (E.D. Pa. July 15, 2013). Accordingly, the Court will not dismiss Counts X and XI for lack of standing at this time.

## II. BREACH OF THE REDEVELOPMENT AGREEMENT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTS X, XI)

In Count X, Plaintiffs allege that Defendants breached Article 5.27 of the Redevelopment Agreement. (FAC ¶¶ 185-96). In order to sustain a claim of breach of contract under New Jersey law, a plaintiff must plausibly allege four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002); *see also Pollack v. Quick Quality Restaurants, Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017).

Here, Plaintiffs set forth a short and plain statement of a cause of action for breach of the Redevelopment Agreement. Fed. R. Civ. P. 8(a). Specifically, Plaintiffs sufficiently allege: that they were third-party beneficiaries of the Redevelopment Agreement (FAC ¶¶ 185-88); that Defendants breached Article 5.27 of said Redevelopment Agreement by undertaking in several measures to interfere and disrupt in the construction of Salt, including by, *inter alia*, delaying,

denying, or refusing to issue permits for Salt (*id.* ¶¶ 189-96); that Plaintiffs thereby suffered damages (*id.* ¶¶ 197-98); and that Plaintiffs performed its own contractual obligations (*see id.* ¶¶ 13-16, 190-94). Accordingly, the Court will not dismiss Plaintiffs' claim for breach of the Redevelopment Agreement. Thus, Defendants' motion to dismiss Count X is denied.

In Count XI, Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing. Under New Jersey law, in every contract there is an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 343 N.J. Super. 338, 345 (App. Div. 2001) (citations and quotation marks omitted), *aff'd as modified*, 172 N.J. 327, 798 A.2d 1251 (2002); *see also Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). "To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017) (collecting cases). The Court has already established that Plaintiffs have plausibly alleged the first, second, and fourth elements of their claim with respect to their breach of contract cause of action. Accordingly, only the third element, or whether Defendants acted in bad faith with the purpose of depriving Plaintiffs of the fruits of the Redevelopment Agreement, requires scrutiny.

Here, Plaintiffs have pled enough facts to allow the Court to draw a reasonable inference that Defendants may have acted in bad faith in preventing Plaintiffs from owning and operating the outdoor bar and café at the Salt property. *Iqbal*, 556 U.S. at 678. The FAC is replete with

allegations that Defendants engaged in bad faith conduct motivated to deprive Plaintiffs of the right to operate Salt (*see, e.g.*, FAC ¶¶ 17-60, 70-72), which the Court must consider to be true for purposes of this motion. *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 269 (3d Cir. 2016). Accordingly, since Plaintiffs have set forth a short and plain statement of the claim under Fed. R. Civ. P. 8(a), Defendants' motion to dismiss Count XI is also denied.

At oral argument, counsel for Defendant Matthew Doherty argued for the first time that Counts X and XI should be dismissed as interposed against Doherty in his individual capacity because Doherty was not a party to the Redevelopment Agreement. Since this argument was not raised in Doherty's limited briefing (ECF No. 100) and Plaintiffs were not afforded an opportunity to respond to same, the Court will not dismiss the claims against Doherty at this time. Doherty will have an opportunity to appropriately move for dismissal on these grounds later in the litigation, if he so wishes.

## CONCLUSION

For all of the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 96, 100) are denied. Defendants shall have thirty (30) days from this Memorandum and Order to answer the remaining claims (Counts IX, X, and XI).

## ORDER

**THIS MATTER** having come before the Court on Defendants' motion to dismiss Counts X and XI of Plaintiffs' Fourth Amended Complaint for failure to state a claim upon which relief can be granted (ECF Nos. 96, 100); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments advanced; and for good cause shown; and for the foregoing reasons;

**IT IS** on this 20 day of February, 2020,

**ORDERED** that Defendants' motion to dismiss Counts X and XI (ECF Nos. 96, 100) is **DENIED**; and it is further

**ORDERED** that Defendants shall file answers to the remaining claims (Counts IX, X, and XI) within thirty (30) days of this Order.

_____
PETER G. SHERIDAN, U.S.D.J.